UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

REFCO GROUP LTD., LLC,                    :

                        Plaintiff,        :    13 Civ. 1654 (RA)(HBP)

        -against-                         :    OPINION
                                               AND ORDER
CANTOR FITZGERALD, L.P., et al.,          :

                        Defendants.       :

-----------------------------------X

          PITMAN, United States Magistrate Judge:

          Refco Group Ltd., LLC ("RGL") commenced this action on

behalf of nominal defendants, Cantor Index Holdings, L.P.

("CIH"), Cantor Index LLC ("CILLC"), Cantor Fitzgerald Game

Holdings, LLC ("CFGH"), Cantor Index Limited ("CIL"), and Cantor

Gaming Limited ("CGL"), as well as on its own behalf, alleging

that defendants engaged in self-interested transactions to siphon

assets away from the subsidiaries of nominal defendant CIH in

which RGL holds a 10% interest.  By notice of motion dated

September 9, 2014 (Docket Item 58), defendants and non-party

Cantor Entertainment Technology, Inc. ("CET")[1] move to quash a

_____

          [1]Plaintiff voluntarily dismissed CET from this action
without prejudice after CET withdrew a registration statement
filed with the SEC and ceased to be an operating entity
(Plaintiff's Memorandum of Law in Opposition to Defendants' and
Non-Party Cantor Entertainment Technology, Inc.'s Motion to Quash
                                               (continued...)

subpoena issued by plaintiff to Ernst & Young LLP ("E&Y"), the auditor for a planned initial public offering by CET (the "IPO").[2]  For the reasons set forth below, the motion to quash is denied.

I.  Background

The facts underlying this action are set forth in detail in the Memorandum Opinion and Order of the Honorable Ronnie Abrams, United States District Judge, dated June 10, 2014, familiarity with which is assumed.  Refco Grp. Ltd. v. Cantor Fitzgerald, L.P., 13 Civ. 1654 (RA), 2014 WL 2610608 (S.D.N.Y. June 10, 2014).

Judge Abrams granted defendants' motion to dismiss in part and denied it in part.  Refco Grp. Ltd. v. Cantor Fitzgerald, L.P., supra, 2014 WL 2610608 at *44.  Plaintiff based its claims on a series of transactions by defendants allegedly designed to appropriate the CIH Entities'[3] assets for the benefit

---

[1](...continued)
the Subpoena Served on Ernst & Young LLP, dated Sept. 16, 2014, (Docket Item 62) ("Pl.'s Mem.") at 7).

[2]The IPO never actually occurred (Pl.'s Mem., at 7).

[3]The CIH Entities include CIH, CIH's wholly-owned subsidiaries (Hollywood Stock Exchange, LLC, CIL, CFGH and CILLC) and CFGH's wholly-owned subsidiary CGL (Amended Complaint, dated Apr. 15, 2013, (Docket Item 25) ("Am. Compl.") ¶ 28).

of defendants and to the detriment of the CIH Entities, thereby

diminishing the value of the CIH Entities and plaintiff's inter-

est in them (Am. Compl. ¶ 3).   Judge Abrams concluded that

> [b]ecause demand was futile with respect to certain of
> the Challenged Transactions (namely, the 2006 License
> Agreement, the Asset Purchase Agreement, and the 2011
> License Agreement) but not others (namely, the closure
> of Spreadfair, the transfer of CIL's trading activity
> to CFE, and the increase in related-party fees paid by
> CIL), only the former transactions [(the "Surviving
> Challenged Transactions")] may form the basis of RGL's
> claims.

Refco Grp. Ltd. v. Cantor Fitzgerald, L.P., supra, 2014 WL

2610608 at *13.

A.   The Surviving Challenged Transactions

The 2006 License Agreement.[4]  On February 7, 2006,

CIH's wholly-owned subsidiary and nominal defendant CILLC, and

non-party CFPH LLC,[5] granted defendant Cantor G&W (Nevada) L.P.

("Cantor Nevada") a "non-exclusive, non-transferable, perpetual,

worldwide, royalty-free right and license" to specific patents

and patent applications held by CILLC with consideration for the

license to "be determined within a reasonable time [after the

grant of the license] pursuant to arms-length negotiations in

---

[4]Attached to Am. Compl. as Exhibit B.

[5]CFPH LLC does not appear to have given or gained anything
pursuant to the 2006 License Agreement.  It is, therefore,
unclear why it is a party to the agreement.

good faith" (Am. Compl. ¶¶ 83, 85).  Defendant Howard W. Lutnick

("Lutnick"), as Chairman and CEO of both CILLC and Cantor Nevada

and as Chairman, President and CEO of CFPH LLC, executed the

agreement on behalf of all parties (Am. Compl. ¶ 86 & Ex. B).

        The Asset Purchase Agreement.[6]  On April 30, 2010,

nominal defendant CIL (CIH's wholly-owned subsidiary) sold its

Financial Fixed Odds ("FFO") business to defendant Cantor Gaming

& Wagering Limited ("CGWL (UK)") (Cantor Nevada's wholly-owned

subsidiary) (Am. Compl. ¶ 117).  The agreement provided for

transfer of all of CIL's assets, goodwill and records associated

with the FFO business, as well as the transfer of key CIL employ-

ees, to CGWL (UK) for £1.00 as consideration, effective as of

midnight on February 1, 2010 (Am. Compl. ¶¶ 117-22).

        The 2011 License Agreement.[7]  In June 2011 CILLC,

Cantor Nevada and non-party Shuffle Master, Inc., licensed

certain CILLC gambling-related patents to Shuffle Master but

directed that royalties and fees derived from those licenses be

paid to Cantor Nevada, not CILLC, the licensor (Am. Compl.

¶¶ 129-35).  Defendant Lee Amaitis ("Amaitis"),[8] as Executive

_____

    [6]Attached to Am. Compl. as Exhibit D.

    [7]Attached to Am. Compl. as Exhibit E.

    [8]Amaitis has also served or is serving as a director and/or
employee of CIH, CIL, CGL and CGWL (UK) (Am. Compl. ¶ 13).

Managing Director of CILLC and CEO of Cantor Nevada, executed the
agreement (Am. Compl. ¶ 130).

B.   The Parties' Claims and Defenses

        Judge Abrams also interpreted plaintiff's allegations
that defendants used "'the CIH Entities' intellectual property,
including technology and patents, for the benefit of the Cantor
Nevada Entities' as . . . describ[ing] the benefits that accrued
to Cantor Nevada as a result of the Challenged Transactions but
not [as constituting] an independent Challenged Transaction."
Refco Grp. Ltd. v. Cantor Fitzgerald, L.P., supra, 2014 WL
2610608 at *6 n.7.[9]  Judge Abrams did not preclude the plaintiff
from basing its claims, at least in part, on defendants' use of
the CIH entities' intellectual property to benefit Cantor Nevada,
as long as that benefit resulted from one of the Surviving
Challenged Transactions.  Thus, presumably, to the extent plain-

---

        [9]Movants argue that this aspect of Judge Abrams's decision
restricts plaintiff's discovery and that plaintiff is
"constrained to the events and facts relevant only to the Three
Transactions" (Defendants' and Non-Party Cantor Entertainment
Technology's Reply Brief in Further Support of Their Motion to
Quash the Subpoena Served on Ernst & Young LLP by Plaintiff,
dated Sept. 18, 2014, (Docket Item 63) ("Defs.' Reply Br.") at
3).  Plaintiff, on the other hand, argues that this aspect of the
decision merely limits the basis of plaintiff's claims to those
benefits accruing to Cantor Nevada from the use of the CIH
Entities' intellectual property as a result of the Surviving
Challenged Transactions (see Pl.'s Mem., at 16-17).

5

tiff attributes those alleged benefits to the Surviving Challenged Transactions, it has stated a claim.

Finally, Judge Abrams (1) dismissed defendants CIL, CGWL (UK), CFE and CGL from the action,[10] (2) dismissed four of plaintiff's claims[11] as to all defendants, (3) dismissed plaintiff's claim of aiding and abetting the breach of fiduciary duty as to defendant Stephen M. Merkel ("Merkel")[12] and (4) dismissed plaintiff's claim of unjust enrichment as to all defendants except Cantor Nevada, Lutnick, Merkel and Amaitis.  Refco Grp. Ltd. v. Cantor Fitzgerald, L.P., supra, 2014 WL 2610608 at *44. Plaintiff's remaining claims with respect to the Surviving Challenged Transactions are (1) breach of fiduciary duty brought against CIHLLC, Lutnick, Merkel and Amaitis, (2) aiding and

---

[10]The remaining defendants are Lutnick, Merkel, Amaitis, Cantor Nevada, Cantor Fitzgerald Securities ("CFS"), Cantor Fitzgerald, L.P. ("CFLP"), Cantor Index Holdings Limited Partnership LLC ("CIHLLC"), CIH, CILLC and CFGH.

[11]Judge Abrams dismissed plaintiff's claim for breach of the Limited Partnership Agreement by CIHLLC, claims of fraudulent conveyance under both New York and Delaware law and a claim for an accounting of the finances and activities of CIH and its subsidiaries by CIHLLC.  Refco Grp. Ltd. v. Cantor Fitzgerald, L.P., supra, 2014 WL 2610608 at *44.

[12]"Merkel served as a director and/or officer of one or more of the CIH Entities, including [CIH]," as well as "Executive Vice President, Chief Legal Officer, General Counsel and Secretary of Cantor Nevada . . . [and] as the Executive Managing Director, General Counsel, and Secretary of [CFLP]" (Am. Compl. ¶¶ 14, 33, 46).

abetting the breach of fiduciary duty against all defendants other than CIHLLC and Merkel, (3) unjust enrichment against Cantor Nevada, Lutnick, Merkel and Amaitis, (4) waste of assets against CIHLLC, Lutnick, Merkel and Amaitis and (5) conversion[13] against Lutnick, Merkel, Amaitis, Cantor Nevada, CFS, CFLP, CIHLLC, CIH, CILLC and CFGH. Refco Grp. Ltd. v. Cantor Fitzgerald, L.P., supra, 2014 WL 2610608 at *44.

Plaintiff alleges that in 2002, it invested $8 million for a ten percent interest in CIH, which was successful in the gaming technology industry in the years immediately following plaintiff's investment (Am. Compl. ¶ 2).  Plaintiff claims that "[d]espite the success of the CIH Entities . . . , the Defendants, with Lutnick at the helm, determined to transfer the CIH Entities' businesses and assets for no or only nominal compensation to the control of the Cantor Nevada Entities,[14] in which neither the CIH Entities nor RGL held any ownership interest" (Am. Compl. ¶ 82).  The transfer of those assets was allegedly the result, at least in part, of the Surviving Challenged Trans-

---

[13]This claim "survives only to the extent that Defendants converted CIL's tangible assets through the Asset Purchase Agreement or converted CILLC's patents through the 2006 License Agreement or 2011 License Agreement." Refco Grp. Ltd. v. Cantor Fitzgerald, L.P., supra, 2014 WL 2610608 at *39.

[14]The Cantor Nevada Entities include "Cantor Nevada and its direct and indirect parent and subsidiary entities" (Am. Compl. ¶ 35).

actions (Am. Compl. ¶ 83-138).[15]  Plaintiffs further contend that
each of the Surviving Challenged Transactions was "unfair, as a
matter of price and process, to CIH and its wholly-owned
subsidiar[ies] . . . and constituted a breach of fiduciary duty,
conversion and waste" (Am. Compl. ¶¶ 93, 124, 138).  Moreover,
plaintiff argues that Cantor Nevada's success is the result of
its use of the CIH Entities' technology (Am. Compl. ¶ 159).
According to plaintiff, the Surviving Challenged Transactions
resulted in the defendant companies' growth, the enrichment of
individual defendants and a decrease in value of the CIH Enti-
ties, as well as RGL's partnership interest in CIH (Am. Compl.
¶¶ 3, 218-19, 228, 231, 236, 241, 254-56).  Finally, plaintiff
argues that the defendants used the Surviving Challenged Transac-
tions to siphon assets away from the CIH Entities and toward
Cantor Nevada in anticipation of the IPO, through which Cantor
Nevada would be contributed to CET in return for an estimated
"cash infusion to Defendants of approximately $100 million" (Am.
Compl. ¶¶ 4, 162-71, 210).  Defendants deny plaintiff's claims
and contend, among other things, that CIH has not suffered or
sustained any damages (Defendants' Answer and Affirmative De-

---

[15]Each of the Surviving Challenged Transactions allegedly
involves Cantor Nevada or a Cantor Nevada subsidiary and the
transfer of some asset or intellectual property from CIH or a CIH
subsidiary.

fenses to Plaintiff's First Amended Complaint, dated July 18,
2014 (Docket Item 44)).

    C.   <u>The Subpoena</u>

       RGL served E&Y with a subpoena <u>duces</u> <u>tecum</u>, dated
August 8, 2014, seeking (1) "All Documents and Communications
Concerning the auditing of any financial statement of Cantor G&W
(Nevada) conducted by Ernst & Young during the Relevant Time
Period" and (2) "All Documents and Communications Concerning the
IPO" (Subpoena annexed as Exhibit A to Declaration of Francis X.
Riley III in Support of Defendants' and CET's Motion to Quash the
Subpoena Served on Ernst & Young by Plaintiff, dated Sept. 9,
2014, (Docket Item 60) ("Riley Decl.")).  The "Relevant Time
Period" is defined as "January 1, 2002, through the present"
(Riley Decl., Ex. A).  "Cantor G&W (Nevada)" is defined as

           Cantor G&W (Nevada) Holdings, L.P., and each of its
           direct and indirect subsidiaries, any of their Affili-
           ates doing business in the State of Nevada in connec-
           tion with the gaming, sports, wagering, gambling,
           casino or similar business, and each of their agents
           and representatives, and any of their successors,
           assignees, managers, directors, officers and employees

(Riley Decl., Ex. A).  The "IPO" is "the initial public offering
contemplated by Cantor Entertainment Technology, Inc., discussed
in the S-1" (Riley Decl., Ex. A).  Pursuant to Fed.R.Civ.P. 45,

E&Y served objections to the subpoena.[16]   Defendants and CET move
to quash the subpoena.

II.   <u>Discussion</u>

    A.   <u>Legal Standard</u>

        Pursuant to Fed.R.Civ.P. 45, a party may serve a
subpoena on a non-party.   However, upon timely motion, a court
may quash or modify a subpoena that requires "disclosing a trade
secret or other <u>confidential</u> research, development, or <u>commercial</u>
<u>information</u>."   Fed.R.Civ.P. 45(d)(3)(B)(i) (emphasis added).
"[T]he burden of persuasion in a motion to quash a subpoena
issued in the course of civil litigation is borne by the movant."
<u>Concord Boat Corp. v. Brunswick Corp.</u>, 169 F.R.D. 44, 48
(S.D.N.Y. 1996) (Edelstein, D.J.) (internal quotation marks and
citations omitted).

---

[16]<u>See</u> Objections of Non-Party Ernst & Young LLP to Subpoena
to Produce Documents, Information, or Objects or to Permit
Inspection of Premises in a Civil Action, dated Aug. 22, 2014,
annexed as Exhibit A to Supplemental Declaration of Francis X.
Riley III in Further Support of Defendants' and CET's Motion to
Quash the Subpoena Served on Ernst & Young by Plaintiff, dated
Sept. 18, 2014 (Docket Item 64).

B.  <u>Standing</u>

     The defendants' and non-party CET's opposition and
motion to quash presents a threshold question of standing,
because plaintiff issued the subpoena to non-party E&Y, not the
movants.  "[A] party ordinarily lacks standing to quash a sub-
poena directed at a nonparty unless the party is seeking to
protect a personal privilege or right." <u>Nova Prods., Inc. v.
Kisma Video, Inc.</u>, 220 F.R.D. 238, 241 (S.D.N.Y. 2004) (Ellis,
M.J.); <u>see also</u> <u>Manolis v. Brecher</u>, 11 Civ. 2750 (RMB)(HBP), 2013
WL 4044808 at *2 n.1 (S.D.N.Y. Aug. 9, 2013) (Pitman, M.J.) ("[A]
party lacks standing to challenge subpoenas issued to non-parties
on the grounds of relevancy or undue burden."); <u>Universitas
Educ., LLC v. Nova Grp., Inc.</u>, 11 Civ. 1590 (LTS)(HBP), 2013 WL
57892 at *5 (S.D.N.Y. Jan. 4, 2013) (Pitman, M.J.) ("[A] non-
subpoenaed party has standing only if it has a privilege, privacy
or proprietary interest in the documents sought." (citation
omitted)); <u>Solow v. Conseco, Inc.</u>, 06 Civ. 5988 (BSJ)(THK), 2008
WL 190340 at *3 (S.D.N.Y. Jan. 18, 2008) (Katz, M.J.); <u>Estate of
Ungar v. Palestinian Auth.</u>, 400 F. Supp. 2d 541, 554 (S.D.N.Y.
2005) (McMahon, D.J.), <u>aff'd</u>, 332 Fed. App'x 643 (2d Cir. 2009).

     In order for a party to have standing to challenge a
subpoena served on a non-party, there must be more than "a
conclusory assertion that the subpoenas seek documents that are

private, confidential, and commercially sensitive." <u>Universitas Educ., LLC v. Nova Grp., Inc.</u>, <u>supra</u>, 2013 WL 57892 at *5 (internal quotations omitted).   Courts should consider "whether the information itself is private, confidential, privileged, or highly sensitive, and not the form the records take." <u>Solow v. Conseco, Inc.</u>, <u>supra</u>, 2008 WL 190340 at *4.

"Information regarding a party's financial records may give rise to a privacy interest." <u>KGK Jewelry LLC v. ESDNetwork</u>, 11 Civ. 9236 (LTS)(RLE), 2014 WL 1199326 at *3 (S.D.N.Y. Mar. 21, 2014) (Ellis, M.J.) (collecting cases).   Courts in this Circuit "have found that individuals, whose banking records are subpoenaed, have a privacy interest in their personal financial affairs that gives them standing to move to quash a subpoena served on a non-party financial institution." <u>Arias-Zeballos v. Tan</u>, 06 Civ. 1268 (GEL)(KNF), 2007 WL 210112 at *1 (S.D.N.Y. Jan. 25, 2007) (Fox, M.J.) (collecting cases); <u>see also</u> <u>In re Flag Telecom Holdings, Ltd. Secs. Litig.</u>, 02 Civ. 3400 (WCC), 2006 WL 2642192 at *2 (S.D.N.Y. Sept. 13, 2006) (Conner, D.J.) (concluding that party had standing to object to a subpoena served on party's accounting firm based on party's privacy interest in his financial records); <u>Reserve Solutions, Inc. v. Vernaglia</u>, 05 Civ. 8622 (VM)(RLE), 2006 WL 1788299 at *1 (S.D.N.Y. June 26, 2006) (Ellis, M.J.) (party had standing to challenge subpoena of American

Express for his credit card records).  Courts have also afforded the same protection to corporations and LLC's.  See Benistar Admin. Servs., Inc. v. United States, No. 6:11-MC-62 (LEK)(GHL), 2011 WL 7267867 at *1 (N.D.N.Y. Dec. 13, 2011), aff'd sub nom. Benistar Admin Servs., Inc. v. United States, No. 1:11-MC-00062 (LEK)(GHL), 2012 WL 96569 (N.D.N.Y. Jan. 12, 2012); see also SEC v. Verdiramo, 10 Civ. 1888 (RMB), 2013 WL 5882918 at *2 (S.D.N.Y. Oct. 29, 2013) (Berman, D.J.); Trump v. Hyatt Corp., 93 Civ. 5242 (CSH), 1994 WL 168021 (S.D.N.Y. Apr. 29, 1994) (Haight, D.J.).

Relying upon Solow v. Conseco, Inc., supra, 2008 WL 190340, movants argue that they have standing because they have a "real interest" in the documents sought from E&Y, many of which were allegedly provided to E&Y by movants, and that the scope of the request "inevitably includes all tax returns and supporting documentation as well as financial statements, work papers, banking and financial records in any way referencing Cantor [Nevada] and any of its many subsidiaries" (Defendants' and Non-Party Cantor Entertainment Technology's Brief in Support of Motion to Quash the Subpoena Served on Ernst & Young LLP by Plaintiff, dated Sept. 9, 2014, (Docket Item 59) ("Defs.' Br.") at 6-7).  See Solow v. Conseco, Inc., supra, 2008 WL 190340 at *3 ("[I]t is well-established that a party with a real interest in the documents has standing to raise objections to their produc-

tion."). Moreover, movants argue that the documents sought include more than a decade of financial information, are "private and confidential" and relate to Cantor Nevada, which is not publicly held and does not publicly share its financial information (Defs.' Br., at 7-8). Further, they argue that Cantor Nevada has a heightened privacy interest in keeping the financial information out of the hands of competitors (Defs.' Br., at 7-8).[17]

Plaintiff contends that movants lack standing because they fail even to attempt to explain how any interests they may have in the documents will be injured by production (Pl.'s Mem., at 2, 8). Further, plaintiff argues that movants lack standing because RGL is not a competitor of the movants, the information sought is, for the most part, stale and movants' confidentiality concerns can be addressed by a protective order (Pl.'s Mem., at 8-9).

In Zintner Handling, Inc. v. Gen. Elec. Co., supra, 2006 WL 3359317, defendant served a subpoena on a non-party accounting firm. The accounting firm had prepared the plaintiff's financial statements that were produced during discovery. Defendant sought "production of tax returns and supporting

---

[17]CET's interests are also implicated because Cantor Nevada was going to be contributed through the contemplated IPO by CET.

documentation as well as financial statements, work papers, and supporting documentation." Zintner Handling, Inc. v. Gen. Elec. Co., supra, 2006 WL 3359317 at *3.  The Court concluded that because the subpoena "could reasonably require [the accounting firm] to produce banking and financial records," the corporate movants' privacy interests in these documents gave them standing to object to the subpoena.  Zintner Handling, Inc. v. Gen. Elec. Co., supra, 2006 WL 3359317 at *3.

Here, plaintiff seeks all documents concerning E&Y's audit of any of Cantor Nevada's financial statements from January 1, 2002 to date and all documents concerning the IPO contemplated by CET.  In fact, plaintiff itself stated that it expects that the scope of its subpoena will include not only

> documents on which the auditors relied in conducting their examination (e.g., agreements, resolutions, consents, minutes, and representation letters of man- agement), but also work papers memorializing the audi- tor's understanding of those related-party transac- tions.  E&Y's work papers with respect to its purchase and tax accounting work would likely also include valuation materials, as would E&Y's assessment of intangible assets

(Pl.'s Mem., at 12-13).  As in Zintner, the subpoena will most likely require E&Y to produce various Cantor Nevada and CET financial records including tax returns and related documents, financial statements, work papers and/or banking records, and,

therefore, movants have a privacy interest in the documents sought.

Plaintiff's remaining arguments conflate the issues of standing with the merits.  Standing is a threshold inquiry that is distinct from the merits; "[t]he fundamental aspect of standing is that it focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated." Flast v. Cohen, 392 U.S. 83, 199 (1968); accord Bordell v. Gen. Elec. Co., 922 F.2d 1057, 1060 (2d Cir. 1991). Plaintiff's contentions that any injury to the movants is attenuated by the staleness of the information, the fact that plaintiff is not a competitor and the potential availability of a protective order all relate to the merits of the motion; they do not defeat the movants' claim that they have at least a fairly arguable privacy interest that the subpoena will invade. See Lerman v. Bd. of Elections, 232 F.3d 135, 143 n.9 (2d Cir. 2000) (standing focuses on whether a litigant "has alleged an 'injury-in-fact' that is fairly traceable to the challenged conduct and redressable by a favorable judicial decision[, not with the existence of] a valid claim on the merits.")

Thus, I conclude that movants have standing to challenge the subpoena.

16

C.   The Merits of the
     Motion to Quash

        If the movants have standing, "the next inquiry re-
quires weighing the relevance or probative value of the documents
being sought against the privacy interests . . . asserted."
Solow v. Conseco, Inc., supra, 2008 WL 190340 at *4.  "The burden
of demonstrating relevance is on the party seeking discovery,"
but "general and conclusory objections as to relevance, over-
breadth, or burden are insufficient to exclude discovery of
requested information."  US Bank Nat'l Ass'n v. PHL Variable Ins.
Co., 12 Civ. 6811 (CM)(JCF), 2012 WL 5395249 at *3 (S.D.N.Y. Nov.
5, 2012) (Francis, M.J.) (internal quotation marks, brackets and
citations omitted).  Once the party seeking production of the
materials meets its "burden of showing relevance sufficient to
justify discovery, the burden shifts to [the movant] to show why
discovery should not be had."  A.I.A. Holdings S.A. v. Lehman
Bros., 97 Civ. 4978 (LMM)(HBP), 2000 WL 763848 at *3 (S.D.N.Y.
June 12, 2000) (Pitman, M.J.), citing In re Agent Orange Prod.
Liab. Litig., 821 F.2d 139, 145 (2d Cir. 1987); and Penthouse
Int'l Ltd. v. Playboy Enters., 663 F.2d 371, 391 (2d Cir. 1981)
("Where . . . the documents are relevant, the burden is upon the
party seeking non-disclosure or a protective order to show good
cause.").  Thus, "[t]he burden of persuasion in a motion to quash

17

a subpoena . . . is borne by the movant." <u>Jones v. Hirschfeld</u>,
219 F.R.D. 71, 74-75 (S.D.N.Y. 2003) (Gorenstein, M.J.), <u>citing</u>
<u>Dove v. Alt. Capital Corp.</u>, 963 F.2d 15, 19 (2d Cir. 1992);
<u>Monarch Knitting Mach. Corp. v. Sulzer Morat GMBH</u>, 85 Civ. 3412
(LBS)(NRB), 1998 WL 338106 at *1 (S.D.N.Y. June 25, 1998) (Buch-
wald, M.J.); and <u>Concord Boat Corp. v. Brunswick Corp.</u>, <u>supra</u>,
169 F.R.D. at 48-49.  Ultimately, "[m]otions to compel and
motions to quash a subpoena are both 'entrusted to the sound
discretion of the district court.'" <u>In re Fitch, Inc.</u>, 330 F.3d
104, 108 (2d Cir. 2003), <u>quoting</u> <u>United States v. Sanders</u>, 211
F.3d 711, 720 (2d Cir. 2000).

　　　　　"[I]t is well established that relevance for the
purpose of discovery is broader in scope than relevance for the
purpose of the trial itself." <u>Arch Assocs., Inc. v. HuAmerica</u>
<u>Int'l, Inc.</u>, 93 Civ. 2168 (PKL), 1994 WL 30487 at *1 (S.D.N.Y.
Jan. 28, 1994) (Leisure, D.J.); <u>see</u> <u>Dequlis v. LXR Biotechnology,</u>
<u>Inc.</u>, 176 F.R.D. 123, 125 (S.D.N.Y. 1997) (Sweet, D.J.); <u>Quaker</u>
<u>Chair Corp. v. Litton Bus. Sys., Inc.</u>, 71 F.R.D. 527, 530-31
(S.D.N.Y. 1976) (Motley, D.J.).  Pursuant to Rule 26(b)(1), the
general scope of discovery includes

　　　　　　　　　any nonprivileged matter that is relevant to <u>any par-</u>
　　　　　　　　　<u>ty's claim or defense</u> . . . .  For good cause, the
　　　　　　　　　court may order discovery of any matter relevant to the
　　　　　　　　　subject matter involved in the action.  Relevant infor-
　　　　　　　　　mation need not be admissible at the trial if the

discovery appears reasonably calculated to lead to the
discovery of admissible evidence.

Fed.R.Civ.P. 26(b)(1) (emphasis added).  "Although not unlimited,
relevance, for purposes of discovery, is an extremely broad
concept." Condit v. Dunne, 225 F.R.D. 100, 105 (S.D.N.Y. 2004)
(Leisure, D.J.) (citation omitted).  However, "[w]hile relevance
is broadly construed in the context of discovery, it is proper to
deny discovery of matter that is relevant only to claims or
defenses that have been stricken." Treppel v. Biovail Corp., 233
F.R.D. 363, 375-76 (S.D.N.Y. 2006) (Francis, M.J.) (emphasis
added) (internal quotations and citation omitted) (compelling
discovery of documents relevant to a dismissed claim because they
were also relevant to the surviving claims).

        The movants contend that "the only discovery relevant
to RGL's legal causes of action or the defenses thereto is that
which is specifically related to the" Surviving Challenged
Transactions and that the documents sought by plaintiff from E&Y
are irrelevant because the subpoena (1) is overly broad, seeking
over a decade of documents, (2) seeks information regarding a
party dismissed from the action (CET) and concerning an IPO that
never happened and (3) is not tailored to seek information
concerning only the Surviving Challenged Transactions (Defs.'
Br., at 8-9 (emphasis added)).  Thus, movants contend, plain-
tiff's assertion that the documents are relevant is "sheer

19

speculation" and the "requests in the subpoena have nothing whatsoever to do with" the Surviving Challenged Transactions (Defs.' Br., at 9).

Plaintiff argues that the material sought relates both to the "nature of Cantor Nevada's use of technology attributable to CIH's subsidiaries" and "damages resulting from that use," because the documents will show the value of Cantor Nevada's assets resulting from the Surviving Challenged Transactions, as well as the value of the benefit to Cantor Nevada from the Surviving Challenged Transactions (Pl.'s Mem., at 13-14). Further, because the Form S-1/A provided that, upon completion of the contemplated IPO, Cantor Nevada would be contributed to CET as its operating subsidiary, plaintiff contends that as auditor for the contemplated IPO of CET, E&Y would have conducted a detailed review of Cantor Nevada's finances, "includ[ing] not only the material documents on which the auditors relied . . . , but also work papers memorializing the auditors' understanding of those related-party transactions." Plaintiff also claims that "E&Y [allegedly] should have traced the S-1/A's disclosures concerning contributions of technology, licenses, intellectual property and other assets," which, plaintiff argues, is also relevant to the Surviving Challenged Transactions (Am. Compl. ¶ 162, Pl.'s Mem., at 12-13). Therefore, plaintiff contends, the

20

E&Y documents are "reasonably likely" to lead to evidence regarding the Surviving Challenged Transactions and the benefits of those transactions conferred on Cantor Nevada and Lutnick.

Here, the materials sought are sufficiently relevant to be discoverable. Movants' view of the scope of discovery in this case is unduly restrictive. The plaintiff is not limited, by Rule 26 or Judge Abrams's Order, to discovery "specifically related" to the Surviving Challenged Transactions. Instead, pursuant to Rule 26(b)(1), plaintiff is entitled to that which is "reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1).

The gravamen of the remaining claims concerns the benefits, if any, to Cantor Nevada, Lutnick and others, and the resultant damages to CIH and its subsidiaries from the Surviving Challenged Transactions. The value of the intellectual property rights transferred to Cantor Nevada through the Surviving Challenged Transactions is central to these claims. As the value, if any, of the rights transferred increases, the adequacy of the consideration arguably becomes more of an issue. Because Cantor Nevada was intended to be contributed to CET as its operating subsidiary, it is reasonable to infer that E&Y would have considered, as part of its audit work, the importance and value of the intellectual property rights that were transferred to Cantor

Nevada.   Thus, plaintiff's assertion that the documents sought
are relevant to the remaining claims and defenses goes beyond
"sheer speculation."

E&Y audited the financial statements of Cantor Nevada,
and plaintiff seeks documents and communications concerning the
audit from January 1, 2002 to present.  The request is reasonably
likely to contain information related, directly or indirectly, to
the nature of the three Surviving Challenged Transactions and the
financial impact of those transactions on Cantor Nevada and
Lutnick.  Even though plaintiff seeks more than a decade of
information from the audit, it is still reasonably calculated to
shed light on the impact of the Surviving Challenged Transactions
on Cantor Nevada, i.e., it will give pictures of Cantor Nevada's
financial state both before and after the Surviving Challenged
Transactions.  In order for the plaintiff to assess the impact of
the Surviving Challenged Transactions and to calculate potential
damages, it will need to differentiate between the financial
results of the Surviving Challenged Transactions and those
previously dismissed.  To limit discovery as movants' suggest
would provide plaintiff with an incomplete understanding of
Cantor Nevada's finances and the impact on the CIH Entities.

The relevance of the documents to the claims and
defenses in this action far outweighs any general privacy inter-

22

est asserted by movants.  Movants have failed to identify any specific harm that they will suffer as a result of production, other than having to produce information in which they have a privacy interest to plaintiff.  Many of the documents are old and unlikely to contain commercially sensitive information, particularly in light of the fact that RGL is not a competitor of movants; to the extent there is any risk of harm from the disclosure of sensitive information, that harm can be eliminated by a protective order.  Thus, defendants and CET's motion to quash is denied.

III.  Conclusion

Accordingly, for all the foregoing reasons, defendants and CET's motion to quash (Docket Item 58) is denied.  E&Y shall produce the requested documents within twenty days of the date of this Order.

Dated:   New York, New York
         October 24, 2014

SO ORDERED

HENRY PITMAN
United States Magistrate Judge

23

Copies mailed to:

Geoffrey C. Jarvis, Esq.
Grant & Eisenhofer P.A.
29th Floor
485 Lexington Avenue
New York, New York 10017

Francis X. Riley, III, Esq.
Ruth Rauls, Esq.
Ryan L. Diclemente, Esq.
Saul Ewing LLP
750 College Road East
Princeton, New Jersey 08540