```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

REFCO GROUP LTD., LLC,                :

                    Plaintiff,        :    13 Civ. 1654 (RA)(HBP)

       -against-                      :    OPINION
                                           AND ORDER
CANTOR FITZGERALD, L.P., et al.,      :

                    Defendants.       :

----------------------------------X
```

        PITMAN, United States Magistrate Judge:

        Refco Group Ltd., LLC ("RGL") commenced this derivative action on behalf of nominal defendants, Cantor Index Holdings, L.P. ("CIH"), Cantor Index LLC ("CILLC"), Cantor Fitzgerald Game Holdings, LLC ("CFGH"), Cantor Index Limited ("CIL") and Cantor Gaming Limited ("CGL"), as well as on its own behalf, alleging that defendants engaged in self-interested transactions to siphon assets away from the subsidiaries of nominal defendant CIH in which RGL holds a 10% interest.  By notice of motion dated December 10, 2014,[1] RGL seeks leave to file a second amended complaint.  For the reasons set forth below, RGL's motion is granted in part and denied in part.

---

     [1]Pending resolution of RGL's request to file the documents under seal and to file redacted versions on the Court's ECF system, the moving papers have not been filed.

I.  Background

     The facts underlying this action are set forth in
detail in the Memorandum Opinion and Order of the Honorable
Ronnie Abrams, United States District Judge, dated June 10, 2014,
familiarity with which is assumed.  Refco Grp. Ltd. v. Cantor
Fitzgerald, L.P., 13 Civ. 1654 (RA), 2014 WL 2610608 (S.D.N.Y.
June 10, 2014).

     A.  The Parties'
         Claims and Defenses[2]

     RGL alleges that in 2002, it invested $8 million for a
ten percent interest in CIH, which was successful in the gaming
technology industry in the years following RGL's investment (Am.
Compl. ¶ 2).  RGL claims that "[d]espite the success of the CIH
Entities[3] . . . , the Defendants, with [Howard W.] Lutnick[4] at
the helm, determined to transfer the CIH Entities' businesses and

_____

     [2]The description of the parties' claims and defenses is
derived from RGL's first Amended Complaint (Amended Complaint,
dated April 15, 2013, (Docket Item 25)("Am. Compl.")) and
defendants' Answer (Defendants' Answer and Affirmative Defenses
to Plaintiff's First Amended Complaint, dated July 18, 2014
(Docket Item 44) ("Answer")).

     [3]The CIH Entities include CIH, CIH's wholly-owned
subsidiaries (Hollywood Stock Exchange, LLC, CIL, CFGH and CILLC)
and CFGH's wholly-owned subsidiary CGL (Am. Compl. ¶ 28).

     [4]Defendant Lutnick is Chairman and CEO of both CILLC and
Cantor G&W (Nevada) L.P. ("Cantor Nevada") (Am. Compl. ¶ 86).

                              2

assets for no or only nominal compensation to the control of the

Cantor Nevada Entities[5], in which neither the CIH Entities nor

RGL held any ownership interest" (Am. Compl. ¶ 82).  The transfer

of those assets was allegedly the result of several transactions

including the following:  (1) a 2006 License Agreement,[6] (2) an

Asset Purchase Agreement,[7] (3) a 2011 License Agreement,[8] (4) the

closure of Spreadfair, (5) a transfer of CIL's trading activity

and (6) an increase in related-party fees (collectively, the

"Challenged Transactions") (Am. Compl. ¶¶ 83-138, 192-96).  Judge

Abrams has previously found that the Amended Complaint states a

---

[5]The Cantor Nevada Entities include "Cantor Nevada and its
direct and indirect parent and subsidiary entities" (Am. Compl.
¶ 35).

[6]On February 7, 2006, CILLC and CFPH LLC, granted Cantor
Nevada a license to specific patents and patent applications held
by CILLC for consideration to "be determined within a reasonable
time" (Am. Compl. ¶¶ 83, 85 & Ex. B).  Lutnick executed the
agreement (Am. Compl. ¶ 86).

[7]On April 30, 2010, CIL sold its Financial Fixed Odds
("FFO") business, including all associated assets, goodwill and
records to defendant Cantor Gaming & Wagering Limited ("CGWL
(UK)"), Cantor Nevada's wholly-owned subsidiary, for £1.00 as
consideration (Am. Compl. ¶¶ 116-22 & Ex. D).

[8]In June 2011, CILLC, Cantor Nevada and non-party Shuffle
Master, Inc. licensed certain CILLC gambling-related patents to
Shuffle Master but directed that royalties and fees derived from
those licenses be paid to Cantor Nevada, not CILLC, the licensor
(Am. Compl. ¶¶ 129-35 & Ex. E).  Defendant Lee Amaitis, Executive
Managing Director of CILLC and CEO of Cantor Nevada, executed the
agreement (Am. Compl. ¶ 130).  Amaitis has also served or is
serving as a director and/or employee of CIH, CIL, CGL and CGWL
(UK) (Am. Compl. ¶ 13).

claim with regard to three of the Challenged Transactions:  (1)
the 2006 License Agreement, (2) the Asset Purchase Agreement and
(3) the 2011 License Agreement (collectively, the "Surviving
Transactions").  Refco Grp. Ltd. v. Cantor Fitzgerald, L.P.,
supra, 2014 WL 2610608 at *14.  RGL contends that each of these
transactions is "unfair, as a matter of price and process, to CIH
and its wholly-owned subsidiar[ies] . . . and constitute[s] a
breach of fiduciary duty, conversion and waste" (Am. Compl.
¶¶ 93, 124, 138).  Moreover, RGL argues that Cantor Nevada's
success is the result of its use of the CIH Entities' technology
(Am. Compl. ¶ 159).  According to RGL, the Challenged Transac-
tions resulted in the defendant companies' growth, the enrichment
of individual defendants and a decrease in value of the CIH
Entities, as well as a decrease in the value of RGL's partnership
interest in CIH (Am. Compl. ¶¶ 3, 218-19, 228, 231, 236, 241,
254-56).  Defendants deny RGL's claims and contend, among other
things, that CIH has not suffered or sustained any damages
(Answer, passim).

    B.  Defendants' Motion to Dismiss

      By notice of motion dated May 30, 2013, defendants
moved to dismiss RGL's Amended Complaint in its entirety (Docket
Item 20).  Judge Abrams granted the motion in part and denied it

in part.  Refco Grp. Ltd. v. Cantor Fitzgerald, L.P., supra, 2014
WL 2610608 at *44.  Although RGL alleged that defendants appro-
priated the CIH Entities' assets through all of the Challenged
Transactions, Judge Abrams concluded that

> [b]ecause demand was futile with respect to certain of
> the Challenged Transactions (namely, the 2006 License
> Agreement, the Asset Purchase Agreement, and the 2011
> License Agreement) but not others (namely, the closure
> of Spreadfair, the transfer of CIL's trading activity
> to CFE, and the increase in related-party fees paid by
> CIL), only the former transactions[, the Surviving
> Transactions,] may form the basis of RGL's claims.

Refco Grp. Ltd. v. Cantor Fitzgerald, L.P., supra, 2014 WL
2610608 at *13.

Judge Abrams also interpreted RGL's allegations that
defendants used "'the CIH Entities' intellectual property,
including technology and patents, for the benefit of the Cantor
Nevada Entities' as . . . describ[ing] the benefits that accrued
to Cantor Nevada as a result of the Challenged Transactions but
not [as constituting] an independent Challenged Transaction."
Refco Grp. Ltd. v. Cantor Fitzgerald, L.P., supra, 2014 WL
2610608 at *6 n.7.[9]  Judge Abrams did not preclude RGL from

---

[9]RGL argues that its claims were not limited to the
Surviving Transactions and "that the Amended Complaint adequately
alleges a scheme to transfer assets in violation of Defendants'
fiduciary and other duties to CIH, regardless of whether those
transfers were documented in paper agreements, or occurred by
stealing, and that demand is excused as to such a scheme"
(continued...)

basing its claims, at least in part, on defendants' use of the
CIH entities' intellectual property to benefit Cantor Nevada, as
long as that benefit resulted from one of the Surviving Transac-
tions.

     Finally, Judge Abrams dismissed (1) defendants CIL,
CGWL (UK), CFE and CGL from the action,[10] (2) four of RGL's
claims[11] as to all defendants, (3) RGL's claim of aiding and
abetting a breach of fiduciary duty with respect to defendant
Stephen M. Merkel[12] and (4) RGL's claim of unjust enrichment as

---

[9](...continued)
(Memorandum of Law in Support of Plaintiff's Motion for Leave to
File a Second Amended Complaint, dated December 10, 2014 ("Pl.'s
Mem."), at 10).  Defendants on the other hand argue that RGL's
"generally alleged scheme [could not] serve as an independent
claim or basis sufficiently supporting each of the causes of
action" and "the only cognizable claims or grounds for RGL's
remaining causes of action were" those related to the Surviving
Transactions because plaintiff "fail[ed] to plead demand futility
with respect to [the other] transactions" (Defendants' Brief in
Opposition to Plaintiff's Motion for Leave to File a Second
Amended Complaint, dated January 23, 2015 ("Defs.' Opp."), at 6).

     [10]The remaining defendants are Lutnick, Stephen M. Merkel,
Amaitis, Cantor Nevada, Cantor Fitzgerald Securities ("CFS"),
Cantor Fitzgerald, L.P. ("CFLP"), Cantor Index Holdings Limited
Partnership LLC ("CIHLLC"), CIH, CILLC and CFGH.

     [11]Judge Abrams dismissed RGL's claim for breach of the
Limited Partnership Agreement by CIHLLC, claims of fraudulent
conveyance under both New York and Delaware law and a claim for
an accounting of the finances and activities of CIH and its
subsidiaries by CIHLLC.  Refco Grp. Ltd. v. Cantor Fitzgerald,
L.P., supra, 2014 WL 2610608 at *44.

     [12]"Merkel served as a director and/or officer of one or more
                                                  (continued...)

to all defendants except Cantor Nevada, Lutnick, Merkel and
Amaitis.  Refco Grp. Ltd. v. Cantor Fitzgerald, L.P., supra, 2014
WL 2610608 at *44.  RGL's remaining claims with respect to the
Surviving Transactions are (1) breach of fiduciary duty brought
against CIHLLC, Lutnick, Merkel and Amaitis, (2) aiding and
abetting a breach of fiduciary duty against all defendants other
than CIHLLC and Merkel, (3) unjust enrichment against Cantor
Nevada, Lutnick, Merkel and Amaitis, (4) waste of assets against
CIHLLC, Lutnick, Merkel and Amaitis and (5) conversion[13] against
Lutnick, Merkel, Amaitis, Cantor Nevada, CFS, CFLP, CIHLLC, CIH,
CILLC and CFGH.  Refco Grp. Ltd. v. Cantor Fitzgerald, L.P.,
supra, 2014 WL 2610608 at *44.

   C.  Plaintiff's Proposed Amendments

     RGL served the instant motion on December 10, 2014 and
seeks (1) to add allegations regarding Cantor Nevada's name

---

   [12](...continued)
of the CIH Entities, including [CIH]," as well as "Executive Vice
President, Chief Legal Officer, General Counsel and Secretary of
Cantor Nevada . . . [and] as the Executive Managing Director,
General Counsel, and Secretary of [CFLP]" (Am. Compl. ¶¶ 14, 33,
46).

   [13]This claim "survives only to the extent that Defendants
converted CIL's tangible assets through the Asset Purchase
Agreement or converted CILLC's patents through the 2006 License
Agreement or 2011 License Agreement."  Refco Grp. Ltd. v. Cantor
Fitzgerald, L.P., supra, 2014 WL 2610608 at *39.

change to "CG Technology" and its stated intent to pursue an IPO
([Proposed] Verified Second Amended Complaint ("SAC") ¶¶ 4, 17,
22-23, 103, annexed as Exhibit A to Declaration of Geoffrey C.
Jarvis in Support of the Memorandum of Law in Support of Plain-
tiff's Motion for Leave to File a Second Amended Complaint
("Jarvis Decl.")), (2) to delete allegations concerning "Cantor
Casino" (Pl.'s Mem., at 1 n.5; see Am. Compl. ¶¶ 77-81) and (3)
to "conform[] the Amended Complaint to the Court's June 10, 2014
Opinion by removing parties over which the Court held that it
lacks jurisdiction and by deleting dismissed claims, other than
those claims which RGL preserves for appeal," as well as adding
"allegations regarding demand futility with respect to the
[Surviving Transactions]" (Pl.'s Mem., at 1 n.5, 19 & n.33).  RGL
also seeks

> (1) to crystallize its allegations that Defendants have
> misappropriated technology, intellectual property, and
> other assets from [CIH], including by means not docu-
> mented in written agreements; and (2) to allege newly
> discovered facts that demonstrate the futility of a
> pre-suit demand as to two of RGL's previously dismissed
> allegations, which concerned the transfer of valuable
> trading activity from, and the payment of exorbitant
> related-party fees by, CIH subsidiaries

(Pl.'s Mem., at 1 (footnote omitted)).  RGL's modified and
additional allegations regarding the issue of pre-suit demand
largely concern Lutnick's interest in and potential liability for

the alleged transactions (SAC ¶¶ 16, 27, 34-35, 38-39, 129, 131, 190, 200, 204-20).

      1.   Allegations Regarding the
           Undocumented Transfer of Assets
           <u>and Technology from the CIH Entities</u>

RGL seeks to allege, "on information and belief, [that] significant technology transfers occurred without any documenta-tion . . . by having CIH employees -- such as CIH Managing Director Andrew Gar[r]ood[14] -- develop such technology for the Cantor Nevada entities using the intellectual property he had developed for CIH while he was employed there" (SAC ¶ 104). According to RGL, these undocumented transfers resulted in the misappropriation of the CIH Entities' intellectual property, "allow[ing] Cantor Nevada to create mobile gaming and in-game betting" (SAC ¶ 104).

RGL, citing statements made by Amaitis, seeks to allege that Cantor[15], seeing a prospective advantage in the mobile gaming technology originating with CIL, contracted with manufac-

_____

[14]Garrood was CIL's Managing Director through at least 2009 and is the current Executive Director of Cantor Nevada's subsidiary, CG Analytics, Inc., of which Lutnick is Chairman, Amaitis is President, CEO and director and Merkel is Secretary and Executive Managing Director (SAC ¶ 120 n.5).

[15]Cantor includes CFS, CFLP and "all of their subsidiaries and affiliates" (SAC ¶ 13).

turers to produce "500 eDeck, or electronic card deck, hand-held
devices" (SAC ¶ 114 (internal quotation marks omitted)).  RGL
alleges that Cantor Nevada appropriated the underlying technology
for the devices in 2005, without compensation or legal transfer,
from the CIH Entities in a transaction separate and apart from
the documented transactions of which RGL is aware (SAC ¶¶ 114-
15).  Citing statements by Garrood, RGL also seeks to add allega-
tions that the CIH Entities' technology for computing the odds of
sporting events was transferred to Cantor Nevada through an
undocumented transaction and used to develop the Midas software
underlying the Cantor Nevada Entities' "In-Running" betting
service (SAC ¶¶ 104, 116, 119, 127-28).  RGL claims these undocu-
mented transactions were only recently discovered and benefitted
defendants to RGL's detriment (SAC ¶¶ 129, 207-08).

RGL also seeks to add allegations supporting its
contention of demand futility, including (1) the amount of
Lutnick's ownership interest in Cantor Nevada and (2) Lutnick's
service as CEO of CILLC, Chairman of Cantor Nevada and Chairman
of CIL during the aforementioned transfers, which RGL contends
shows that Lutnick was interested in misappropriating the CIH
Entities' mobile gaming technology and Midas software and that he
benefitted from the transfers to the detriment of the CIH Enti-
ties (SAC ¶¶ 207-10).

10

2.    Allegations Regarding the Transfer
      of CIL's Trading Business to CFE

RGL also seeks to add allegations that "[d]efendants caused CIL to transfer out its valuable trading activities" (SAC ¶¶ 167-68, 173).  These activities allegedly involved CIL "acting as 'an introducing broker' for trading in contracts for differ-ence ('CFDs')" and a spread betting business, which earned CIL over $8 million in revenue in 2010 (SAC ¶ 168).  RGL seeks to allege that when the trading activity was transferred to CFE, CFLP's wholly-owned subsidiary, Lutnick owned at least 10% of CFLP, and, therefore, Lutnick benefitted from the CFD and spread betting revenue to the detriment of CIL (SAC ¶¶ 16, 27, 131, 218).  Moreover, RGL alleges that Lutnick "faces a substantial threat of liability on the basis of" the transfer of the trading activity, making demand futile (SAC ¶ 220).

3.    Allegations Regarding the Increased
      Related-Party Fees Paid by CIL to
      CFE and Other Cantor Affiliates

Finally, RGL seeks to add allegations that the related-party fees paid by CIL to CFE and other Cantor affiliates un-fairly increased, and that, based on additional allegations concerning Lutnick's interest in and control of CFE and CFLP, Lutnick benefitted from those fee increases.  RGL claims that

11

Lutnick potentially faces liability for these payments, thereby making demand futile (SAC ¶¶ 16, 27, 131, 190, 219-20).

II.  Analysis

    A.  Standards Applicable to a
        Motion to Amend the Pleadings

       The Court of Appeals has repeatedly noted that the trial court has broad discretion in ruling on a motion to amend. See, e.g., Arnold v. KPMG LLP, 334 F. App'x 349, 352 (2d Cir. 2009) (citation omitted); Gurary v. Winehouse, 235 F.3d 792, 801 (2d Cir. 2000); Local 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel, 145 F.3d 85, 89 (2d Cir. 1998); Guzman v. Bevona, 90 F.3d 641, 649 (2d Cir. 1996).  The standards applicable to a motion to amend the pleadings are well settled and require only brief review.

        1.  Standard Pursuant
           to Federal Rule of
           Civil Procedure 15(a)

       In general, a motion to amend is governed by Fed.R.Civ.P. 15(a), which provides "[t]he court should freely give leave when justice so requires."  Fed.R.Civ.P. 15(a); Foman v. Davis, 371 U.S. 178, 182 (1962); Kroshnyi v. U.S. Pack Courier Servs., Inc., 771 F.3d 93, 109 (2d Cir. 2014); McCarthy v. Dun &

Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007).  "Nonethe-
less, the Court may deny leave if the amendment (1) has been
delayed unduly, (2) is sought for dilatory purposes or is made in
bad faith, (3) the opposing party would be prejudiced, or (4)
would be futile."  Lee v. Regal Cruises, Ltd., 916 F. Supp. 300,
303 (S.D.N.Y. 1996) (Kaplan, D.J.), aff'd, 116 F.3d 465 (2d Cir.
1997), citing, Foman v. Davis, supra, 371 U.S. at 182; see
Ruotolo v. City of N.Y., 514 F.3d 184, 191 (2d Cir. 2008); Laydon
v. Mizuho Bank, Ltd., 12 Civ. 3419 (GBD), 2015 WL 1515487 at *2
(S.D.N.Y. Mar. 31, 2015) (Daniels, D.J.).

> 2.  Standard Pursuant
>     to Federal Rule of
>     Civil Procedure 16(b)

"Although Rule 15(a) governs the amendment of plead-
ings, Rule 16(b) also may limit the ability of a party to amend a
pleading if the deadline specified in the scheduling order for
amendment of the pleadings has passed."  Kassner v. 2nd Ave.
Delicatessen Inc., 496 F.3d 229, 243 (2d Cir. 2007).  Where a
scheduling order addresses the issue of motions to amend, the
more lenient Rule 15(a) standard must be balanced against Rule
16(b)'s requirement that the scheduling order shall only be
modified for "good cause," which turns "on the diligence of the
moving party."  Grochowski v. Phoenix Constr., 318 F.3d 80, 86

(2d Cir. 2003), <u>citing</u> <u>Parker v. Columbia Pictures Indus.</u>, 204 F.3d 326, 340 (2d Cir. 2000). "The district court, in the exercise of its discretion under Rule 16(b), also may consider other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants." <u>Kassner v. 2nd Ave. Delicatessen Inc.</u>, <u>supra</u>, 496 F.3d at 244; <u>see</u> <u>Gorman v. Covidien Sales, LLC</u>, 13 Civ. 6486 (KPF), 2014 WL 7404071 at *2 (S.D.N.Y. Dec. 31, 2014) (Failla, D.J.).

    B.  Federal Rule of
        Civil Procedure
        <u>15(a) Is Applicable</u>

    RGL argues that the standard under Fed.R.Civ.P. 15(a) applies because it is not seeking leave to add new claims outside of the time limit set by Judge Abrams; rather, it contends that it "seeks to conform its pleading to the evidence[] and to make plain that its claims encompass transfers of technology and other assets regardless of whether such transfers occurred by means of a particular contract or otherwise" (Pl.'s Mem., at 12 (footnote omitted)). Defendants contend that "the deadline for filing of amended pleadings [w]as September 1, 2014" and that, pursuant to Fed.R.Civ.P. 16(b), plaintiff must demonstrate good cause to amend (Defs.' Opp., at 12-13).

Judge Abrams' Scheduling Order set the deadline to assert "additional causes of action or defenses," without leave of the Court, at September 1, 2014 (Case Management Plan and Scheduling Order, date July 3, 2010 (Docket Item 42) ¶ 5). RGL filed the present motion on December 10, 2014. As discussed in more detail below, RGL, in large part, seeks to replead or reassert claims based on transactions that were previously dismissed and is not seeking to assert new, additional facts. However, defendants argue that, because Fed.R.Civ.P. 16(b)(3)(A) requires that a scheduling order include a deadline for amending the pleadings, the deadline for asserting additional claims or defenses must apply to all motions for leave to amend, whether or not the movant seeks to add claims or defenses (Defs.' Opp., at 12). That does not comport with the clear language of the scheduling order, which only limits the time in which <u>additional</u> claims could be asserted without seeking leave from the Court. Although the September 1, 2014 deadline has passed, the more stringent standards of Rule 16(b) are not applicable because RGL does not seek to add any claims.

Accordingly, in determining whether RGL may amend its complaint, the standard pursuant to Fed.R.Civ.P. 15(a) applies.[16]

---

[16]Defendants do not contend that any of the claims dismissed by Judge Abrams were dismissed with prejudice; therefore, I
                                              (continued...)

C.   Application of Rule 15(a)

Defendants do not object to RGL's proposed amendments "[t]o the extent RGL is seeking to file an amended pleading to identify the proper parties due to name changes and [to] remove allegations regarding Cantor Casino" (Defs.' Opp., at 11). Moreover, defendants do not challenge RGL's proposed amendments concerning Cantor Nevada's intent to pursue an IPO (see SAC ¶¶ 4, 17, 22-23, 103). Finally, while defendants note that RGL's proposed amendments "recite[] its interpretation of the Decision with regard to Lutnick's interest in the Affiliated Transactions" (Defs.' Opp., at 11, citing SAC ¶¶ 200-19), defendants do not appear to object to these amendments to the extent they relate to the Surviving Transactions.

However, as to the remaining amendments, defendants argue that RGL should not be allowed to replead claims related to transactions that were dismissed because the proposed amendments will result in undue delay and prejudice, evince dilatory motive or bad faith and are futile (Defs.' Opp., at 1-2).

---

[16](...continued)
decline to address that issue.

16

1.  Undue Delay

Defendants first argue that the motion should be denied because RGL delayed seeking leave to amend.

Delay alone, in the absence of bad faith or prejudice, is not sufficient reason for denying a motion to amend.  Ruotolo v. City of N.Y., supra, 514 F.3d at 191; Rachman Bag Co. v. Liberty Mut. Ins. Co., 46 F.3d 230, 234-35 (2d Cir. 1995); State Teachers Ret. Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981); Middle Atl. Utils. Co. v. S.M.W. Dev. Co., 392 F.2d 380, 384 (2d Cir. 1968).  Thus, the court may "deny leave to amend 'where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice' other parties."  Grace v. Rosenstock, 228 F.3d 40, 53-54 (2d Cir. 2000) (emphasis added), quoting Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 72 (2d Cir. 1990); Bankers Trust Co. v. Weinick, Sanders & Co., 92 Civ. 9127 (PNL)(MHD), 1993 WL 478124 at *7-*8 (S.D.N.Y. Nov. 12, 1993) (Dolinger, M.J.); Bertrand v. Sava, 535 F. Supp. 1020, 1023 (S.D.N.Y. 1982) (Carter, D.J.), rev'd on other grounds, 684 F.2d 204 (2d Cir. 1982); see also Commander Oil Corp. v. Barlo Equip. Corp., 215 F.3d 321, 333 (2d Cir. 2000) (permitting amendment of answer to assert additional affirmative defense after a seven-year delay

17

does not constitute an abuse of discretion in the absence of prejudice).

Defendants note the fact that RGL's motion comes "[s]ix months after the Decision [on defendants' motion to dismiss] narrowed RGL's claims to the Surviving Transactions[] and almost three months after the deadline to amend its pleading expired" and that "[a]t the time RGL filed its motion for leave, the deadline for fact discovery was January 15, 2015" (Defs.' Opp., at 9, 16). However, under the liberal standard of Rule 15(a), in the absence of prejudice, leave to amend may be appropriately granted at any stage of litigation. See 6 Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice & Procedure § 1488 at 755-63 (3d ed. 2010) (noting that courts have granted leave to amend at various stages including after discovery, after a motion to dismiss has been granted and even after a judgment has been entered).

Moreover, as RGL points out, the deadline for fact discovery has been extended, with the consent of all parties, to 180 days after the resolution of both RGL's objections to my November 24, 2014 Order[17] (Docket Item 80) and the instant motion

---

[17]By Order, dated November 24, 2014, I denied RGL's request to compel discovery to the extent it sought documents related to claims unrelated to the Surviving Transactions (Order, dated November 24, 2014 (Docket Item 77)("Nov. 24, 2014 Order")).

18

(Plaintiff's Reply Memorandum in Further Support of Its Motion for Leave to File a Second Amended Complaint, dated February 13, 2015 ("Pl.'s Reply"), at 3; see Docket Item 88).  In addition, the delay here is not so long as to give rise to an inference of prejudice.  See Khan v. McElroy, 13 Civ. 5043 (AJN)(JCF), 2014 WL 3945952 at *5 (S.D.N.Y. Aug. 7, 2014) (Francis, M.J.) ("Although this motion comes close to the end of discovery, this in itself is not enough to deny the motion."); see also Magnuson v. Newman, 10 Civ. 6211 (JMF), 2013 WL 5942338 at *2 (S.D.N.Y. Nov. 6, 2013) (Furman, D.J.); Arkwright Mut. Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 90 Civ. 7811 (AGS), 1995 WL 3006 at *2 (S.D.N.Y. Jan. 4, 1995) (Francis, M.J.) ("[C]ourts have been most hesitant to grant leave to amend when such motions are made on the eve of trial and can result in unfair surprise."); Smith v. City of N.Y., 611 F. Supp. 1080, 1093 (S.D.N.Y. 1985) (Haight, D.J.) (where plaintiff seeks amendments "literally on the eve of trial . . . plaintiff bears a heavy burden of persuasion to explain and justify the delay.").

Delay is rarely fatal to a Rule 15 motion if it can be explained.  See Foman v. Davis, supra, 371 U.S. at 182.  Defendants argue that RGL has provided no "valid justification for its delay in bringing its motion" (Defs.' Opp., at 1).  Although some explanation must be provided to excuse a lenghty delay, see

Reisner v. Gen. Motors Corp., 511 F. Supp. 1167, 1172 (S.D.N.Y.
1981) (Goettel, D.J.), aff'd, 671 F.2d 91 (2d Cir. 1982), even
vague or "thin" reasons are sufficient in the absence of preju-
dice or bad faith.  Town of New Windsor v. Tesa Tuck, Inc., 919
F. Supp. 662, 677 (S.D.N.Y. 1996) (Parker, D.J.); Rachman Bag Co.
v. Liberty Mut. Ins. Co., supra, 46 F.3d at 235.

          Here, RGL offers adequate reasons for its delay in
filing its motion for leave to amend.  It claims that "it has
only recently appeared that the proposed amendments would be
useful and proper," because (1) after September 1, 2014, RGL
learned that defendants planned to assert that RGL's claims were
limited to the Surviving Transactions, (2) in September 2014, RGL
learned, through statements made by defendants' counsel during a
meet and confer, that the undocumented transfer of CIH's technol-
ogy may have been executed by Garrood separate and apart from the
Surviving Transactions and (3) the instant motion was served
within a month of defendants' production of the document purport-
edly indicating Lutnick's ownership interest in CFLP (Pl.'s Mem.,
at 14-15).  In response, defendants argue that (1) Judge Abrams'
decision gave notice to RGL its claims were limited to the
Surviving Transactions; (2) defendants "clearly informed" RGL
that they believed RGL was limited to the Surviving Transactions
"through their Initial Disclosures, their email communications,

20

and their meet and confers," (3) RGL has failed to support
adequately its claim that the alleged undocumented transfer of
CIH's intellectual property and the Midas software "only recently
came to light," (4) the only "new" evidence identified by RGL --
the document concerning Lutnick's ownership interest -- does not
justify the delay and (5) at least as to its amended claims
regarding the undocumented transfer of assets and technology, RGL
concedes that it obtained that information from a subpoena issued
much earlier during its initial bankruptcy proceeding (Defs.'
Opp., at 1, 7-8, 9, 10, 14).

        The correction of deficiencies in the complaint is a
legitimate reason for seeking to amend a pleading under the
liberal standard of Rule 15(a).  Luparello v. Inc. Vill. of
Garden City, 290 F. Supp. 2d 341, 344 (E.D.N.Y. 2003); Vulcan
Soc. of Westchester Cnty. v. Fire Dep't of White Plains, 82
F.R.D. 379, 386 (S.D.N.Y. 1979) (Sweet, D.J.).  Here, RGL seeks
to amend deficiencies in the Amended Complaint identified by
defendants' motion to dismiss and the parties' discovery dis-
putes.  Even if RGL was made fully aware of those deficiencies by
Judge Abrams' decision and subsequent litigation, the six-month
delay in filing the instant motion is not so lengthy as to
warrant its denial, particularly in light of defendants' failure
to demonstrate prejudice.  Because delay alone is insufficient to

deny a motion to amend, and, as explained below, defendants have
not demonstrated undue prejudice or bad faith, RGL's delay in
seeking to replead its dismissed claims is not a sufficient basis
to deny RGL's motion.

        2.  <u>Prejudice</u>

      Defendants next argue that the motion should be denied
because they would be prejudiced by the proposed amendments.

      To determine whether a party will be prejudiced by a
proposed amended pleading, courts "generally consider whether the
assertion of the new claim or defense would '(i) require the
opponent to expend significant additional resources to conduct
discovery and prepare for trial; (ii) significantly delay the
resolution of the dispute; or (iii) prevent the plaintiff from
bringing a timely action in another jurisdiction.'"  <u>Monahan v.
New York City Dep't of Corrs.</u>, 214 F.3d 275, 284 (2d Cir. 2000),
<u>quoting</u> <u>Block v. First Blood Assocs.</u>, 988 F.2d 344, 350 (2d Cir.
1993).  Courts also consider the extent to which the new claims
are related to the existing ones and whether a party has had
prior notice of a proposed new claim.  <u>See</u> <u>Monahan v. New York
City Dep't of Corrs.</u>, <u>supra</u>, 214 F.3d at 284; <u>Hanlin v. Mitchel-
son</u>, 794 F.2d 834, 841 (2d Cir. 1986); <u>State Teachers Ret. Bd. v.
Fluor Corp.</u>, <u>supra</u>, 654 F.2d at 856.

Defendants contend that RGL's proposed amendments will prejudice them because the amendments will necessitate broad discovery, particularly the new allegations concerning the undocumented transfer of assets and technology (Defs.' Opp., at 16-17). As an example, defendants note that prior to the Nov. 24, 2014 Order limiting the scope of discovery, RGL sought "'All Documents and Communications Concerning any transfer or licensing of any Gaming-related Intellectual Property, tangible or intangible, from [CIH] to any entity outside of [CIH] during the Relevant Time Period'" (Defs.' Opp., at 17). They argue that the amendments will require them to "exp[e]nd significant resources and incur substantial costs" (Defs.' Opp., at 17). RGL argues that the extension of the discovery period cures any potential prejudice caused by the need for additional discovery (Pl.'s Reply, at 3).

While the amendments may result in additional discovery, the need for new discovery, without more, does not constitute undue prejudice. United States v. Cont'l Ill. Nat'l Bank & Trust Co., 889 F.2d 1248, 1255 (2d Cir. 1989); S.S. Silberblatt, Inc. v. E. Harlem Pilot Block Bldg. 1 Hous. Dev. Fund Co., 608 F.2d 28, 43 (2d Cir. 1979); Middle Atl. Utils. Co. v. S.M.W. Dev. Corp., supra, 392 F.2d at 386; Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc., 304 F.R.D. 170, 174 (S.D.N.Y. 2014)

(Gorenstein, M.J.); <u>Town of New Windsor v. Tesa Tuck, Inc.</u>,
<u>supra</u>, 919 F. Supp. at 679; <u>St. Paul Fire & Marine Ins. Co. v.
Heath Fielding Ins. Broking Ltd.</u>, 91 Civ. 0748 (MJL), 1996 WL
19028 at *7 (S.D.N.Y. Jan. 17, 1996) (Lowe, D.J.).  Moreover, the
mere fact that an amendment will require a party to invest
additional resources in litigation is not a sufficient ground for
its denial.  <u>Middle Atl. Utils. Co. v. S.M.W. Dev. Corp.</u>, <u>supra</u>,
392 F.2d at 386; <u>see</u> <u>United States v. Int'l Bus. Machs. Corp.</u>, 66
F.R.D. 223, 231 (S.D.N.Y. 1975) (Edelstein, D.J.).

     In addition, the prejudice that would flow from any
additional required discovery can generally be mitigated by
adjustments to the discovery schedule.  <u>Middle Atl. Utils. Co. v.
S.M.W. Dev. Corp.</u>, <u>supra</u>, 392 F.2d at 386 ("The burden of further
discovery and motions is not a satisfactory basis to deny the
motion to amend.  Such procedural aspects can be regulated and
controlled by the trial court."); <u>St. Paul Fire & Marine Ins. Co.
v. Heath Fielding Ins. Broking Ltd.</u>, <u>supra</u>, 1996 WL 19028 at *7;
<u>Russell v. Hilton Int'l of Puerto Rico, Inc.</u>, 93 Civ. 2552 (KMW),
1995 WL 234886 at *1 (S.D.N.Y. Apr. 20, 1995) (Wood, D.J.); <u>see</u>
<u>Bankers Trust Co. v. Weinick, Sanders & Co.</u>, <u>supra</u>, 1993 WL
478124 at *8.  Defendants have not demonstrated that the six
months remaining in the discovery period are insufficient to
address any additional discovery the amendments may require.

Thus, the fact that defendants will have to expend additional resources to complete discovery is not a sufficient reason to deny leave to amend on the grounds of prejudice.

        3.  Dilatory Motive
           or Bad Faith

While defendants do not explicitly claim that RGL made its motion to amend in bad faith or with dilatory motive, they do argue that RGL's motion (1) is a "tardy attempt at reconsideration of the Court's June 10, 2014 decision . . . which dismissed the same claims it now seeks to resurrect," (2) is a "not-so-veiled end-run" around my Nov. 24, 2014 Order and (3) includes "purely speculative allegations and assumptions in an attempt to get [more] discovery" (Defs.' Opp., at 1, 10 n.2, 21).  Defendants argue that RGL's "willful ignorance" of the dismissal of all of its claims that are not based on the Surviving Transactions and its "repeated and knowing mischaracterization[]" of the defense as "'they simply stole the technology[] and never formally transferred anything'" are not valid justifications for amendment (Defs.' Opp., at 11-12, 14).  RGL contends that Judge Abrams did not limit its claims to those related to the Surviving Transactions and that it seeks to amend the complaint "to make clear that its claims encompass all means of improper transfers"

to correct defendants' misapprehension that its claims are more limited (Pl.'s Mem., at 10, 15-16).

Although there may be some merit to defendants' argument that RGL's motion is motivated by the limitations placed on the scope of its claims and related discovery, as discussed above, the correction of deficiencies in the pleadings is a sufficient and legitimate reason to amend, particularly in light of the determination that there was no undue delay or prejudice.

To the extent that defendants claim RGL's motion is made in bad faith or with dilatory motive, they have provided insufficient evidence to support that objection.

4. <u>Futility</u>

Finally, defendants argue that RGL's motion should be denied because the amendments would be futile.  Defendants assert that the proposed amendments are futile because (1) they are time-barred, (2) they fail to plead demand futility with particularity and (3) the amendments concerning the undocumented transfers fail to state a claim upon which relief can be granted.

"Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim" pursuant to Fed.R.Civ.P. 12(b)(6).  <u>Panther Partners Inc. v. Ikanos Commc'ns, Inc.</u>, 681 F.3d 114, 119 (2d

Cir. 2012), <u>citing</u> <u>Cortec Indus., Inc. v. Sum Holding L.P.</u>, 949
F.2d 42, 50 (2d Cir. 1991); <u>Lucente v. Int'l Bus. Machs. Corp.</u>,
310 F.3d 243, 258 (2d Cir. 2002); <u>In re Francesca's Holdings</u>
<u>Corp. Sec. Litig.</u>, 13 Civ. 6882 (RJS), 13 Civ. 7804 (RJS), 2015
WL 1600464 at *24 (S.D.N.Y. Mar. 31, 2015) (Sullivan, D.J.);
<u>Crichlow v. Fischer</u>, 12 Civ. 7774 (NSR), 2015 WL 678725 at *2
(S.D.N.Y. Feb. 17, 2015) (Román, D.J.).  The party opposing the
amendment has the burden of demonstrating that a proposed amend-
ment would be futile.  <u>Allison v. Clos-ette Too, L.L.C.</u>, 14 Civ.
1618 (LAK)(JCF), 2015 WL 136102 at *2 (S.D.N.Y. Jan. 9, 2015)
(Francis, M.J.); <u>Ferring B.V. v. Allergan, Inc.</u>, 4 F. Supp. 3d
612, 618 (S.D.N.Y. 2014) (Sweet, D.J.).

     A proposed amendment may be denied as futile where the
proposed claim or defense has no "colorable merit."  <u>Martin v.</u>
<u>Baruch Coll.</u>, 10 Civ. 3915 (DAB), 2011 WL 723565 at *4 (S.D.N.Y.
Feb. 18, 2011) (Batts, D.J.) (internal quotation marks and
citation omitted); <u>see</u> <u>also</u> <u>Ryder Energy Distrib. Corp. v.</u>
<u>Merrill Lynch Commodities, Inc.</u>, 748 F.2d 774, 783 (2d Cir. 1984)
(if the movant has "colorable grounds for relief," justice
requires that leave to amend be granted in the absence of undue
delay, bad faith or prejudice (internal quotation marks and
citation omitted)).  The "'colorable grounds' requirement man-
dates that a district court may not deny a motion for leave to

amend a pleading [on futility grounds] when said pleading is sufficient to withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)."  Children First Found., Inc. v. Martinez, No. 1:04-CV-0927 (NPM), 2007 WL 4618524 at *5 (N.D.N.Y. Dec. 27, 2007), citing in part Kassner v. 2nd Ave. Delicatessen, Inc., supra, 496 F.3d at 244; see also Estate of Ratcliffe v. Pradera Realty Co., 05 Civ. 10272 (JFK), 2007 WL 3084977 at *4 (S.D.N.Y. Oct. 19, 2007) (Keenan, D.J.).

In assessing the claimed futility of a proposed amended pleading, the court must assume the truth of the factual allegations in the proposed amended pleading and must then determine whether the plaintiff has alleged any facially plausible claims. Panther Partners Inc. v. Ikanos Commc'ns, Inc., supra, 681 F.3d at 119; Virgil v. Town of Gates, 455 F. App'x 36, 37 (2d Cir. 2012) (summary order); Smith v. NYCHA, 410 F. App'x 404, 405-06 (2d Cir. 2011) (summary order).  A claim is plausible when its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it

stops short of the line between possibility and plausibility of
entitlement to relief." <u>Ashcroft v. Iqbal</u>, <u>supra</u>, 556 U.S. at
696 (internal quotations omitted).  Accordingly, "where the well-
pleaded facts do not permit the court to infer more than the mere
possibility of misconduct, the complaint has alleged -- but it
has not 'show[n]' -- 'that the pleader is entitled to relief.'"
<u>Ashcroft v. Iqbal</u>, <u>supra</u>, 556 U.S. at 679, <u>quoting</u> Fed.R.Civ.P.
8(a)(2).

> a.  Adequacy of RGL's Claims Related to
>     the Undocumented Transfer of Assets
>     <u>and Technology from the CIH Entities</u>

Defendants claim that RGL's proposed amendments seeking
to assert claims related to a broad scheme of undocumented
transfers of assets and technology from the CIH Entities are
futile because the amendments (1) fail to state a claim, (2) fail
to adequately plead demand futility and (3) are time-barred
(Defs.' Opp., at 19-23, 24-25).

RGL argues that its proposed amendments are not futile
because defendants' have admitted the use of the CIH Entities'
technology but have denied that its transfer was accomplished by
the Surviving Transactions or any other documented transactions;
therefore, RGL reasons, the technology must have been obtained by
other means (Pl.'s Mem., at 3).  In addition, RGL bases these

claims, at least in part, on defendants' counsel's statement
allegedly made during a meet and confer that CIH's technology was
potentially transferred by Garrood outside of a formal, docu-
mented transaction, as well as various media-reported statements
by individuals associated with Cantor Nevada (Pl.'s Mem., at 3).
Defendants contend that the bases identified by RGL for its
proposed amendments concerning the undocumented transfers indi-
cate that RGL's "purely speculative assumptions" are not based in
fact and that RGL fails to state a valid claim for breach of
fiduciary duty, aiding and abetting, unjust enrichment, waste or
conversion based upon the undocumented transfers (Defs.' Opp., at
21, 25; see also Pl.'s Mem., at 3).  Defendants contend that RGL
"generally alleges transfers of technology and use of technology,
however [it] provides no specificity regarding:  i) the nature or
character of any of the transfers; ii) when those transfers
occurred; iii) from what CIH entity any of the transfers oc-
curred; iv) who authorized or participated in the transfer
decision; or v) what exactly was transferred or permitted to be
used" (Defs.' Opp., at 10, 21-22).  RGL, citing various allega-
tions from the proposed Second Amended Complaint, claims that the
proposed amendments are sufficiently detailed and state a claim
(Pl.'s Reply, at 10).

RGL's overarching claim regarding the undocumented
transfers is that the transfers of CIH's technology

> may have, in some part, been carried out through the
> documented transactions . . . [; however], on informa-
> tion and belief, significant technology transfers
> occurred without any documentation . . . . by having
> CIH employees -- such as CIH Managing Director Andrew
> Gar[r]ood -- develop such technology for the Cantor
> Nevada entities using the intellectual property he had
> developed for CIH while he was employed there.  Upon
> information and belief, other similar undocumented
> transactions resulted in the misappropriation of intel-
> lectual property belonging to the CIH Entities to allow
> Cantor Nevada to create mobile gaming and in-game
> betting

(SAC ¶ 104).  RGL's claims regarding the undocumented transfers

concern two of the CIH Entities' technologies:  (1) their mobile

gaming technology and (2) the technology underlying the Midas

software.  RGL alleges that, in 2003, CIL developed mobile

betting technology, "Cantor Mobile," and Cantor Nevada appropri-

ated CILLC's mobile betting technology no later than early 2005

(SAC ¶¶ 62-63, 105).  RGL asserts that Cantor Nevada developed

wireless gaming for hand-held devices and then "contracted with

manufacturers to produce about 500 eDeck" devices, which "clearly

required Cantor Nevada to use the mobile technology that origi-

nated with CIL" (SAC ¶¶ 107, 114 (internal quotation marks

omitted)).  RGL cites statements allegedly made by Amaitis,

Lutnick and Joe Asher, the managing director of Cantor Nevada, to

support its claim "that Cantor Nevada appropriated the technology

31

underlying the hand-held gaming devices, which involve technology different than the technology that was transferred pursuant to the 2006 License Agreement or any other transactions as to which documentation has been provided to Plaintiff, without any compensation to -- or even legal transfer from -- CIH Entities" (SAC ¶¶ 105-13, 115).

Second, RGL claims that "[u]pon information and belief, Cantor Nevada's In-Running betting, which allows betting during sporting events, was misappropriated from the CIH Entities" (SAC ¶ 116). It alleges that Garrood began developing the Midas software in 2007 while he was the Managing Director of CIL, a position he held until at least 2009 (SAC ¶ 120, 125, 127). RGL asserts that the Midas software underlies Cantor Nevada's In-Running betting service (SAC ¶¶ 119, 125). RGL claims that the CIH Entities' intellectual property used to create the mobile gaming technology and Midas software was "apparently" transferred "without any recorded transaction" and was "unfair, as a matter of price and process" (SAC ¶ 128).

i. RGL's Claim of
Breach of Fiduciary Duty

RGL seeks to add a claim of a breach of fiduciary duty against CIHLLC, Lutnick, Merkel and Amaitis based on the alleged undocumented transfers (SAC ¶¶ 225-27). RGL claims that they

owed a fiduciary duty to CIH and the other CIH Entities because CIHLLC is the general partner of CIH and Lutnick, Amaitis and Merkel were "officers and/or directors of one or more CIH Enti-ties" (SAC ¶¶ 31, 33-35, 225-27).  Defendants argue that RGL fails to sufficiently allege a claim of breach of fiduciary duty based on the undocumented transfers because RGL does not allege from whom the transfers were made, when the transfers occurred or which defendants participated in the transfers (Defs.' Opp., at 25).

The standards for alleging breach of fiduciary duty are thoroughly described in Judge Abrams' June 10, 2014 decision and they are applied here.  Refco Grp. Ltd. v. Cantor Fitzgerald, L.P., supra, 2014 WL 2610608 at *20-*22.  In general, a breach of a fiduciary's duty of care requires a showing of "gross negli-gence" and a violation of the duty of loyalty requires proof of "willful misconduct."  Refco Grp. Ltd. v. Cantor Fitzgerald, L.P., supra, 2014 WL 2610608 at *20-*22.

Pursuant to Delaware law,[18] a general partner, such as CIHLLC, "owes a partnership fiduciary duties similar to duties directors owe to a corporation," i.e., the duties of care and loyalty.  Brinckerhoff v. Enbridge Energy Co., C.A. No. 5526-VCN, 2011 WL 4599654 at *7 (Del. Ch. Sept. 30, 2011); Stone ex rel. AmSouth Bancorporation v. Ritter, 911 A.2d 362, 370 (Del. 2006).  While the Amended and Restated Limited Partnership Agreement setting forth the rights, powers and responsibilities of the partners in CIH contains an exculpatory provision limiting CIHLLC's liability as general partner, it expressly provides that CIHLLC may be held liable for, among other things, acts or omissions attributable to CIHLLC's "willful misconduct, gross negligence or breach of duty" (SAC ¶¶ 56-58; Amended and Restated Limited Partnership Agreement of Cantor Index Holdings, L.P., dated January 1, 2002, § 3.04(a), annexed as Exhibit A to SAC). See Refco Grp. Ltd. v. Cantor Fitzgerald, L.P., supra, 2014 WL 2610608 at *21.

---

[18]In her June 10, 2014 decision, Judge Abrams applied Delaware law in analyzing RGL's derivative claims.  See Refco Grp. Ltd. v. Cantor Fitzgerald, L.P., supra, 2014 WL 2610608 at *9.  Here, too, "[t]he parties' briefs assume that [Delaware] law controls, and such 'implied consent . . . is sufficient to establish choice of law.'"  Krumme v. WestPoint Stevens Inc., 238 F.3d 133, 138 (2d Cir. 2000), quoting Tehran-Berkeley Civil & Envtl. Eng'rs v. Tippetts-Abbett-McCarthy-Stratton, 888 F.2d 239, 242 (2d Cir. 1989).

With regard to the duty of care, the duty owed is one of due care in the fiduciary's decision-making process. <u>Refco Grp. Ltd. v. Cantor Fitzgerald, L.P.</u>, <u>supra</u>, 2014 WL 2610608 at *20. "Gross negligence is the standard for evaluating a breach of the duty of care," <u>Feeley v. NHAOCG, LLC</u>, 62 A.3d 649, 664 (Del. Ch. 2012), and includes the "failure to act on an informed basis" or "conduct that constitutes reckless indifference or actions that are without the bounds of reason." <u>Sutherland v. Sutherland</u>, C.A. No. 2399-VCN, 2013 WL 2362263 at *11 (Del. Ch. May 30, 2013) (internal quotation marks and citation omitted).

RGL makes no allegations concerning (1) the decision-making process underlying the alleged undocumented transfers, (2) whether defendants were grossly negligent in their decision-making or (3) whether they "failed to act on an informed basis." <u>See</u> <u>Refco Grp. Ltd. v. Cantor Fitzgerald, L.P.</u>, <u>supra</u>, 2014 WL 2610608 at *22; <u>Sutherland v. Sutherland</u>, <u>supra</u>, 2013 WL 2362263, at *11. Thus, the proposed amendments fail to state a claim for breach of the duty of care by CIHLLC, Lutnick, Amaitis or Merkel.

The standard for evaluating a breach of the duty of loyalty is "willful misconduct." <u>See</u> <u>Refco Grp. Ltd. v. Cantor Fitzgerald, L.P.</u>, <u>supra</u>, 2014 WL 2610608 at *21, <u>quoting</u> <u>Feeley v. NHAOCG, LLC</u>, <u>supra</u>, 62 A.3d at 664. Willful misconduct may be found "'where the fiduciary intentionally acts with a purpose

other than that of advancing the best interests of the corpora-
tion, . . . with the intent to violate applicable positive law,
or . . . fails to act in the face of a known duty to act, demon-
strating a conscious disregard for his duties.'" Stone ex rel.
AmSouth Bancorp v. Ritter, supra, 911 A.2d at 369, quoting In re
Walt Disney Co. Derivative Litig., 906 A.2d 27, 67 (Del. 2006).

      RGL alleges that the undocumented transfers contributed
significantly to the growth of Cantor Nevada with no or nominal
consideration paid to CIL and that as of January 2010, approxi-
mately 75% of Cantor Nevada's revenue was derived from mobile
gaming, Cantor Nevada anticipated controlling 15% of sports
betting in Nevada by the end of 2010 and Cantor Nevada's annual
revenue was estimated to reach $20 million by 2012 (SAC ¶¶ 89-90,
207).  RGL asserts that during the time Cantor Nevada appropri-
ated the CIH Entities' mobile gaming technology and Midas soft-
ware through the uncompensated, undocumented transfers, Lutnick
was CEO of CILLC and Chairman of both CIL and Cantor Nevada (SAC
¶¶ 128, 132, 207-09).  It is reasonable to infer that Lutnick
knew about the undocumented transactions, particularly in light
of his positions, and that he allowed these transactions to

proceed because they benefitted both himself and Cantor Nevada,
in which he held at least a 68.08% interest[19] (SAC ¶¶ 207-10).

Moreover, RGL asserts that Amaitis, a director or
officer of CIHLLC, CIL and CILLC (including Executive Managing
Director of CILLC since 2004), owes a duty of loyalty to CIH, and
that he materially benefitted from the undocumented transactions
as Cantor Nevada's President from 2004 to January 2009, as Cantor
Nevada's CEO from January 2009 to present and as an owner of a
7.43% interest in Cantor Nevada (SAC ¶¶ 14, 21, 38-41, 45, 129,
227-29).  Similarly, RGL alleges that Merkel, as director or
officer of one or more of the CIH Entities, including CIL, and as
Executive Managing Director, General Counsel and Secretary of
CFLP, which exercises control over CIH's property, owes a duty of
loyalty to CIH, and that he materially benefitted as Cantor
Nevada's Executive Vice President, Chief Legal Officer, General
Counsel and Secretary, as well as through his 2.6% ownership
interest in Cantor Nevada (SAC ¶¶ 15, 21, 33, 38-41, 45, 129,

---

[19]RGL pleads that Lutnick held a 69.17% interest in Cantor
Nevada at one point, but this appears to be in error (see SAC
¶¶ 208, 211).  Rather, it appears Cantor Nevada was owned as
follows:  Lutnick with 68.08%, Amaitis with 7.43%, Merkel with
2.6% and The Howard W. Lutnick Family Trust ("The Lutnick Family
Trust") with 21.89% (SAC ¶¶ 39, 129, 141, 143, 208, 211).  RGL
alleges that Lutnick is the sole member of and controls The
Lutnick Family Trust (SAC ¶ 38).

227-29).[20]  Given their positions, it can be inferred from the
proposed amended complaint that both Amaitis and Merkel knew
about the undocumented transfers, failed to stop them and materi-
ally benefitted from them through their ties to Cantor Nevada.
Taken together, these allegations plausibly allege that Amaitis
and Merkel acted in conscious disregard of their duties of
loyalty to CIH in allowing the transfer of the CIH Entities'
mobile gaming technology and Midas software.

        Finally, with regard to CIHLLC, RGL has not directly
linked CIHLLC to the undocumented transfers and, as Judge Abrams
previously noted, "the extent to which CIHLLC can be charged with
its agents' knowledge of these transactions is unclear." Refco
Grp. Ltd. v. Cantor Fitzgerald, L.P., supra, 2014 WL 2610608 at
*23.  Unlike RGL's claims regarding the Asset Purchase
Agreement,[21] here, RGL has failed to plead plausible facts from

_____

        [20]Judge Abrams previously noted that Merkel's 2.6% ownership
interest in Cantor Nevada, while modest, is not offset by any
interest in CIL.  Refco Grp. Ltd. v. Cantor Fitzgerald, L.P.,
supra, 2014 WL 2610608 at *26 n.25.

        [21]Judge Abrams determined that RGL adequately pleaded facts
from which CIHLLC's knowledge concerning the Asset Purchase
Agreement could be inferred because the Amended Complaint,
quoting CET's S-1/A, alleged that CFLP, itself, contributed CIL's
FFO business to Cantor Nevada through its control of the CIH
Entities' general partner CIHLLC, implying that CIHLLC was at
least aware of that specific transaction.  See Refco Grp. Ltd. v.
Cantor Fitzgerald, L.P., supra, 2014 WL 2610608 at *23-*24.

which it may be inferred that CIHLLC acted, or failed to act, knowingly.

Thus, RGL plausibly alleges that Lutnick, Amaitis and Merkel engaged in willful misconduct, breaching their duties of loyalty to CIH.  It has not plausibly alleged such a claim against CIHLLC.

ii.  RGL's Claim of
<u>Aiding and Abetting</u>

RGL seeks to add a claim of aiding and abetting the aforementioned breaches of fiduciary duty against all remaining defendants except CIHLLC, namely CFLP, CFS, Cantor Nevada, Lutnick, Amaitis and Merkel[22] (SAC ¶¶ 235-44).  Defendants argue, because RGL fails to allege a breach of fiduciary duty, it also fails to state a claim for aiding and abetting a breach of fiduciary duty (Defs.' Opp., at 25 & n.8).

The standard for alleging aiding and abetting a breach of fiduciary duty is also thoroughly described in Judge Abrams' June 10, 2014 decision as follows:

> Under Delaware law, "one who knowingly partici-
> pates in the breach of a fiduciary duty stands liable
> with the primary wrongdoer for injuries resulting from
> the breach or the recovery of profit wrongfully cap-
> tured."  <u>In re USACafes, L.P. Litig.</u>, 600 A.2d at 55.

---

[22]RGL only includes Merkel to preserve the claim for appellate review (SAC at 55 n.9).

Thus, "'[t]he elements of a claim for aiding and abet-
ting a breach of a fiduciary duty are: (1) the exis-
tence of a fiduciary relationship, (2) the fiduciary
breached its duty, (3) a defendant, who is not a fidu-
ciary, knowingly participated in a breach, and (4)
damages to the plaintiff resulted from the concerted
action of the fiduciary and the non-fiduciary.'"
Gotham Partners, L.P. v. Hallwood Realty Partners,
L.P., 817 A.2d 160, 172 (Del. 2002) (quoting Fitzgerald
v. Cantor, No. CIV. A. 16297-NC, 1999 WL 182573, at *1
(Del. Ch. Mar. 25, 1999)).

    Defendants' primary contention is that the com-
plaint does not plausibly allege their knowing partici-
pation in any breach of duty. "Knowing participation
in a . . . fiduciary breach requires that the third
party act with the knowledge that the conduct advocated
or assisted constitutes such a breach." Malpiede v.
Townson, 780 A.2d 1075, 1097 (Del. 2001). "To plead
knowing participation adequately, [a plaintiff] must
allege facts that the [defendant] directly 'sought
to induce the breach of a fiduciary duty' or 'make factual
allegations from which knowing participation may be
inferred.'" In re BJ's Wholesale Club, Inc. S'holders
Litig., C.A. No. 6623-VCN, 2013 WL 396202, at *14 (Del.
Ch. Jan. 31, 2013) (quoting In re Telecommc'ns, Inc.
[S'holders] Litig., No. Civ A 16470-NC, 2003 WL
21543427, at *2 (Del. Ch. July 7, 2003)). "Knowing
participation may be inferred where 'it appears that
the defendant may have used knowledge of the breach to
gain a bargaining advantage in the negotiations' or
'where the terms of the transaction are so egregious or
the magnitude of the side deals is so excessive as to
be inherently wrongful.'" Id. (quoting In re Tele-
commc'ns, Inc. S'holders Litig., 2003 WL 21543427, at
*2).

Refco Grp. Ltd. v. Cantor Fitzgerald, L.P., supra, 2014 WL

2610608 at *27 (footnote omitted).

    Although RGL plausibly alleges a claim of breach of

fiduciary duty against Lutnick, Amaitis and Merkel, RGL fails to

allege any facts that suggest CFLP, CFS, Lutnick, Amaitis or

Merkel <u>participated</u> in the undocumented transactions; rather, as discussed above, RGL merely plausibly alleges that Lutnick, Amaitis and Merkel knew about the transactions and consciously chose to make no effort to stop them.  Unlike RGL's claims for aiding and abetting with respect to the 2006 License Agreement and 2011 License Agreement, which survived defendants' motion to dismiss, here, RGL does not plausibly plead that CFLP, CFS, Lutnick, Amaitis or Merkel were knowing participants such that their knowledge of the transactions rose "to the level of inducing, encouraging, advocating or assisting the underlying breach, as is required for aiding-and-abetting liability."  <u>Refco Grp. Ltd. v. Cantor Fitzgerald, L.P.</u>, <u>supra</u>, 2014 WL 2610608 at *29 (citations omitted).  However, RGL adequately pleads an aiding-and-abetting claim against Cantor Nevada.  Because RGL plausibly alleged that Lutnick, Amaitis and Merkel breached their duty of loyalty to CIH for the undocumented transfers and that they occupied high-level positions within CIL, CFLP and Cantor Nevada at the time of the transactions, their knowledge can be imputed to Cantor Nevada, which was an active participant in and beneficiary of the undocumented transactions.

Thus, RGL sufficiently alleges a claim of aiding and abetting a breach of fiduciary duty related to the undocumented

41

transfers against Cantor Nevada.  It has not sufficiently alleged such a claim against CFLP, CFS, Lutnick, Amaitis and Merkel.

### iii.  RGL's Claim of Unjust Enrichment

RGL also seeks to allege a claim of unjust enrichment based on the undocumented transfers against all defendants.[23] Defendants claim that RGL fails to allege that they were unjustly enriched as a result of the undocumented transfers because RGL fails to identify the nature or value of what was transferred or the nature of the transfer itself, and, therefore, it fails to plead adequately the enrichment of defendants, the loss to CIH or the absence of justification for the transactions (Defs.' Opp., at 25).

> "Unjust enrichment is 'the unjust retention of a bene-fit to the loss of another, or the retention of money or property of another against the fundamental princi-ples of justice or equity and good conscience.'"  Nemec v. Shrader, 991 A.2d 1120, 1130 (Del. 2010) (quoting Fleer Corp. v. Topps Chewing Gum, Inc., 539 A.2d 1060, 1062 (Del. 1988)).  "The elements of unjust enrichment are:  (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law."  Id.

---

[23]RGL includes defendants other than Cantor Nevada, Lutnick, Amaitis and Merkel to preserve the claim for appellate review (SAC at 56 n.10).

<u>Refco Grp. Ltd. v. Cantor Fitzgerald, L.P.</u>, <u>supra</u>, 2014 WL
2610608 at *29.

      RGL seeks to allege that Cantor Nevada's growth as the
result of the undocumented transfers was a material benefit that
enriched Cantor Nevada (SAC ¶¶ 104, 114-16, 207).  It claims
that, in 2006, Cantor Nevada obtained the first license to
manufacture, distribute and operate mobile gaming systems from
the Nevada Gaming Commission and, subsequently, contracted to
provide mobile gaming machines and In-Running betting services
developed from the CIH Entities' technology to casinos in Las
Vegas, Nevada (SAC ¶¶ 72-88).  It further alleges that by January
2010, approximately 75% of Cantor Nevada's revenue was derived
from mobile gaming and that, according to statements by Amaitis,
Cantor Nevada anticipated controlling 15% of sports betting in
Nevada by the end of 2010, with annual revenue estimated to reach
$20 million by 2012 (SAC ¶¶ 89-90).  RGL asserts that Cantor
Nevada's potential IPO will capitalize on its use of the CIH
Entities' technology and that the IPO will allegedly result in a
cash infusion of at least $100 million (SAC ¶¶ 92-103).  Finally,
RGL contends that Lutnick, Amaitis and Merkel benefitted from the
transaction because of their ownership interest and roles in
Cantor Nevada (SAC ¶¶ 129, 208).  The foregoing demonstrates that
RGL has plausibly pleaded that Cantor Nevada, Lutnick, Amaitis

and Merkel[24] benefitted from the alleged undocumented transfer of assets and technology from CIH.[25]

In addition, "'[i]mpoverishment' does not require that the plaintiff seeking a restitutionary remedy suffer an actual financial loss, as distinguished from being deprived of the benefit unjustifiably conferred upon the defendant." Nemec v. Shrader, 991 A.2d 1120, 1130 n.37 (Del. 2010). RGL seeks to allege that it was not compensated for the transfer of technology (SAC ¶ 115) and that, because neither RGL nor the CIH Entities, in which RGL has an interest, benefitted from Cantor Nevada's growth, RGL was impoverished (SAC ¶¶ 128-29, 207-08). RGL adequately pleads impoverishment because it was deprived of the alleged benefit derived by Cantor Nevada, Lutnick, Amaitis and Merkel from the undocumented transfers.

---

[24]For the reasons stated by Judge Abrams in Refco Grp. Ltd. v. Cantor Fitzgerald, L.P., supra, 2014 WL 2610608 at *31-*32, I conclude that the alleged benefit derived by Lutnick, Amaitis and Merkel due to their ownership of Cantor Nevada is not so attenuated or speculative as to prevent reversing any unjust retention of benefit should they be found liable individually.

[25]To the extent RGL seeks to assert an unjust enrichment claim based on the undocumented transfers against CIHLLC, CFS or CFLP, as noted by Judge Abrams, RGL does not adequately plead that they have a stake in Cantor Nevada. Refco Grp. Ltd. v. Cantor Fitzgerald, L.P., supra, 2014 WL 2610608 at *30. Any attempt to bring an unjust enrichment claim against CIH and its wholly-owned subsidiaries, CIHLLC and CFGH, fails for the same reason (see SAC ¶¶ 32-34).

Finally, RGL seeks to allege that Cantor Nevada, Lutnick, Amaitis and Merkel were enriched by the undocumented transfers without CIH's permission and without compensating the CIH Entities (SAC ¶¶ 115, 246), adequately alleging that the claimed enrichment was unjustified.

Accordingly, RGL sufficiently pleads a claim for unjust enrichment related to the undocumented transfers of CIH's assets and technology against Cantor Nevada, Lutnick, Amaitis and Merkel. It has failed to allege adequately such a claim against CFS, CFLP, CIHLLC, CIH, CILLC and CFGH.

iv.  RGL's Claim of
Waste of Assets

RGL seeks to allege a claim of waste of assets against CIHLLC, Lutnick, Amaitis and Merkel (SAC ¶¶ 250-54). Defendants argue that RGL fails to allege a claim of waste based on the undocumented transfers because the circumstances of the undocumented transfers, particularly the consideration received, are not alleged (Defs.' Opp., at 25).

"The test for corporate waste is a stringent one and requires that the plaintiff plead facts showing that no person of ordinary sound business judgment could view the benefits received in the transaction as a fair exchange for the consideration paid by the corporation." In re Lear Corp. S'holder Litig., 967 A.2d

640, 656 (Del. Ch. 2008) (internal quotation marks and citation omitted); Lewis v. Vogelstein, 699 A.2d 327, 336 (Del. Ch. 1997) ("[A] waste entails an exchange of corporate assets for consideration so disproportionately small as to lie beyond the range at which any reasonable person might be willing to trade.  Most often the claim is associated with a transfer of corporate assets that serves no corporate purpose; or for which no consideration at all is received."  (internal citation omitted)).

RGL claims that the CIH Entities received no compensation for the undocumented transfers of technology (SAC ¶ 115).  Because the alleged transfer of the CIH Entities' technology to Cantor Nevada for no consideration was "in effect a gift," see Lewis v. Vogelstein, supra, 699 A.2d at 336, plaintiff sufficiently pleads a claim of waste against CIHLLC, Lutnick, Amaitis and Merkel.

v.  RGL's Claims
of Conversion

RGL seeks to assert a claim of conversion against all defendants (SAC ¶¶ 260-64).  Defendants contend that RGL's claim of conversion resulting from the undocumented transfers fails because it does not sufficiently allege that the CIH Entities had a right to the property (Defs.' Opp., at 25).

46

The elements of a conversion claim are "a) [plaintiff's] right to the property in question and b) . . . defendant['s] hold[ing] the property in contravention of that right." Lorenzetti v. Hodges, 62 A.3d 1224 (Table), 2013 WL 592923 at *3 (Del. 2013) (citation omitted).  "An action for conversion has traditionally applied to the wrongful exercise of dominion over tangible goods.  Following a modern trend, Delaware courts have tentatively expanded the doctrine of property to encompass some intangible goods where the intangible property relations are merged into a document." Carlton Invs. v. TLC Beatrice Int'l Holdings, Inc., Civ. A. No. 13950, 1995 WL 694397 at *16 (Del. Ch. Nov. 21, 1995) (citations omitted); see also 4C, Inc. v. Pouls, Civ. A. No. 11-00778 (JEI/KMW), 2014 WL 1047032 at *9 n.18 (D. Del. Mar. 5, 2014); Israel Discount Bank of N.Y. v. First State Depository Co., Civ. A. No. 7237-VCP, 2013 WL 2326875 at *21 n.211 (Del. Ch. May 29, 2013) (collecting cases).  To state a claim of conversion, the plaintiff must allege "precisely what property the defendant converted." Touch of Italy Salumeria & Pasticceria, LLC v. Bascio, Civ. A. No. 8602-VCG, 2014 WL 108895 at *7 (Del. Ch. Jan. 13, 2014); see also Israel Discount Bank of N.Y. v. First State Depository Co., supra, 2013 WL 2326875 at *21 (requiring that conversion of "specific, identifiable, and tangible property" be alleged to state a claim).

47

RGL fails to allege that it had any tangible interest in the underlying technology because it does not claim any interest that was "merged into a document." <u>Refco Grp. Ltd. v. Cantor Fitzgerald, L.P.</u>, <u>supra</u>, 2014 WL 2610608 at *38 (noting that property interests in proprietary information, such as technology, may support a claim of conversion if that information were "merged into a document" (<u>citing</u> <u>Res. Ventures, Inc. v. Res. Mgmt. Int'l Inc.</u>, 42 F. Supp. 2d 423, 439 (D. Del. 1999))).

Because RGL fails to identify the specific tangible property converted by defendants, it has failed to plead adequately a claim of conversion against defendants.

vi. <u>Summary</u>

Accordingly, if the claims are timely and RGL has adequately pleaded demand futility, issues that are addressed in the succeeding sections, RGL has adequately pleaded claims based on the undocumented transfers for:  (1) breach of fiduciary duty against Lutnick, Amaitis and Merkel; (2) aiding and abetting against Cantor Nevada; (3) unjust enrichment against Cantor Nevada, Lutnick, Amaitis and Merkel and (4) waste of assets against CIHLLC, Lutnick, Amaitis and Merkel.  RGL has failed to state claims related to the undocumented transfers for:  (1) breach of fiduciary duty against CIHLLC; (2) aiding and abetting

48

against any defendant except Cantor Nevada; (3) unjust enrichment against CIHLLC, CFS, CFLP, CIH, CILLC and CFGH and (4) conversion against all defendants.

> b. RGL's Re-Pleading of Its Dismissed Claims Relating to the Transfer of CIL's Trading Activity, the Alleged Increased Related-Party Fees Paid by CIL and the Remaining Undocumented Transfer Claims

Defendants next argue that RGL's reassertion of its dismissed claims relating to the transfer of CIL's trading activity and the increase in related-party fees, as well as its remaining claims related to the undocumented transfers, are futile because (1) they are time-barred and (2) RGL does not remedy the failure of its prior complaint to plead demand futility with particularity (Defs.' Opp., at 17-24).

> i. Timeliness of the Proposed Amendments

Defendants first argue that RGL's remaining proposed amendments are futile because they are time-barred. RGL contends that its claims are timely under Delaware's three-year statute of limitations[26] because (1) the claims relate back to the "original adversary proceeding filed by RGL on December 6, 2012" and (2)

---

[26]Del. Code Ann. tit. 10, § 8106.

the statute of limitations was tolled because defendants "ac-
tively concealed the relevant facts," citing In re Tyson Foods,
Inc. Consol. S'holder Litig., 919 A.2d 563, 585 (Del. Ch. 2007)
(Pl.'s Mem., at 22-23; Pl.'s Reply, at 8 & n.8).  Defendants
contend that RGL's "conclusory," "vague and unsupported" claims
of tolling are insufficient (Defs.' Opp., at 24).  Moreover, they
argue that to the extent RGL can "relate its claims back to the
original adversary pleading, its claims relating [to] the alleged
increase in related-party fees (which RGL alleges occurred in
2003-2006)" are still time-barred (Defs.' Opp., at 24).  Finally,
defendants argue that "RGL's failure to allege any facts suggest-
ing the time frame of the alleged 'undocumented' transfers of
CIH's assets and technology make it impossible for this Court to
determine whether RGL's claims fall within the applicable statue
of limitations" (Defs.' Opp., at 23).

## A.   Relation Back

     RGL first argues that its claims relating to the
undocumented transfers, the transfer of CIL's trading activity
and the increase in related-party fees are timely because they
"relate back" to the original adversary proceeding filed on
December 6, 2012 (Pl.'s Mem., at 22-23; Pl.'s Reply, at 8 & n.8).
RGL contends that it is not seeking to add new claims; rather, it

seeks to "augment allegations set forth in the" original adversary proceeding (Pl.'s Reply, at 8; Pl.'s Mem., at 22-23). Defendants do not challenge the applicability of the relation back doctrine to RGL's proposed amendments; instead, they merely argue that if RGL's claims do relate back, the claims relating to the undocumented transfers are futile because RGL fails to allege any facts regarding the time frame of those transfers to enable the court to determine whether they are time-barred and the claims relating to the increase in related-party fees, which allegedly occurred from 2003 to 2006, are still time-barred (Defs.' Opp., at 23-24).

The "relation back" doctrine, pursuant to Fed.R.Civ.P. 15(c)(2), provides that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out -- or attempted to be set out -- in the original pleading."

> "For a newly added action to relate back, 'the basic claim must have arisen out of the conduct set forth in the original pleading . . . .'" Tho Dinh Tran, 281 F.3d at 36 (quoting Schiavone v. Fortune, 477 U.S. 21, 29, 106 S. Ct. 2379, 91 L.Ed.2d 18 (1986)). Under Rule 15, the "central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading." Stevelman, 174 F.3d at 86 (internal quotations and citation omitted). Where the amended complaint does not allege a new claim but

51

renders prior allegations more definite and precise, relation back occurs." Id. at 87.

Slayton v. Am. Express Co., 460 F.3d 215, 228 (2d Cir. 2006); Stevelman v. Alias Research Inc., 174 F.3d 79, 87 (2d Cir. 1999) ("Where no new cause of action is alleged . . . [the Second Circuit] liberally grants relation back under Rule 15(c).").

Defendants bear the burden of proving the futility of amendment, and defendants do not take issue with RGL's contention that the proposed amendments relate back to the original adversary proceeding. Rather, defendants argue that the claims related to the undocumented transfers fail to allege facts sufficient to determine whether they are time-barred and that the claims related to the increased related-party fees were untimely when RGL brought the original adversary proceeding. Because defendants do not take issue with the relation back of the proposed amendments concerning the transfer of CIL's trading activity and do not argue that they were time-barred as of the date the original adversary proceeding was commenced, those claims are not futile.

## B.   The Undocumented Transfers

Defendants contend that RGL has failed to allege any facts regarding the timing of the undocumented transfers and, therefore, it is impossible to determine whether RGL states

52

valid, timely claims related to the undocumented transfers
(Defs.' Opp., at 22-23).  Fed.R.Civ.P. 8 does not require that a
complaint allege when the events giving rise to the claim oc-
curred, see Burrell v. State Farm & Cas. Co., 226 F. Supp. 2d
427, 440 (S.D.N.Y. 2002) (Koeltl, D.J.), "and while Fed.R.Civ.P.
9(f) provides that averments of time and place are material, that
Rule does not require specific allegations of place and time, but
merely states that when such specific allegations are made, they
are material" to determining whether a pleading is sufficient.
Kiewit Constructors, Inc. v. Franbilt, Inc., No. 07-CV-121A, 2007
WL 2461919 at *2 (W.D.N.Y. Aug. 24, 2007) (internal quotation
marks and citation omitted).  Nothing on the face of the proposed
amended complaint suggests that the claims concerning the undocu-
mented transfers would have been time-barred as of the date of
the original adversary proceeding.  Accordingly, on the existing
record, there is no basis to conclude that the claims concerning
the undocumented transfers are time-barred and futile.

### C.  Tolling and the
### Increased Related-Party Fees

Finally, defendants argue that even if the claims
related to the alleged increase in related-party fees relate
back, they are time-barred now because they were time-barred when
they were first alleged on December 6, 2012 (Defs.' Opp., at 24).

RGL claims that the related-party fees increased as early as 2003 and as late as 2007 (SAC ¶¶ 187-88); therefore, unless the statute of limitations for the related-party fee claims are tolled, they are time-barred, and, therefore, futile.

Plaintiff argues that the three-year statute of limitations applicable to the related-party fees is tolled because defendants "actively concealed facts . . . by failing to provide relevant and timely information to RGL . . . and by failing to comply diligently and completely with the Bankruptcy Court's Rule 2004 Orders," thereby preventing RGL from discovering information concerning Lutnick's ownership interest in CFLP (Pl.'s Mem., at 22 n.49).  RGL claims it has attempted to obtain the "basic financial information about CIH" through its Rule 2004 discovery requests and subpoenas since March 1, 2007, but that (1) prior to defendants' document production in 2012, it had no notice of the transactions underlying its claims, including increased related-party fees, and (2) defendants first produced the document purportedly showing Lutnick's ownership in CFLP less than a month before the service of the instant motion in December 2014 (Pl.'s Mem., at 5-6; 15; SAC ¶¶ 191-95; see FFO Reorg, dated April 28, 2010, annexed as Exhibit C to Jarvis Decl.).  Defendants argue that RGL's arguments are "vague and unsupported" and "such

conclusory allegations are insufficient to establish that" it actively concealed relevant facts from RGL (Defs.' Opp., at 24).

Although a plaintiff does not have to anticipate affirmative defenses in its complaint, where the face of the complaint itself alleges facts that support an affirmative defense, such as by pleading facts that show the claim is time-barred, the complaint fails to state a claim pursuant to Rule 12(b)(6).  See SEC v. Bronson, 14 F. Supp. 3d 402, 407 (S.D.N.Y. 2014) (Karas, D.J.) (collecting cases); Levine v. AtriCure, Inc., 594 F. Supp. 2d 471, 474-75 (S.D.N.Y. 2009) (Holwell, D.J.) (noting that "a litigant may plead itself out of court by unin-tentionally alleging facts (taken as true) that establish an affirmative defense").  Here, RGL alleges that the increased related-party fees were charged no later than 2007 (SAC ¶¶ 186-88), and, therefore, the complaint itself alleges facts that demonstrate the claims concerning the increased related-party fees would be time-barred even if deemed filed as of December 6, 2012.  "When a complaint asserts a claim that is, as here, on its face barred by the statute of limitations, plaintiffs bear the burden of pleading specific facts demonstrating that the statute was tolled."  In re Coca-Cola Enters., Inc. S'holders Litig., C.A. No. 1927-CC, 2007 WL 3122370 at *6 (Del. Ch. Oct. 17, 2007) (citation omitted), aff'd sub nom. Int'l Bhd. Teamsters v. Coca-

Cola Co., 954 A.2d 910 (Del. 2008); see also Barbara v. Marine-

Max, Inc., No. 12-CV-0368 (ARR), 2012 WL 6025604 at *10 (E.D.N.Y.

Dec. 4, 2012);  Puig v. Seminole Night Club, LLC, C.A. No. 5495-

VCN, 2011 WL 3275948 at *4 n.21 (Del. Ch. July 29, 2011); Smith

v. Mattia, C.A. No. 4498-VCN, 2010 WL 412030 at *5 (Del. Ch. Feb.

1, 2010); Gen. Video Corp. v. Kertesz, No. 1922-VCL, 2008 WL

509816 at *4 (Del. Ch. Feb. 25, 2008).

          RGL relies on the doctrine of fraudulent concealment

under which the statute of limitations can be tolled "when a

defendant has fraudulently concealed from a plaintiff the facts

necessary to put him on notice of the truth"; in order for the

doctrine to apply, the "plaintiff must allege an affirmative act

of 'actual artifice' by the defendant that either prevented the

plaintiff from gaining knowledge of material facts or led the

plaintiff away from the truth."  In re Tyson Foods, Inc. Consol.

S'holder Litig., supra, 919 A.2d at 585 (citations omitted);

accord Barbara v. MarineMax, Inc., supra, 2012 WL 6025604 at *10.

          Here, RGL alleges plausible facts sufficient to raise

an issue of fraudulent concealment.  In the proposed Second

Amended Complaint, RGL alleges that it "first learned of the

Affiliated Transactions," which it defines as including the

increased related-party fees, "as a result of the Rule 2004

document production that occurred in 2012 [and that p]rior to

such production, Plaintiff was not provided the necessary documents that could have reasonably placed Plaintiff on notice of such conduct" (SAC ¶ 192).  It claims that "[u]pon information and belief, Defendants hid these matters from Plaintiff or otherwise improperly failed to disclose these matters to Plaintiff" (SAC ¶ 193).  RGL further alleges that, beginning, no later than 2010 and continuing through 2012, it made numerous attempts to obtain discovery, including seeking court intervention, and that defendants withheld or refused to produce documents or information that would have reasonably provided RGL with notice of the increase in related-party fees that form the basis for its proposed amendments (SAC ¶¶ 194-95).  These allegations plausibly plead fraudulent concealment at least through 2012.

Accordingly, RGL adequately pleads facts to toll the limitations period for its claims related to the increased related-party fees until 2012.  Since these amendments relate back to the original filing on December 6, 2012, RGL's proposed amendments related to the increased related-party fees are not futile.[27]

---

[27]Without explanation, after arguing for tolling pursuant to Delaware's doctrine of fraudulent concealment in its initial Memorandum of Law, RGL appears to change course in its Reply, arguing that the statute of limitations is tolled pursuant to the New York doctrine of equitable tolling, citing <u>Koch v. Christie's Int'l PLC</u>, 699 F.3d 141, 157 (2d Cir. 2012).  The standards and
(continued...)

ii.   RGL's Allegations
of Demand Futility

RGL's claims related to the transfer of CIL's trading activity to CFE and the increase in related-party fees were previously dismissed for failure to plead demand futility adequately.  Refco Grp. Ltd. v. Cantor Fitzgerald, L.P., supra, 2014 WL 2610608 at *15, *18, *20.  RGL must also plead demand futility with respect to its claims related to the undocumented transfers.

Because RGL is proceeding "doubly derivatively" as the limited partner in CIH for injury to CIH's subsidiaries, the need to make a demand will be excused as futile only if RGL has pleaded facts for each Challenged Transaction that create a reasonable doubt that CIHLLC, CIH's general partner, was disinterested and could have made an impartial business judgment as to whether to bring the CIH Entities' claims.  See Refco Grp. Ltd. v. Cantor Fitzgerald, L.P., supra, 2014 WL 2610608 at *13, quoting Lambrecht v. O'Neal, 3 A.3d 277, 282, 285-86 (Del. 2010) and Rales v. Blasband, 634 A.2d 927, 933-34 (Del. 1993).  A

---

[27](...continued)
effects of equitable tolling are different in New York and Delaware.  See Barbara v. MarineMax, Inc., supra, 2012 WL 6025604 at *8.  However, because I conclude that the proposed amendments are not barred pursuant to Delaware law, which both parties rely upon in their initial briefs, and because neither party has provided a choice of law analysis, I need not address whether New York law applies or the timeliness of RGL's amendments pursuant to New York's equitable tolling standard.

disabling interest exists when the general partner (1) stands on
both sides of the transaction, (2) materially benefits in a
manner not shared by other partners or (3) faces a substantial
threat of liability from the transaction.  Refco Grp. Ltd. v.
Cantor Fitzgerald, L.P., supra, 2014 WL 2610608 at *14 (citations
omitted).  RGL pleads that a demand on CIHLLC would have been
futile because "CIHLLC is controlled by Lutnick, Lutnick was
interested in each of the [Challenged] Transactions, and Lutnick
and CIHLLC face a substantial threat of liability for the [Chal-
lenged] Transactions" (SAC ¶ 200).  Judge Abrams noted that
"[d]emand will be excused for a particular Challenged Transaction
if CIHLLC is dominated by or beholden to Lutnick and Lutnick
received a material benefit from or faces a substantial threat of
liability for the transaction," as well as for any transaction
"for which CIHLLC faces a substantial threat of liability."
Refco Grp. Ltd. v. Cantor Fitzgerald, L.P., supra, 2014 WL
2610608 at *15.

        Judge Abrams previously determined that "RGL has
adequately pled that Lutnick dominates CIHLLC for purposes of
demand futility."  Refco Grp. Ltd. v. Cantor Fitzgerald, L.P.,
supra, 2014 WL 2610608 at *16.  Accordingly, in order to excuse
its failure to make a demand and to state a claim, RGL must
plausibly plead that, with regard to the undocumented transfers,

59

the transfer of CIL's trading activity and the increased related-party fees, Lutnick had a disabling interest in the transactions or that the transactions expose Lutnick and CIHLLC to a substantial threat of liability.

In determining whether Lutnick was interested in the transactions,

> Lutnick is considered "interested" in a Challenged Transaction if he stood on both sides of the transaction or personally received a material benefit.  See Orrnan, 794 A.2d at 25 n.50.  Generally, the benefit must have been "of such subjective material significance to [Lutnick] that it is reasonable to question whether [he would have] objectively considered the advisability of the challenged transaction to [CIH]."  Id.  However, "whenever a[n] [individual] stands on both sides of the challenged transaction he is deemed interested and allegations of materiality have not been required."  Id.

Refco Grp. Ltd. v. Cantor Fitzgerald, L.P., supra, 2014 WL 2610608 at *17.  "[D]etermination of the sufficiency of allegations of futility depends on the circumstances of the individual case and is within the discretion of the district court."  Kaster v. Modification Sys., Inc., 731 F.2d 1014, 1018 (2d Cir. 1984) (citations omitted).

### A.  Lutnick's Interest in the Undocumented Transfers

With regard to the undocumented transfers of the CIH Entities' technology and assets, defendants argue that RGL fails

60

to plead demand futility with the particularity required by
Fed.R.Civ.P. 23.1(b)(3).[28]   Defendants contend that RGL's claims
are based on "purely speculative allegations and assumptions" and
that "RGL's Second Amended Complaint is devoid of any factual
allegation[s] which identify when these alleged transactions took
place, the type or value of the alleged technology or assets
taken, or Lutnick's or anyone else's role in these transfers,"
thereby preventing a determination of whether Lutnick benefitted
or the extent of Lutnick's involvement in the transactions
(Defs.' Opp., at 21-22).   RGL contends that demand is excused
because Lutnick materially benefitted from the undocumented
transfers and stood on both sides of the transaction (Pl.'s Mem.,
at 20-21; Pl.'s Reply, at 4-6).

       With regard to whether Lutnick materially benefitted,
RGL alleges that the undocumented transfers of the CIH Entities'
assets and technology to Cantor Nevada resulted in the rapid
growth of Cantor Nevada and ultimately benefitted Lutnick, who
held at least a 68.08% ownership interest in Cantor Nevada (SAC

---

[28]Rule 23.1 requires that the plaintiff plead with
particularity all the information needed to determine whether
demand was excused pursuant to the applicable substantive state
law, which in this case is Delaware law.   See Halebian v. Berv,
590 F.3d 195, 211 (2d Cir. 2009).

¶¶ 38-39, 92, 104, 115-16, 128-29).[29]   The proposed Second Amended Complaint includes numerous allegations of Cantor Nevada's expansion of its mobile gaming technology and sports betting services, particularly in Nevada and the United Kingdom from as early as 2003 through 2012, which were developed using the CIH Entities' assets and technologies (SAC ¶¶ 72-103).  RGL contends that Cantor Nevada's growth included the development of eDeck mobile gaming systems, which Amaitis allegedly admitted used variations of CIL's algorithms, and the operation of its In-Running betting services in Nevada resorts and casinos, which were services based on the CIH Entities' Midas software (SAC ¶¶ 82-88, 109, 111, 114, 117).  Moreover, RGL alleges that as of January 2010, 75% of Cantor Nevada's revenue was from mobile gaming, Amaitis anticipated that 15% of all Nevada sports betting would originate with Cantor Nevada by the end of 2010 and Cantor Nevada's revenue was predicted to rise to $20 million by 2012 (SAC ¶¶ 89, 90).  In addition, RGL contends that Cantor Nevada, under its new name CG Technology, plans to pursue an initial public offering that RGL expects will yield at least a $100 million cash infusion, in part from its mobile gaming technology and betting services (SAC ¶ 103).

---

[29]If The Lutnick Family Trust's 21.89% ownership interest is attributable to its sole member, Lutnick, then Lutnick holds an 89.97% interest in Cantor Nevada (SAC ¶¶ 39, 129).

Thus, RGL alleges that the undocumented transfers resulted in the growth and success of Cantor Nevada, that Lutnick, with at least a 68.08% ownership interest in Cantor Nevada, benefitted from that growth and that RGL and the CIH Entities received no compensation for the transfer and reaped no benefit from the growth of Cantor Nevada. Accordingly, RGL adequately pleads that Lutnick materially benefitted from the undocumented transfers to Cantor Nevada in which neither RGL, through its 10% interest in CIH, nor the CIH Entities shared.

In addition, RGL also alleges that Lutnick controlled Cantor Nevada, serving as Chairman of its Board of Directors since 2004 and as CEO from 2004 to January 2009 (SAC ¶¶ 40-41, 44). RGL contends that, at the same time, Lutnick also stood on the CIH Entities' side of the transaction as follows. RGL contends that Lutnick held at least a 10% interest in CFLP, in which he served as Chairman and CEO (SAC ¶¶ 16, 32-34, 44). RGL alleges that CFLP controlled CIH through CIHLP II, CIHLLC and CFS because (1) CFLP was the sole member of CIHLP II, which held an 89% interest in CIH, (2) CIHLLC is the general partner of and holds a 1% interest in CIH and (3) CFS is CIHLLC's sole member and is controlled by CFLP, which is the sole member of CFLP CFS Holdings, LLC, which is the general partner of CFLP CFS I Holdings, L.P., which is the general partner of CFS (SAC ¶¶ 11-13,

63

16, 32-34).  Thus, RGL contends that Lutnick, through his control of CFLP, controls and has an interest in CIH, from whose wholly-owned subsidiaries, CIL and CILLC, RGL alleges assets and technology were transferred through the undocumented transactions without compensation (SAC ¶¶ 19, 30, 32-34, 44, 105, 207).  RGL further alleges that Lutnick served as Chairman of CFS and CIL and Chairman and CEO of CILLC (SAC ¶¶ 44, 209).  Accordingly, RGL plausibly pleads that Lutnick stood on both sides of the transactions through his interest in and control of various CIH Entities and Cantor Nevada, and, therefore, sufficiently pleads demand futility.

Because I have determined that RGL has plausibly pleaded that demand is excused as to the transfer of CIL's trading activity based on Lutnick's domination of CIHLLC and his own interests in the transaction, I need not reach the issue of whether CIHLLC or Lutnick face a substantial threat of liability for the undocumented transfers.

B.   Lutnick's Interest
in the Transfer of
CIL's Trading Activity

With respect to the transfer of CIL's trading activity, Judge Abrams determined that RGL's Amended Complaint failed to allege adequately that Lutnick received a material benefit from

the transfer because (1) "[t]he nature and value of this trading activity [wa]s left unexplained," (2) "the complaint contain[ed] no allegations concerning the extent of Lutnick's ownership interest in CFE or its size relative to Lutnick's interest in CIL," (3) while RGL alleges that "CFLP controls CFE through a chain of general partners and managing members," they were "not alleged to have substantial ownership interests in the limited partnerships or limited liability companies they control" and (4) "the size of Lutnick's ownership interest in CFLP [wa]s unclear." Refco Grp. Ltd. v. Cantor Fitzgerald, L.P., supra, 2014 WL 2610608 at *18. Moreover, Judge Abrams determined that RGL failed to allege plausibly that Lutnick stood on both sides of the transaction because while RGL alleged that "CIL 'management' made the decision to transfer CIL's trading activity to CFE[,] [i]t [wa]s not clear, however, whether Lutnick was a 'director' or 'officer' of CIL, and there [wa]s no indication that he participated in the decision."  Refco Grp. Ltd. v. Cantor Fitz- gerald, L.P., supra, 2014 WL 2610608 at *18 (internal citations omitted).  Defendants contend that the proposed amendments merely include allegations of Lutnick's interest in CFLP and that they fail to address the other deficiencies concerning RGL's pleading of demand futility for the transaction (Defs.' Opp., at 17-18).

With regard to whether Lutnick materially benefitted from the alleged transfer of CIL's trading activity to CFE, RGL has failed to remedy the deficiencies cited by Judge Abrams. RGL's allegations regarding Lutnick's interest in CFLP do appear to address his interest in CFE, as well as CIL[30]. RGL contends that "any increase in revenues resulting from this trading activity would have benefitted CFLP and, by extension, Lutnick, to the detriment of CIL [and] Lutnick has the power to direct CFE's decisions . . . . [I]t is clear that Lutnick benefit[t]ed from the transfer of trading activity and is not disinterested" (SAC ¶ 218).  However, Lutnick only <u>materially</u> benefitted from the transaction if the benefit to him by way of CFLP through its control of CFE was greater than the detriment to him by way of CFLP through its control of CIH whose subsidiary is CIL.[31]  <u>See</u>

---

[30]CIH's general partner is CIHLLC, which also holds a 1% limited partnership interest in CIH (SAC ¶¶ 31-32).  CIHLP II LLC and RGL hold 89% and 10% limited partnership interests in CIH, respectively (SAC ¶¶ 31-32).  CFS is the sole member of CIHLLC, and CFS is controlled by CFLP (SAC ¶¶ 13, 32).  CFLP is the sole member of CIHLP II LLC (SAC ¶¶ 32, 34).  CFLP, therefore, controls CIH, of which CIL is a subsidiary (SAC ¶ 24).

[31]RGL has still failed to allege that many of the general partners and managing members of the limited partnerships and limited liability companies in the chain of control between CFLP and both CFE and CIL had substantial ownership interests in them.  <u>See</u> <u>Refco Grp. Ltd. v. Cantor Fitzgerald, L.P.</u>, <u>supra</u>, 2014 WL 2610608 at *18.  However, RGL appears to attempt to allege that CFLP owned 100% of CFE (meaning Lutnick had a 10% interest in CFE) and that CFLP had, at most, a 90% interest in CIL (meaning
(continued...)

<u>Refco Grp. Ltd. v. Cantor Fitzgerald, L.P.</u>, <u>supra</u>, 2014 WL
2610608 at *25 n.24.  Because RGL fails to allege the relative
sizes of Lutnick's interests in CIL and CFE, it has failed to
plead plausibly that Lutnick materially benefitted from the
transfer.

        However, RGL has plausibly alleged that Lutnick stood
on both sides of the transaction and has, therefore, plausibly
pleaded demand futility with respect to the transfer of CIL's
trading activity.  RGL alleges that CIL's "management" trans-
ferred the trading activity to CFE and that Lutnick was Chairman
of CIL at the time the trading activity was transferred (SAC
¶¶ 16, 169).  Moreover, as described above, RGL alleges that
Lutnick had an interest in both CIL and CFE through CFLP and that
Lutnick had "the power to direct CFE's decisions" (SAC ¶ 218).
Thus, RGL has adequately alleged that Lutnick stood on both sides
of the transaction and participated in the decision to transfer
CIL's trading activity.

        Because I have determined that RGL has plausibly
pleaded that demand is excused as to this transaction based on

_____

        [31](...continued)
Lutnick, at most, had a 9% interest in CIL).  Nevertheless, even
if the value of the trading activity to CIL significantly exceeds
its value to CFE, Lutnick would not materially benefit from the
transfer.  RGL has not pleaded any facts alleging the value of
the trading activity to CFE.

Lutnick's domination of CIHLLC and his own interests on both sides of the transaction, I need not reach the issue of whether CIHLLC or Lutnick face a substantial threat of liability for the transfer of CIL's trading activity to CFE.

C.   Lutnick's Interest
in the Increase in
<u>Related-Party Fees</u>

With respect to the increased related-party fees, Judge Abrams concluded that RGL's Amended Complaint failed to plausibly plead Lutnick's interest in the increased related-party fees paid by CIL to CFE and other Cantor affiliates because, like its allegations regarding the transfer of CIL's trading activity, RGL failed to show a material benefit to Lutnick or that "he stood on both sides" of the transaction because it did "not describe the extent of Lutnick's interest in CFE . . . or his participation in the relevant decisions." <u>Refco Grp. Ltd. v. Cantor Fitzgerald, L.P.</u>, <u>supra</u>, 2014 WL 2610608 at *18.  Defendants argue that RGL's allegation that Lutnick held a 10% interest in CFLP is inadequate to cure the deficiencies regarding demand futility for this transaction (Defs.' Opp., at 17-18).

Here, too, RGL's allegations regarding Lutnick's interests in CIL and CFE are insufficient, as described above.

68

RGL has failed to plead plausibly that Lutnick materially bene-
fitted from the increase in related-party fees.

However, RGL argues that defendants, including Lutnick
through his 10% interest in and control of CFLP, "caused CIL . .
. to pay exorbitant sums to CFLP subsidiary CFE and other CFLP
affiliates through a series of related-party transactions and
agreements" (SAC ¶¶ 21, 186, 190, 219).  This is sufficient to
support an inference that Lutnick participated in the decision to
charge CIL increased related-party fees.  Because, as discussed
above, Lutnick had an interest in both CIL and CFE through CFLP
and "the power to direct CFE's decisions" (SAC ¶¶ 21, 218), he
stood on both sides of the transaction.  RGL has also plausibly
pleaded that Lutnick participated in the decision to increase the
related-party fees.

Accordingly, RGL has adequately alleged that demand is
excused as to the increase in related-party fees.  I need not
reach the issue of whether CIHLLC or Lutnick face a substantial
threat of liability for the increased related-party fees.

III.  Conclusion

Accordingly, for all the foregoing reasons, RGL's
motion for leave to file the Second Amended Complaint is granted
with respect to the amendments that (1) identify parties whose

69

names have changed, (2) remove allegations regarding Cantor
Casino, (3) concern Cantor Nevada's intent to pursue an initial
public offering, (4) relate to the Surviving Transactions, (5)
reassert claims related to the transfer of CIL's trading activity
and the increased related-party fees and (6) assert the following
claims related to the undocumented transfer of the CIH Entities'
assets and technology:  (a) breach of fiduciary duty against
Lutnick, Amaitis and Merkel, (b) aiding and abetting a breach of
fiduciary duty against Cantor Nevada, (c) unjust enrichment
against Cantor Nevada, Lutnick, Amaitis and Merkel and (d) waste
against CIHLLC, Lutnick, Amaitis and Merkel.  To the extent
plaintiff is attempting to reassert the following claims related
to the undocumented transfers, the motion is denied:  (1) breach
of fiduciary duty against CIHLLC, (2) aiding and abetting a
breach of fiduciary duty against all defendants except Cantor
Nevada, (3) unjust enrichment against CIHLLC, CFS, CFLP, CIH,
CILLC and CFGH and (4) conversion as to all defendants.

Plaintiff shall serve and file the Second Amended Complaint no later than July 27, 2015.

Dated:   New York, New York
         July 6, 2015

                              SO ORDERED

                              HENRY PITMAN
                              United States Magistrate Judge

Copies transmitted to:

Geoffrey C. Jarvis, Esq.
Grant & Eisenhofer P.A.
29th Floor
485 Lexington Avenue
New York, New York  10017

Diane T. Zilka, Esq.
Grant & Eisenhofer, PA
Chase Manhattan Centre
1201 North Market Street
Wilmington, Delaware  19801

Nathan A. Cook, Esq.
Grant & Eisenhofer, PA
123 Justison Street
Wilmington, Delaware  19801

Francis X. Riley, III, Esq.
Ruth Rauls, Esq.
Ryan L. Diclemente, Esq.
Saul Ewing LLP
650 College Road East
Princeton, New Jersey  08540