UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

REFCO GROUP LTD., LLC,                    :

                    Plaintiff,     :    13 Civ. 1654 (RA)(HBP)

     -against-                     :    OPINION
                                        AND ORDER
CANTOR FITZGERALD, L.P., et al.,   :

                    Defendants.    :

----------------------------------X

          PITMAN, United States Magistrate Judge:


I.  Introduction

          By notice of motion, dated December 10, 2014, plaintiff

Refco Group Ltd., LLC ("RGL") sought leave to file its Second

Amended Complaint ("SAC").  I granted that motion in part by

Order dated July 6, 2015 (Docket Item 101).  By several letters,

plaintiff seeks permission to file, under seal, certain documents

that were submitted in support of the motion to amend and the SAC

itself and to file redacted versions of those documents on the

Court's ECF system.[1]  For the reasons set forth below, the appli-
cation is granted.

II.  Background

RGL, one of the reorganized debtors in a Chapter 11
bankruptcy case,[2] commenced an adversary proceeding by filing a
complaint, under seal, in the Bankruptcy Court on December 6,
2012.

On March 22, 2013, the Honorable Ronnie Abrams, United
States District Judge, approved the parties' stipulation with-
drawing the reference of the adversary proceeding and allowing

---

[1]As described below, RGL submitted letters on December 10,
2014 (Letter of Geoffrey C. Jarvis, Esq., counsel for RGL, to the
Honorable Ronnie Abrams, United States District Judge, dated
December 10, 2014 ("Dec. 10, 2014 Letter")) and February 13, 2015
(Letter of Geoffrey C. Jarvis, Esq., counsel for RGL, to the
undersigned, dated February 13, 2015 ("February 13, 2015
Letter")).  In response to an Order to show cause, counsel for
plaintiff and defendants submitted a joint letter, dated May 29,
2015, along with copies of the proposed redactions, for in camera
review (Joint Letter of Geoffrey C. Jarvis, Esq. and Ryan L.
DiClemente, Esq., counsel for RGL and defendants, respectively,
to the undersigned, dated May 29, 2015 ("May 29, 2015 Letter")).
Their letter incorporated arguments from a letter of the
defendants, dated June 13, 2013 (Letter of Francis X. Riley III,
Esq., counsel for defendants, to Judge Abrams, dated June 13,
2013, ("June 13, 2013 Letter")).  These letters will be filed on
the Court's ECF system along with this Order; however, any
attached exhibits containing unredacted material will not be
filed.

[2]In re Refco Inc., et al., Ch. 11 Case No. 05-60006 (RDD)
(Bankr. SDNY).

the case to proceed in the Court (Docket Item 3).  On April 15, 2013, Judge Abrams approved the parties' stipulated schedule for filing the Amended Complaint and directed RGL to "submit to the Court a letter setting forth the legal basis for its application to file the Amended Complaint under seal" (Docket Item 9).[3] Subsequently, RGL submitted a letter in further support of its request to file the Amended Complaint under seal; Judge Abrams granted RGL's request to maintain the Amended Complaint under seal temporarily until the parties' dispute as to the appropriate extent of the redactions was resolved (Letter of Geoffrey C. Jarvis, Esq. to Judge Abrams, dated April 16, 2013 (Docket Item 10)).

By notice of motion, dated May 1, 2013, RGL filed a motion to unseal, in part, the Amended Complaint (Docket Item 13).  However, because the parties subsequently reached an agreement as to the appropriate scope of what material should be sealed and redacted from the publicly available version of the Amended Complaint, Judge Abrams denied RGL's motion as moot by Order dated May 23, 2013 (Docket Item 18).  In a letter to Judge

---

[3]RGL's initial letter requesting to file its Amended Complaint under seal is docketed on the Court's ECF system as pages three and four of the approved stipulation (see Letter of Geoffrey C. Jarvis, Esq. to Judge Abrams, dated April 15, 2013 (Docket Item 9)).

Abrams, dated June 13, 2013, defendants submitted the proposed redactions, along with legal support for the application to file the Amended Complaint under seal (June 13, 2013 Letter, _passim_). RGL later filed a redacted copy of the Amended Complaint on the Court's ECF system (Docket Item 25).[4]

By notice of motion, dated December 10, 2014, plaintiff sought leave to file the SAC.  In its December 10, 2014 Letter, plaintiff requested permission to file its motion and accompanying documents, as well as the SAC itself, under seal and to file redacted versions of those documents on the Court's publicly accessible ECF system (Dec. 10, 2014 Letter, _passim_).  By Order dated December 18, 2014, Judge Abrams determined that plaintiff's application is within the scope of the reference to me for general pre-trial matters (Docket Items 43 & 86).  By its February 13, 2015 Letter, plaintiff renewed its application for an Order allowing it "to file under seal the Motion, the Second Amended Complaint, and all briefing on the Motion" (February 13, 2015 Letter, _passim_).

I issued an Order to show cause on April 28, 2015, directing plaintiff to explain "by May 29, 2015 why it should be permitted (1) to file, under seal, the moving papers and its

---

[4]Judge Abrams did not publish an Order granting the application.

second amended complaint and (2) to file publicly redacted versions of those documents on the Court's ECF System" (Order to Show Cause, dated April 28, 2015, (Docket Item 100) at 4-5).  In a joint May 29, 2015 Letter, the parties, relying on the legal arguments originally set forth in the June 13, 2013 Letter, made a joint application to seal part of the briefing on the motion to amend and portions of the SAC (May 29, 2015 Letter, at 1-2 & n.2).

III.  Discussion

    A.  Applicable Law

        As a general principle, judicial proceedings are presumptively open to public scrutiny.  The presumption of access to judicial documents, grounded in both the common law and the First Amendment, "is based on the need for federal courts, although independent -- indeed, particularly because they are independent -- to have a measure of accountability and for the public to have confidence in the administration of justice." United States v. Amodeo, 71 F.3d 1044, 1048 (2d Cir. 1995) ("Amodeo II").  As the late Honorable Peter K. Leisure, United States District Judge, explained:

        Accessibility of judicial documents and proceed-
        ings to the public is a centuries-old component of our

> legal system. <u>United States v. Amodeo</u>, 44 F.3d 141, 145
> (2d Cir. 1995) . . . .  Openness of judicial workings
> is, among other things, crucial to the citizenry's
> ability to "keep a watchful eye on the workings of
> public agencies", <u>Nixon v. Warner Communications, Inc.</u>,
> 435 U.S. 589, 598, 98 S. Ct. 1306, 55 L.Ed.2d 570
> (1978), especially with respect to the judges of the
> Article III courts, who are not elected.  Thus, while
> public access to court records and proceedings is not
> absolute, there has been a long-standing presumption in
> its favor and against sealing. <u>See</u> <u>id</u>.
>
> The Court of Appeals for the Second Circuit has
> held that the decision whether to seal court records
> requires weighing the importance of the presumption of
> public access, depending upon the type of judicial
> function at issue, against the interests sought to be
> protected by sealing. <u>United States v. Amodeo</u>, 71 F.3d
> 1044, 1047-1051 (2d Cir. 1995) . . . .  The motives of
> the party invoking the presumption of public access,
> and those of the party opposing such access, may be
> considered insofar as they bear on the veracity of the
> parties' asserted positions. <u>Cf</u>. <u>id</u>. at 1050.  In all
> events, "a judge must carefully and skeptically review
> sealing requests to insure that there really is an
> extraordinary circumstance or compelling need." <u>In re</u>
> <u>Orion Pictures Corp.</u>, 21 F.3d 24, 27 (2d Cir. 1994).

<u>Encyclopedia Brown Prods., Inc. v. Home Box Office, Inc.</u>, 26 F.

Supp. 2d 606, 610-11 (S.D.N.Y. 1998) (footnote omitted).

The common law right of access attaches to judicial

documents, <u>i</u>.<u>e</u>., documents "'relevant to the performance of the

judicial function and useful in the judicial process.'" <u>Lugosch</u>

<u>v. Pyramid Co. of Onondaga</u>, 435 F.3d 110, 120 (2d Cir. 2006),

quoting United States v. Amodeo, 44 F.3d 141, 145 (2d Cir. 1995)

("Amodeo I").  Under the common law, if the court finds

> that a document is a judicial document and therefore
> that at least a common law presumption of access ap-
> plies, [the court] must "determine the weight" of the
> presumption of access.  [Lugosch v. Pyramid Co. of
> Onondaga, supra, 435 F.3d at 119].  The weight to be
> given to the presumption of access is "governed by the
> role of the material at issue in the exercise of Arti-
> cle III judicial power and the resultant value of such
> information to those monitoring the federal courts."
> [Amodeo II, supra], 71 F.3d [at] 1049 . . . .  "Fi-
> nally, after determining the weight of the presumption
> of access, the court must balance competing consider-
> ations against [disclosure]."  Lugosch, 435 F.3d at 120
> (internal quotation marks omitted).  Only when compet-
> ing interests outweigh the presumption may access be
> denied.  Id. at 119-20.

United States v. Erie County, New York, 763 F.3d 235, 239 (2d

Cir. 2014).

"[T]he public and the press [also] have a 'qualified

First Amendment right'" of access to "'certain judicial docu-

ments,'" including those documents (1) that "'have historically

been open to the press and general public' and [where] 'public

access plays a significant positive role in the functioning of

the particular process in question'" or (2) that "are 'derived

from or [are] a necessary corollary of the capacity to attend the

relevant proceedings.'"  Lugosch v. Pyramid Co. of Onondaga,

supra, 435 F.3d at 120, quoting Hartford Courant Co. v. Pellegri-

no, 380 F.3d 83, 91-93 (2d Cir. 2004).  The First Amendment

7

presumption of access may be overcome "'if specific, on the
record findings are made demonstrating that closure is essential
to preserve higher values and is narrowly tailored to serve that
interest.'" Lugosch v. Pyramid Co. of Onondaga, supra, 435 F.3d
at 120, quoting In re New York Times Co., 828 F.2d 110, 116 (2d
Cir. 1987); see also EEOC v. Kelley Drye & Warren LLP, No. 10
Civ. 655 (LTS)(MHD), 2012 WL 691545 at *2, *3 (S.D.N.Y. Mar. 2,
2012) (Swain, D.J.) (examples of "higher values" which may
justify sealing include third party privacy interests, confiden-
tiality of trade secrets and the risk of creation of a competi-
tive disadvantage by disclosure).

    B.  The Redactions Sought
       by RGL and Defendants

     RGL, joined by defendants, initially proposed to file
publicly a redacted version of its motion to file the SAC and to
file the unredacted version under seal.  The proposed redactions
include the removal of information identical to that redacted in
the Amended Complaint and approved by Judge Abrams ("Original
Redactions"), as well as the removal of new, additional informa-
tion obtained through discovery ("New Redactions").

     RGL's request to seal and redact the documents is based
"solely" on defendants' designation of the material as "confiden-

tial" and the parties' approved stipulated confidentiality
agreement, which requires that any documents filed on the Court's
ECF system that disclose information designated as confidential
"be filed under seal with the Clerk of the Court and kept under
seal until further order of the Court" (May 29, 2015 Letter, at
2-3; Stipulation and Order for the Production and Exchange of
Confidential Information, dated December 8, 2014 (Docket Item 79)
¶ 9). Defendants have agreed to waive their claims of confiden-
tiality as to some of RGL's proposed New Redactions, and RGL does
not object to defendants' remaining claims of confidentiality
(May 29, 2015 Letter, at 2-3). Defendants' reasons for seeking
to prevent disclosure of the information underlying the currently
proposed Original and New Redactions are addressed below (see May
29, 2015 Letter, at 3-4).

### 1. Original Redactions

With regard to the SAC and the exhibits annexed there-
to, the parties propose to maintain the Original Redactions to
(1) paragraphs 34, 132, 139, 178 and 179, (2) Exhibit B at
CantorSubpoena005651[5], (3) Exhibit C at G&W011721, G&W011723,

---

[5]In referencing the exhibits annexed to the SAC, I cite to
the pagination included by RGL in the lower-right corner of each
page.

G&W11741-54 and G&W011794-98, (4) Exhibit D at CantorSubpoena005431 and (5) Exhibit F in its entirety (May 29, 2015 Letter, at 2-3).[6]  Although not identified by the parties, they also appear to seek to maintain the Original Redactions to Exhibit C at G&W0011756-57, G&W011770 and G&W011773.

The parties contend that the Original Redactions approved by Judge Abrams should continue for the same reasons set forth in defendants' June 13, 2013 Letter, in which defendants argued that (1) while the Amended Complaint was arguably a judicial document, the attached exhibits and material in the Amended Complaint that was drawn from those exhibits were not judicial documents because they were "inconsequential to RGL's ability to sufficiently plead the legal causes of action in the Amended Complaint" and (2) "the presumption of access [was] extremely low" because the information had little to do with the claims and defenses  (June 13, 2013 Letter, at 4).  In addition, defendants argued that disclosure would cause "significant and irreparable competitive injury to both Defendants and [a] Non-

---

[6]RGL seeks to make identical redactions to the SAC and its exhibits (A through F) that are annexed as Exhibit A to the Declaration of Geoffrey C. Jarvis in Support of the Memorandum of Law in Support of Plaintiff's Motion for Leave to File a Second Amended Complaint, dated December 10, 2014 ("Jarvis Decl.").  As the proposed redactions are identical for both, I address them together.

Party Entity" because the information was "commercially sensi-
tive," the exhibits contained specific information concerning the
entities' intellectual property and licensing practices, disclo-
sure could harm confidence in the defendants' future agreements
including non-disclosure agreements and disclosure would nega-
tively impact the entities' negotiating capabilities (June 13,
2013 Letter, at 4, 7-8).

          The proposed Original Redactions are identical to those
approved by Judge Abrams in the Amended Complaint.[7]  Accordingly,
with regard to the Original Redactions, the application is
granted.


          2.  <u>New Redactions</u>


          With regard to the SAC and the exhibits annexed there-
to, the parties propose New Redactions to (1) paragraph 176 of
the SAC and (2) Exhibit E (May 29, 2015 Letter, at 2-3).  In the
May 29, 2015 Letter, the parties also withdrew the request to
make the other New Redactions (Supplemental Declaration of
Geoffrey C. Jarvis in Support of Plaintiff's Reply Memorandum in

------

          [7]The corresponding redactions in the Amended Complaint are
found in paragraphs 34, 83, 90, 131 and 132 and its annexed
Exhibits B, C-2, C-3, C-4, C-5, C-7, D and E.

                              11

Further Support of Its Motion for Leave to File a Second Amended
Complaint, dated February 13, 2015).

Exhibit E to the SAC is a term sheet (the "Term Sheet")
that preceded a 2011 License Agreement (Exhibit F to the SAC),
which was redacted in its entirety as part of the Original
Redactions, and paragraph 176 refers to information from the Term
Sheet.  Defendants contend that, like the 2011 License Agreement,
the New Redactions include commercially sensitive information
regarding "a confidential reciprocal license agreement between
Cantor Nevada and a third party who is not named or involved in
this litigation" (May 29, 2015 Letter, at 3).  Defendants claim
that disclosure of the information will competitively disadvan-
tage both parties to the agreement because it includes descrip-
tions of "the specific patents[8] at issue and the material terms
of the agreement, including the proposed compensation to each
party" (May 29, 2015 Letter, at 3).  Defendants argue that this
is the type of material protected by Fed.R.Civ.P. 26(c)(1)(G) and
that has been routinely protected from public disclosure (May 29,
2015 Letter, at 3).

---

[8]Given that patents are public documents, it is not entirely
clear what harm would result from their disclosure.

a.   Common Law
     Right of Access

Assuming the New Redactions are being made from judi-
cial documents,[9] the presumption of access to these documents is
low, because the redacted information is minimally relevant to
the parties' claims and does not appear necessary to or helpful
in resolving the motion for leave to amend.  See Amodeo II,
supra, 71 F.3d at 1050 ("Where testimony or documents play only a
negligible role in the performance of Article III duties, the
weight of the presumption is low and amounts to little more than
a prediction of public access absent a countervailing reason.").
My Opinion and Order dated July 6, 2015 granting in part the
motion to file the SAC demonstrates that the specifics of the
license described in the redacted information was not material to
the resolution of that motion.

In addition, the defendants' interest in maintaining
the confidentiality of the information appears to outweigh any
public interest in disclosure.  Defendants have demonstrated that
the New Redactions contain confidential information concerning an

---

[9]In the May 29, 2015 Letter, the parties do not address
whether the documents constitute "judicial documents"; however,
the proposed SAC is clearly a judicial document as it is the type
of document that courts must rely upon in deciding whether to
grant leave to amend.  See Ello v. Singh, 531 F. Supp. 2d 552,
584 & n.32 (S.D.N.Y. 2007) (Karas, D.J.).

13

agreement with a non-party entity[10] and that the interests of defendants and the non-party entity in maintaining the confidentiality of the information appear to outweigh the public interest in access to the judicial documents.  See Alexander Interactive, Inc. v. Adorama, Inc., 12 Civ. 6608 (PKC)(JCF), 2014 WL 4346174 at *2 (S.D.N.Y. Sept. 2, 2014) (Francis, M.J.) (allowing documents containing confidential information concerning the business relationship between defendant and a non-party entity to be filed under seal); GoSMiLE, Inc. v. Dr. Jonathan Levine, D.M.D. P.C., 769 F. Supp. 2d 630, 649-50 (S.D.N.Y. 2011) (Castel, D.J.) (granting motion to seal documents containing "highly proprietary material concerning the defendants' marketing strategies, product development, costs and budgeting"); Gelb v. Am. Tel. & Tel. Co., 813 F. Supp. 1022, 1035 (S.D.N.Y. 1993) (McKenna, D.J.) (noting that "defendants' assertion that its competitors . . . could use [the information] to do competitive injury to the defendants is, on the facts of this case, a sufficient basis" for sealing); see also Fed.R.Civ.P. 26(c)(1)(G) (permitting issuance of a protective order, for good cause, to prevent disclosure of "a trade

---

[10]The New Redactions include information regarding the material terms of defendants' agreement with the non-party entity, which was memorialized in the originally redacted 2011 Licensing Agreement, as well as information concerning the nature of their relationship, licensing, specific patents, expenses and compensation.

14

secret or other confidential research, development, or commercial information").

        b.  Qualified First
           <u>Amendment Right of Access</u>

      Assuming the qualified First Amendment right of access is applicable, the New Redactions are designed to protect the "higher value[]" of protecting confidential business information, as discussed above, while also being "narrowly tailored to serve that interest." <u>Lugosch v. Pyramid Co. of Onondaga</u>, <u>supra</u>, 435 F.3d at 120 (internal quotation marks and citation omitted); <u>see</u> <u>PDV Sweeny, Inc. v. ConocoPhillips Co.</u>, 14 Civ. 5183 (AJN), 2014 WL 4979316 at *3 (S.D.N.Y. Oct. 6, 2014) (Nathan, N.J.) (determining "that sealing is appropriate with respect to [certain] documents on the basis of their containing sensitive commercial information"); <u>Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.</u>, 07 Civ. 2014 (SWK), 2008 WL 199537 at *8 (S.D.N.Y. Jan. 22, 2008) (Kram, D.J.) (concluding that defendant's "interest in protecting confidential business information outweigh[ed] the qualified First Amendment presumption of public access").  The New Redactions are strictly limited to the information contained within paragraph 176, which cites information from the Term Sheet, and the Term Sheet itself, which was the

precursor to the 2011 License Agreement that was subject to the Original Redactions.

Accordingly, the parties have made a sufficient showing to overcome the presumption in favor of access to the New Redactions.

IV.  Conclusion

Accordingly, RGL is permitted to file the SAC and attached exhibits under seal and to file redacted copies of those documents on the Court's ECF system, in accordance with this Order.

Within 10 days of this Order, RGL is directed to file its motion for leave to amend and all briefing on the motion with supporting documents, including a redacted version of Exhibit A to the Jarvis Declaration, in accordance with this Order.

Within 10 days of this Order, Defendants are directed to file their opposition brief and supporting documents.

Because this Order is being granted without any argument from the press or the public, it is without prejudice to any

possible future application to unseal made by the press or the public.

Dated:     New York, New York
           July 15, 2015

                              SO ORDERED

                              HENRY PITMAN
                              United States Magistrate Judge

Copies transmitted to:

Geoffrey C. Jarvis, Esq.
Grant & Eisenhofer P.A.
29th Floor
485 Lexington Avenue
New York, New York  10017

Diane T. Zilka, Esq.
Grant & Eisenhofer, PA
Chase Manhattan Centre
1201 North Market Street
Wilmington, Delaware  19801

Nathan A. Cook, Esq.
Grant & Eisenhofer, PA
123 Justison Street
Wilmington, Delaware  19801

Francis X. Riley, III, Esq.
Ruth Rauls, Esq.
Ryan L. Diclemente, Esq.
Saul Ewing LLP
650 College Road East
Princeton, New Jersey  08540



Francis X. Riley, III

Phone: (609) 452-3150
Fax:  (609) 514-3744
friley@saul.com
www.saul.com

June 13, 2013

<u>**VIA E-MAIL AND OVERNIGHT DELIVERY**</u>

The Honorable Ronnie Abrams
United States District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

      RE:    ***Refco Group, Ltd., LLC v. Cantor Fitzgerald, L.P. et al.***
            <u>**No. 13-cv-01654 (RA)**</u>

Dear Judge Abrams,

    This firm represents defendants Cantor Fitzgerald, L.P., Cantor Fitzgerald Securities, Lee Amaitis, Stephen M. Merkel, Howard W. Lutnick, CIHLP, LLC, Cantor G&W (Nevada) L.P. ("Cantor Nevada"), Cantor Gaming & Wagering Limited ("Cantor G&W"), Cantor Fitzgerald Europe, and nominal defendants Cantor Index Limited ("CIL"), Cantor Index LLC ("Cantor Index"), Cantor Gaming Limited, Cantor Fitzgerald Game Holdings, LLC and Cantor Index Holdings, L.P. (collectively "Defendants"). I respectfully write on Defendants behalf pursuant to Rule 5.A of Your Honor's Individual Rules & Practices in Civil Cases to request that the Court permit the highlighted portions of the enclosed Exhibits 2 through 6 to be redacted and filed under seal. As per Your Honor's rules, one partial, loose-leaf set of solely those pages on which Defendants seek to redact material are attached as Exhibit 7.

    By way of background, on April 16, 2013, plaintiff Refco Group, Ltd., LLC ("Plaintiff" or "RGL") filed under seal an Amended Complaint and accompanying exhibits in accordance with certain confidentiality agreements entered into by and between the various parties for the production of documents pursuant to certain Rule 2004 Subpoenas that were issued in the bankruptcy proceeding.[1] On or about May 1, 2013, RGL filed a motion to unseal, in part the

---

[1] All of the exhibits attached to the Amended Complaint, with the exception of the Partnership Agreement itself, were produced pursuant to confidentiality agreements. On April 9, 2010, the United States Bankruptcy Court for the Southern District of New York entered an order permitting Debtors to serve a Rule 2004 subpoena on defendant Cantor Fitzgerald Securities ("CFS") for certain limited categories of documents ("April Subpoena"). (05-60006, Docket Entry 6978). In connection with the April Subpoena, RGL entered into a confidentiality agreement dated June 9, 2010 with respect to the documents. RGL later sought and obtained leave, by order dated January 26, 2012

750 College Road East, Suite 100 ♦ Princeton, NJ 08540-6617 ♦ Phone: (609) 452-3100 ♦ Fax: (609) 452-3122
Marc A. Citron · Princeton Managing Partner

DELAWARE    MARYLAND    MASSACHUSETTS    NEW JERSEY    NEW YORK    PENNSYLVANIA    WASHINGTON, DC
A DELAWARE LIMITED LIABILITY PARTNERSHIP

June 13, 2013
Page 2

Amended Complaint and exhibits.  After the filing of the motion and at Your Honor's direction, the parties engaged in discussions in an attempt to reach agreement with regard to the information and documents for which sealing would be requested.  The parties were able to reach an agreement and advised Your Honor.  Accordingly, the Motion to Unseal was denied as moot on May 23, 2013 (Docket Entry No. 18).

The below sets forth the documents and information which Defendants request be redacted and filed under seal and to which RGL has advised it has no objection.

I.      **The Parties' Agreement Regarding The Sealing Of Allegations In And Exhibits Attached To The Amended Complaint**

The Amended Complaint attaches five (5) exhibits:  Exhibit A – the Limited Partnership Agreement; Exhibit B – 2006 License Agreement[2]; Exhibit C – UK Gambling Application[3]; Exhibit D –Asset Purchase Agreement[4]; and Exhibit E – the 2011 License Agreement.[5]  The only exhibits which Defendants seek to have sealed are Exhibits B, C, D and E ("Exhibits").  The parties have reached an agreement regarding the redaction and sealing of specific allegations in the Amended Complaint which contain descriptions of the Exhibits, as well as portions of the relevant exhibits.  The Defendants request and RGL does not object to the sealing of the information set forth below:

(1) all references to the intellectual property contained in the license agreements which consists of:

- portions of paragraphs 83, 90, 131 and 132 in the Amended Complaint (A highlighted version with proposed redactions of the Amended Complaint is attached hereto as Exhibit 2 for the court's *in camera* review)

and amended February 2, 2012, to serve discovery by way of interrogatories and document requests.  (05-60006, Docket Entry 7160).  RGL also served a subpoena to Cantor G&W (Nevada), L.P. ("Cantor Nevada") through the United States Bankruptcy Court for the Southern District of Nevada.  In connection with this discovery, separate confidentiality agreements were entered: one with Cantor Fitzgerald L.P. ("CFLP") and its affiliates, including CFS and Cantor Index Holdings L.P. ("CIH") and its subsidiaries; and one with Cantor Nevada and its subsidiaries. (Attached as Exhibit 1 are copies of the three confidentiality agreements).

[2] Exhibit B to the Amended Complaint is a license agreement entered into on February 7, 2006 among CFPH LLC, Cantor Index and Cantor Nevada  ("2006 License Agreement").

[3] Attached as Exhibit C to the Amended Complaint is a copy of the gambling application that was filed with the Gambling Commission in the United Kingdom ("UK Gambling Application") on behalf of Cantor G&W.

[4] Exhibit D to the Amended Complaint is a copy of the asset purchase agreement dated April 30, 2010 between Cantor Index Limited and Cantor G&W ("Asset Purchase Agreement").

[5] Attached as Exhibit E to the Amended Complaint is a license agreement entered into on June 29, 2011 by and between Cantor Nevada, Cantor Index and a third-party who in not named nor involved in this litigation ("Non-Party Entity") ("2011 License Agreement").

June 13, 2013
Page 3

- the entirety of Schedule A attached to Exhibit B (2006 License Agreement) (CantorSubpoena005651) (A highlighted version with proposed redactions of the 2006 License Agreement is attached hereto as Exhibit 3 for the court's *in camera* review); and

- the entirety of Exhibit E (2011 License Agreement) (A highlighted version with proposed redactions of the 2011 License Agreement is attached hereto as Exhibit 4 for the court's *in camera* review).

(2) Schedule I to Exhibit D (Asset Purchase Agreement) of the Amended Complaint (CantorSubpoena005431) (A highlighted version with proposed redactions of the Asset Purchase Agreement is attached hereto as Exhibit 5 for the court's *in camera* review); and

(3) all portions of Exhibit C (UK Gambling Application) to the Amended Complaint which describe technological processes (Sections 5 - G&W011794 - G&W011798), as well as the Cantor entity's articles of incorporation (G&W011741-011754) (A highlighted version with proposed redactions of the UK Gambling Applications is attached hereto as Exhibit 6 for the court's *in camera* review).

## II.    Selected Portions Of The Amended Complaint And The Exhibits Should Be Redacted And That Information Submitted Under Seal

The presumption of public access to judicial documents is subject to multiple, well-recognized exceptions that are designed to protect precisely the type of information Defendants seek to have maintained under seal in this matter. See Lugosh v. Pyramid Co. of Onondaga, 435 F.3d 110, 119-120 (2d Cir. 2006). As the Second Circuit determined in Lugosh, even a qualified First Amendment right of access "does not end the inquiry." Id. at 120.   A Court may seal or restrict the public's access to any judicial filing or proceeding where there is a legitimate private or public interest which warrant doing so, a clearly defined and serious injury would result if access is provided, and a less restrictive method that can be followed. Id. Accordingly, documents will be sealed when it is demonstrated "that closure is essential to preserve higher values and is narrowly tailored to serve that interest." Id. (citations omitted). The Second Circuit has articulated a three-step analytical process for determining whether documents should be placed under seal.

First, a court must determine whether the presumption of access attaches by determining whether the particular item to be sealed is a judicial document. Lugosch, 435 F.3d at 119. A document or information is a "judicial document" if it is an "item ... relevant to the performance of the judicial function and useful in the judicial process." Lugosch, 435 F.3d at 119 (citations omitted).

Second, if the item sought to be sealed is a judicial document, the court must nevertheless then determine the weight of the presumption of access. Id.  "[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of

June 13, 2013
Page 4

Article III judicial power and the resultant value of such information to those monitoring the federal courts." Id. (quotation omitted). Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to those matters that come within a court's purview solely to insure their irrelevance. Id. at 121 (quotation omitted). When the information sought to be protected "sheds almost no light on either the substance of the underlying proceeding or the basis for the Court's decision," and plays "only a negligible role in the performance of Article III duties, the weight of the presumption is low," and sealing should be afforded Standard Inv. Chartered, Inc. v. Fin. Indus. Regulatory Auth., 2009 WL 2778447, at *2 (2d Cir., Sept. 3, 2009) (referring to and quoting the District Court's decision, Standard Inv. Chartered, Inc. v. Fin. Indus. Regulatory Auth., 2008 WL 199537, *8 (S.D.N.Y., Jan. 22, 2008)).

Finally, after determining the weight of the presumption of access, the court must "balance competing considerations against it." Lugosch, 435 F.3d 120. (quotation omitted). It is well established that in this balancing analysis, competitively sensitive information like that at issue here, should be protected against public disclosure if disclosure would cause significant and irreparable competitive injury. See Standard Inv. Chartered, Inc., 2009 WL 2778447, at *2 (regulatory organization's "'interest in protecting confidential business information outweighs the qualified First Amendment presumption of public access.'"); GoSMiLE, Inc. v. Dr. Jonathan Levine, D.M.D. P.C., 769 F. Supp. 2d 630, 649-50 (S.D.N.Y. 2011) (granting motion to seal "highly proprietary material concerning ... marketing strategies, product development, costs and budgeting."); Gelb v. Am. Tel. & Tel. Co., 813 F. Supp. 1022, 1035 (S.D.N.Y. 1993) (granting motion to seal documents based upon the "assertion that its competitors who do not now have this information could use it to do [the party] competitive injury ....").

Here, although the Amended Complaint is arguably a judicial document, the exhibits themselves and the quotations from those exhibits in the Amended Complaint are inconsequential to RGL's ability to sufficiently plead the legal causes of action in the Amended Complaint. In fact, with regard to the continuum of matters that directly affect an adjudication, the narrowly tailored portions of the Exhibits and corresponding allegations in the Amended Complaint that Defendants submit are in need of continued redaction and should be maintained under seal have little to do with RGL's asserted causes of action or a defense to the motion to dismiss. Accordingly, because the information Defendants seek to be protected "sheds almost no light on either the substance of the underlying proceeding or the basis for the Court's [future] decision," the presumption of access is extremely low. That low presumption, coupled with the significant and irreparable competitive injury to both Defendants and the Non-Party Entity that will result if the subject information is publicly disclosed weigh in favor of sealing.

A.    **Attaching the Exhibits in Their Entirety to the Amended Complaint is Unnecessary**

The portions of the Exhibits and allegations in the Amended Complaint which Defendants seek to have redacted and sealed should not be considered judicial documents because they are unnecessary to the claims asserted by RGL.

June 13, 2013
Page 5

Neither the portions of the license agreements, nor the allegations that quote portions of the license agreements are necessary to support RGL's claims. Although RGL has asserted claims arising from the existence of both the 2006 and 2011 License Agreements, there is little need or for their attachment to the Amended Complaint when only a portion of the document is even potentially relevant. See Gelb, 813 F. Supp. at 1034 (recognizing there was no evidentiary reason or procedural requirement for plaintiff's decision to attach certain confidential documents to the complaint). RGL's ability to maintain its causes of action is sufficiently met by generalized descriptions in the body of the Amended Complaint concerning the existence of the patent license agreements, as opposed to the wholesale attachment of either the 2006 or the 2011 License Agreements. Thus, Schedule A of the 2006 License Agreement and the entirety of the 2011 License Agreement, along with verbatim quotations to language from the agreements are not necessary for RGL to assert the causes of action set forth in the Amended Complaint.

The Amended Complaint does not include any allegation pertaining to the Articles of Association or Section 5 contained in the UK Gambling Application, or the employees listed in Schedule I[6] to the Asset Purchase Agreement. Nor do any of the claims set forth in the Amended Complaint in any way rely on these portions of the UK Gambling Application or the Asset Purchase Agreement. (Amended Complaint at ¶¶ 105-114).

Thus, none of the information above has any relevance to the performance of the judicial function nor is it useful in the judicial process. Accordingly, they should not be considered judicial documents.

**B.** **Because the Exhibits and the Allegations in the Amended Complaint Setting Forth the Specific Contents of these Exhibits Do Not Directly Affect the Adjudication Before the Court At This Time, the Presumption of Access is Low**

To the extent the court deems the 2011 License Agreement to be a judicial document, the document, in its entirety, sheds almost no light on the substance of the Amended Complaint, thus the presumption of access is extremely low. See Standard Inv. Chartered, Inc., 2009 WL 2778447, at *2. When particular exhibits are not central to the case or the issues before the court, sealing is appropriate. Gelb, 813 F. Supp. at 1034; see Triquint Semiconductor, Inc. v. Avago Technologies Ltd., 2011 WL 4947343, *2, *5 (D. Arizona, October 18, 2011) (where "the documents are only tangentially related to the underlying cause of action, the public need is lessened" and sealing is appropriate). While the allegation that Cantor Index licensed its intellectual property in the 2011 License Agreement and that Cantor Nevada received the royalty payments is arguably relevant to RGL's claims (Amended Complaint at ¶129), the specific terms and conditions of the agreement and detailed descriptions of the technology is not, at this point, a primary focus in the litigation. Similarly, Schedule A to the 2006 License Agreement, which lists the intellectual property, is not relevant at this point in the litigation. Specifically, the scope

---

[6] With the exception of one individual on this schedule, none of the other persons identified are related to RGL's claims. (Amended Complaint at ¶120).

June 13, 2013
Page 6

of the license for Cantor Index's patents has nothing to due with RGL's assertion that the agreement was influenced by the personal interests of CIH's general partner, affiliates or the Individual Defendants. Nor do the trade-secrets which should be redacted have any bearing on whether RGL has sufficiently pled that demand by it of CIH's general partner was futile, thus permitting it to bring the Amended Complaint's derivative claims. Accordingly, the presumption of access for the entirety of the 2011 License Agreement document is low, as is the presumption of Schedule A of the 2006 License Agreement.

To the extent the court deems the Articles of Association and/or Section 5 of the UK Gambling Application or Schedule I to the Asset Purchase Agreement to be judicial documents, this information sheds no light on the substance of the Amended Complaint, thus the presumption of access is virtually nonexistent. Standard Inv. Chartered, Inc., 2009 WL 2778447, at *2. As set forth above, when particular exhibits are not central to the case or the issues before the court, sealing is appropriate. Here, Section 5 of the UK Gambling Application has nothing whatsoever to do with the claims asserted by RGL as demonstrated by the fact that nowhere in the body of the Amended Complaint does RGL even discuss the section. Similarly, there is no mention whatsoever of the Articles of Association in the Amended Complaint. Neither portion of the UK Gambling Application or Schedule I play any role, let alone a negligible role, in this Court's performance of its Article III duties, accordingly there is little if no presumption of access to it.

    C.    **Because the Exhibits and the Allegations in the Amended Complaint Contain Competitively Sensitive Information, Including Trade Secrets, and Their Public Disclosure Would Cause Significant and Irreparable Competitive Injury, Portions Should Remain Under Seal**

The court has recognized that "higher values" which can defeat the presumption of access include a company's interest in protecting "business information that might harm a litigants competitive standing" and protecting a trade secret. Standard Inv. Chartered, Inc., 2008 WL 199537, *7-9 (citations omitted); see GoSMiLE, Inc., 769 F. Supp. 2d at 649 (sealing documents that were trade secrets); Triquint Semiconductor, Inc., 2011 WL 4947343, * 2 (holding that "the release of trade secrets is a compelling reason 'sufficient to outweigh the public's interest in disclosure and justify sealing court records.'") (citations omitted). A trade secret is defined as "any formula, pattern, device or compilation of information which is used in one's business, which gives him an opportunity to obtain an advantage over competitors who do not know or use it . . . ." Gelb, 813 F. Supp. at 1034 (referencing § 757 of the Restatement (First) of Torts.). Documents that contain costs, development, marketing and distribution information are considered trade secrets that are appropriately sealed. GoSMiLE, Inc., 769 F. Supp. 2d at 649. Specifically, the kind of information that is contained "in a licensing agreement constitutes a trade secret that could harm a litigant's competitive standing." Triquint Semiconductor, Inc., 2011 WL 4947343, * 2. Further, documents that implicate the confidentiality of parties not involved in the litigation at hand or information relating to non-parties is sufficient to justify sealing of the documents. See Triquint Semiconductor, Inc., 2011 WL 4847343, *5 (sealing exhibits that "involve[d] previous business dealing that were collateral to the issues in the case

June 13, 2013
Page 7

and implicate[d] the confidentiality of parties not involved in the current case."); <u>Caxton International Ltd. v. Reserve International Liquidity Fund, Ltd.</u>, 2009 WL 2365246 * 6 (S.D.N.Y., July 20, 2009) (permitting the redaction of documents containing identifying information of non-parties).

With regard to information that might harm a litigant's competitive standing, it is sufficient for the party to identify "particular transactions that it is likely to pursue in the future; it does not have to prove that such transactions are guaranteed to occur." <u>Standard Inv. Chartered, Inc.</u>, 2008 WL 199537, at *7, fn 5.[7] In <u>Standard Inv. Chartered, Inc.</u>, the district held and the Second Circuit affirmed that certain documents were appropriately sealed where the party had defined the injury it stood to suffer by "identifying future transactions with respect to which broad disclosure would cause it to suffer a competitive disadvantage," which if publicly disclosed would permit an outsider to ascertain the party's negotiation tactics. <u>Id.</u> (citing <u>Gelb</u>, 813 F. Supp. at 1035 (holding that "defendants' assertion that its competitors who do not now have [information on marketing tactics] could use it to do competitive injury to the defendants is ... a sufficient basis to grant defendants' motion to seal ...")).

### 1.   The 2006 and 2011 License Agreements

The 2011 License Agreement was individually negotiated by Cantor Index, Cantor Nevada and the Non-Party Entity, contains the material terms of their relationship and is still in effect today. If the 2011 License Agreement is publicly filed, competitors will be able to look at the agreement in its entirety and discern the technology Cantor Index is willing to license, the price at which it is willing to license its technology and the price and terms by which Cantor is willing to obtain a license from a third party. This will put Cantor Index at an unfair competitive disadvantage. Cantor Index is actively engaged in the process of trying to license one or more of the patents listed in the 2011 License Agreement, as well as other Cantor Index patents, to other entities and anticipates engaging in negotiations with specific parties in the near future. If those entities were able to obtain the terms of the 2011 License Agreement, Cantor Index would be at a significant competitive disadvantage in negotiating these agreements. By way of example, the royalty payment structure in the 2011 License Agreement is unique and Cantor Index may not structure a similar deal in the future. Releasing the terms of the 2011 License Agreement will prejudice Cantor Index competitively because it will create expectations for future agreements. Further, given the commercial relationship and the subject matter of the 2011 License Agreement are with a significant player in the gaming industry, the terms of the agreement are commercially sensitive.

Moreover, the 2011 License Agreement is subject to a non-disclosure agreement with the Non-Party Entity. (§ 1.17 and 12.7). Making the terms and conditions of the 2011 License Agreement public will deprive Cantor Nevada, Cantor Index and the Non-Party Entity of bargained for confidentiality that they deem valuable. That has a direct affect on the ability to

---

[7] The analysis applied by the district court to the non-judicial documents was also adopted and applied by the court to the judicial documents. <u>Id.</u> at *8.

June 13, 2013
Page 8

enter into future agreements with third parties, since potential third parties will have less confidence that the terms and conditions they wish to have kept confidential will actually remain confidential. Maintaining the confidentiality of license agreements negotiated by Cantor Index is essential to it business, both as a means of protecting valuable business strategy information and knowledge from competitors, and as a means of protecting its ability to implement a key component of its business strategy by allowing it to negotiate commercially reasonable terms in its agreements.

Cantor Index's ability to leverage the intellectual property it owns through license agreements or other related ventures will be compromised if competitors are able to see the specific terms of its existing agreements, it will inhibit its ability to negotiate optimum terms with respect to future license agreements and will directly affect its ability to engage in the process of licensing additional Cantor Index patents. Similarly, the intellectual property detailed in Schedule A to the 2006 License Agreement will provide competitors with information regarding which patents Cantor Index is willing to license.

Accordingly, in light of the low presumption of access and the significant harm that would result from public disclosure, redaction of the 2011 License Agreement in its entirety and Schedule A of the 2006 License Agreement is appropriate.

### 2.    The UK Gambling Application

The UK Gambling Application was not publicly filed and it contains personal identifying information for certain individuals associated with the application, the complete Articles of Association for Cantor G&W, and the technical specifications for the FFO.[8]

Section 5 of the business plan in the UK Gambling Application is the quintessential trade secret, namely it is the "formula, pattern, device or compilation of information which is used in [Cantor G&W's] business, which gives [it] an opportunity to obtain an advantage over competitors who do not know or use it . . .." Gelb, 813 F. Supp. at 1034 (citing § 757 of the Restatement (First) of Torts.). Section 5 is the technological backbone of the FFO, setting forth the system design for the FFO, including the schematics for the technology and a narrative of the manner in which it functions. It contains essentially the two key pieces of the FFO technology: a description of pricing algorithms and how the technology is integrated into a partners internal software system. Thus, Section 5 provides a step-by-step breakdown of exactly how the FFO works and public disclosure would provide competitors with a road map of the FFO technology, enable those competitors to directly copy the proprietary technology and build an identical system and thus, unfairly compete with Cantor G&W.

Accordingly, in light of the low presumption of access and the significant harm that would result from public disclosure, redaction of Section 5 is appropriate. Further, because the

---

[8] The Fixed Financial Odds business ("FFO") is a betting operation which provides for computerized wagering.

June 13, 2013
Page 9

Articles of Association for Cantor G&W have no relevance to RGL's claims, there is no basis to make them publicly available.

## **CONCLUSION**

Due to the low presumption of public access and the competitive injury that will result from public disclosure, Defendants respectfully request: that portions of the Amended Complaint be redacted and filed under seal in the form attached as Exhibit 2; Exhibit E (2011 License Agreement) be sealed in its entirety;  Schedule A of Exhibit B (2006 License Agreement) be redacted and sealed in its entirety; Schedule I of Exhibit D (Asset Purchase Agreement) be redacted and sealed in its entirety; and the following portions of Exhibit C (UK Gambling Application) be redacted and sealed – personal identifying information, Section 5 and Cantor G&W's Articles of Incorporation.

Respectfully submitted,

SAUL EWING, LLP

By: _____
Francis X. Riley III (admitted *pro hac vice*)

cc:     Geoffrey Jarvis



Grant & Eisenhofer P.A.

123 Justison Street    Wilmington, DE 19801    Tel: 302-622-7000    Fax: 302-622-7100

485 Lexington Avenue
New York, NY 10017
Tel: 646-722-8500
Fax 646-722-8501

1747 Pennsylvania Avenue, N.W., Suite 875
Washington, DC 20006
Tel: 202-386-9500
Fax: 202-386-9505

30 N. LaSalle Street, Suite 1200
Chicago, IL 60602
Tel: 312-214-0000
Fax: 312-214-0001

WRITER'S DIRECT DIAL NUMBER
Direct Dial: (302) 622-7040
gjarvis@gelaw.com

December 10, 2014

**VIA E-MAIL AND HAND DELIVERY**

The Honorable Ronnie Abrams
United States District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

      RE:   *Refco Group Ltd., LLC v. Cantor Fitzgerald, L.P.*, No. 13-cv-01654 (RA)

Dear Judge Abrams:

      I write on behalf of Refco Group Ltd., LLC ("Plaintiff"), the plaintiff in the above-referenced action (the "Action"), pursuant to Rule 5.A of Your Honor's Individual Rules & Practices in Civil Cases ("Rule 5.A"), to request permission to file under seal certain court filings accompanying Plaintiff's Motion For Leave To File A Second Amended Complaint (the "Motion"), and to publicly file a redacted version of those documents. Plaintiff has served the Motion today, and intends to docket it through the ECF system, but respectfully submits that certain material should not be publicly filed.

      Prior to commencing the Action, Plaintiff sought and obtained leave from the U.S. Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") to examine a number of entities under Bankruptcy Rule 2004 (each, an "Examination Party").[1] Certain of the Examination Parties required that Plaintiff execute a confidentiality agreement (the "Bankruptcy Confidentiality Agreement") that, among other things, governs the manner in which information produced and designated by an Examination Party as confidential may be submitted to the Court. A copy of the Bankruptcy Confidentiality Agreement is attached as Exhibit A hereto.

---

[1] *Plaintiff commenced the Action in the Bankruptcy Court on December 6, 2012. By stipulation, dated March 21, 2013, the parties agreed that the reference of the Action should be withdrawn and that the Action should proceed in this Court. Your Honor approved the stipulation on March 22, 2013.

The Honorable Ronnie Abrams
United States District Court for the Southern District of New York
December 10, 2014
Page 2

    Subsequently, in this Action, Defendants produced certain documents in response to Plaintiff's written discovery demands. Those documents bear confidentiality designations. The Court entered the Stipulation and Order For the Production and Exchange of Confidential Information on December 8, 2014 (the "Order") (Dkt. # 79). Paragraph 5 of the Order prohibits the public filing of documents designated by the parties as confidential.

    Plaintiff's proposed Second Amended Complaint ("SAC"), the exhibits thereto, and its submissions in support of its accompanying Motion, incorporate and rely on information designated as confidential by Defendants. To avoid any potential claim that Plaintiff has violated any provisions of the Bankruptcy Confidentiality Agreement or the Order, Plaintiff hereby requests permission to: (a) file under seal Plaintiff's Memorandum of Law in support of the Motion (the "MOL"); (b) file under seal the Declaration of Geoffrey C. Jarvis, dated December 10, 2014, and all exhibits thereto, which include the proposed SAC (the "Declaration"); and (c) publicly file a redacted version of the MOL and the Declaration with exhibits.[2]

    As required by Rule 5.A, I have enclosed: (1) the MOL and the Declaration, including its exhibits, with the material in each document that Plaintiff proposes be redacted highlighted; and (2) a looseleaf set of the unredacted version of just the pages that contain the material that Plaintiff proposes to redact.

    We are available at the Court's convenience should Your Honor have any questions concerning the above.

                         Respectfully, submitted,

                         Geoffrey C. Jarvis

Enclosures

cc: All Counsel

---

[2] Plaintiff does not waive objections to the confidential designation of material cited in the SAC and in support of the Motion, and reserves all rights thereto.



Grant & Eisenhofer P.A.

485 Lexington Avenue    New York, NY 10017    Tel: 646-722-8500    Fax: 646-722-8501

123 Justison Street
Wilmington, DE 19801
Tel: 302-622-7000
Fax: 302-622-7100

1747 Pennsylvania Avenue, N.W., Suite 875
Washington, DC 20006
Tel: 202-386-9500
Fax: 202-386-9505

WRITER'S DIRECT DIAL NUMBER
(302) 622-7040

30 N. LaSalle Street, Suite 1200
Chicago, IL 60602
Tel: 312-214-0000
Fax: 312-214-0001



February 13, 2015

**VIA HAND DELIVERY**
Honorable Henry B. Pitman
United States District Court, Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

> **Re:** *Refco Group Ltd., LLC v. Cantor Fitzgerald, L.P., et al.,*
> **C.A. No. 1:13-cv-01654-RA-HBP**

Dear Judge Pitman:

On December 10, 2014, pursuant to Rule 5.A of the Honorable Ronnie Abrams' Individual Rules & Practices in Civil Case, Plaintiff Refco Group Ltd. LLC ("RGL") submitted a letter request to file under seal certain documents. Specifically, RGL sought to file under seal its Motion for Leave to File a Second Amended Complaint ("Motion") along with a proposed Second Amended Complaint. RGL submitted the Motion to Judge Abrams' chambers along with the unopposed request to file the documents under seal.

On December 16, 2014, the parties submitted to Judge Abrams a stipulation pursuant to which Defendants' Opposition to RGL's would be due on January 23, 2015, and RGL's Reply would be due on February 13, 2015. Judge Abrams approved the Stipulation on December 23, 2014. Dkt. #87.

Because the Motion falls within the reference of pre-trial matters to Your Honor, Dkt. #42, Judge Abrams ruled that it was not properly before her. Therefore, she directed RGL to bring the Motion to Your Honor's attention. Dkt. # 86. Judge Abrams then decided to hold in abeyance her ruling on RGL's Objections to the November 24, 2014 Order, Dkt. # 80, until such time as the Motion is decided. Dkt. # 99.

On January 23, 2015, Defendants served RGL with their Opposition to the Motion. Enclosed herewith are courtesy copies of (i) the letter request to file under seal, which was submitted to Judge Abrams; (ii) redacted and unredacted copies of the Motion; (iii) clean and redline copies of the proposed Second Amended Complaint; (iv) Defendants' Opposition to the Motion; and (v) RGL's Reply in further support of the Motion. These documents have not been filed on ECF, as the parties are awaiting a ruling on RGL's request to file under seal. To the

❖

The Honorable Henry Pitman
February 13, 2014
Page 2

extent it is necessary, RGL hereby renews its request to file under seal the Motion, the Second
Amended Complaint, and all briefing on the Motion.

In addition, pursuant to Your Honor's Individual Practice No. 2.E, RGL hereby requests
oral argument on the Motion.

We are available at the Court's convenience should Your Honor have any questions
concerning the above.

Respectfully submitted,

Geoffrey C. Jarvis

Enclosures

cc: All Counsel



**Grant & Eisenhofer P.A.**

123 Justison Street   Wilmington, DE 19801   Tel: 302-622-7000   Fax: 302-622-7100

485 Lexington Avenue
New York, NY 10017
Tel: 646-722-8500
Fax: 646-722-8501

1747 Pennsylvania Avenue, N.W., Suite 875
Washington, DC 20006
Tel: 202-386-9500
Fax: 202-386-9505

30 N. LaSalle Street, Suite 1200
Chicago, IL 60602
Tel: 312-214-0000
Fax: 312-214-0001

WRITER'S DIRECT DIAL NUMBER

(302) 622-7040

May 29, 2015

### FOR IN CAMERA REVIEW ONLY



**VIA HAND DELIVERY**
Honorable Henry B. Pitman
United States District Court, Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

> **Re:**  *Refco Group Ltd., LLC v. Cantor Fitzgerald, L.P., et al.,*
> **C.A. No. 1:13-cv-01654-RA-HBP**

Dear Judge Pitman:

The undersigned counsel for Plaintiff Refco Group Ltd., LLC ("RGL") and counsel for Defendants ("Cantor") in the above-captioned action hereby respond to the Court's April 28, 2015 Order to Show Cause ("Show Cause Order").

On December 10, 2014, pursuant to Rule 5.A of the Honorable Ronnie Abrams' Individual Rules & Practices in Civil Case, RGL submitted a letter request to file under seal certain documents. Specifically, RGL sought to file under seal its Motion for Leave to File a Second Amended Complaint ("Motion") along with a proposed Second Amended Complaint ("SAC") and accompanying exhibits. On February 13, 2015, pursuant to an order issued by Judge Abrams, RGL submitted to Your Honor a letter bringing the Motion to Your Honor's attention.

On April 28, 2015, Your Honor issued the Show Cause Order, requiring RGL to "show cause by May 29, 2015 why it should be permitted (1) to file, under seal, the moving papers and its second amended complaint and (2) to file publicly redacted versions of those documents on the Court's ECF system." Dkt. # 100. This letter serves as the parties' response.

#### A. Judge Abrams' Previously Approved Certain Redactions.

RGL commenced an adversary proceeding against Cantor arising from an underlying bankruptcy proceeding, *In re Refco Inc.*, Case No. 05-60006 (Bankr. S.D.N.Y.). On December 7, 2012, the Honorable Robert Drain of the U.S. Bankruptcy Court for the Southern District of New York authorized RGL to file its complaint under seal. Case No. 05-60006, Dkt. # 7204. RGL filed its complaint on December 6, 2012. Adversary Proc. No. 12-02054 (S.D.N.Y.). Thereafter, the

The Honorable Henry Pitman
May 29, 2015
Page 2

bankruptcy reference was withdrawn and this matter was transferred to the U.S. District Court, and assigned to the Honorable Ronnie Abrams. Judge Abrams granted the parties leave to maintain the complaint under seal until such time as Defendants presented their arguments for maintaining the seal protection. Case No. 13-01654, Dkt. #10. On May 1, 2013, RGL filed a motion to unseal, in part, the Amended Complaint and exhibits. *Id.* at Dkt. #13. At the direction of Judge Abrams, the parties subsequently attempted to reach an agreement regarding the information and documents for which sealing would be requested. The parties reached an agreement and the motion to unseal was denied as moot. *Id.* at Dkt. #18. On June 13, 2013, Cantor submitted certain redactions to the Court for in camera review, along with an in-depth analysis supporting its contention that certain documents and information, including the 2011 License Agreement[1], should be withheld from public disclosure. A true and correct copy of Cantor's June 13, 2013 Letter to the Honorable Ronnie Abrams is attached hereto as **Exhibit A**. Thereafter, the Court permitted RGL to file a redacted version of the Amended Complaint on the public docket. *Id.* at Dkt. #25.

The redactions originally presented in the Amended Complaint have been carried forward to the SAC and the Motion ("Original Redactions"). In addition, the SAC and the Motion also contain new, additional redacted information obtained from documents produced in discovery ("New Redactions"). Attached hereto as Exhibit B is a copy of the Second Amended Complaint with the Original Redactions highlighted in yellow and the New Redactions, which were revised as described below, highlighted in green

## B. RGL Withdraws Its Request to File Under Seal As To Certain Portions Of The Motion And SAC.

Following the issuance of the Court's Show Cause Order, the parties conferred to determine whether RGL could withdraw its request to file any of the New Redactions under seal. As RGL explained in its request to file under seal, it sought leave to file the New Redactions under seal because those portions of the SAC and the Motion concerned facts discovered from documents that Cantor had designated as "confidential." Pursuant to the Stipulation and Order for the Production and Exchange of Confidential Information, which the Court entered on December 8, 2014, information designated as confidential must "be filed under seal with the Clerk of the Court and kept under seal until further order of the Court." Dkt. #79, ¶ 9.

Cantor has agreed to waive its claim of confidentiality as to nearly all of the material underlying the New Redactions. Accordingly, RGL withdraws its request to file under seal the redacted material in the SAC at pages 6, 11, 40, 44, 51, and it withdraws its request to file under seal the redacted material in the Motion at pages 11, 15, 16, 21 and 22. In addition, RGL withdraws its request to file under seal the redacted material in paragraph 170 on page 41 of the SAC. However, RGL maintains its request to file under seal the remaining redactions on pages 41-42 of the SAC, Exhibit B and the remaining proposed redacted material in the SAC, including all material underlying the Original Redactions. It makes this request solely on the basis that Cantor has designated the information as

---

[1] The 2011 License Agreement refers to a license agreement entered into on June 29, 2011, by and between Cantor Nevada, Cantor Index, and a third party who is not named nor involved in this litigation.

The Honorable Henry Pitman
May 29, 2015
Page 3

confidential, the reasoning for which is set forth below by Cantor.   RGL does not object to Cantor's request to seal the specified portions of the SAC, and Exhibit E.

### C.  **Cantor Maintains Its Claim Of Confidentiality As To The Term Sheet Relating To The 2011 License Agreement.**

The only new allegations and/or information Cantor seeks to seal relates to a confidential term sheet (the "Term Sheet") which preceded the 2011 License Agreement. *See* SAC, para. 176, and Ex. E. As described in detail above, the Court previously permitted the parties to redact the entire 2011 License Agreement, along with any allegations relating to the same. See SAC, Ex. F. Accordingly, the Term Sheet, which predates and simply "summarizes the principal business terms" of the reciprocal license agreement should likewise be redacted and sealed.[2] Similar to the 2011 License Agreement, the Term Sheet identifies and describes the specific patents at issue and the material terms of the agreement, including the proposed compensation to each party.

As described in its June 13, 2013 letter to the Court, this is precisely the type of "commercial information" Fed. R. Civ. P. 26(c)(1)(G) was created to protect from public disclosure.   There can be little doubt that disclosing the terms of a confidential reciprocal license agreement between Cantor Nevada and a third-party who is not named nor involved in this litigation would place both parties at a competitive disadvantage if this information was made public. Courts have routinely protected such information from public disclosure. *See* Vesta Corset Co. v. Carmen Founds., Inc., 97 Civ. 5139, 1999 WL 13257, at *2 (S.D.N.Y. Jan. 13, 1999) (noting protocol to treat parties' cost information as confidential and holding, "Pricing and marketing information are widely held to be 'confidential business information' that may be subject to a protective order"); *see also* Vista India, Inc. v. Raaga, LLC, 2008 WL 834399, at *3 (D.N.J. Mar. 27, 2008) (order sealing confidential license and settlement agreements and portions of the transcript discussing the same and finding the party "has a legitimate private interest in maintaining the confidentiality of the terms of its agreements and… that it will suffer a competitive disadvantage if its license and settlement agreements are disclosed."); Mar, Inc. v. JCM Am. Corp., 2007 U.S. Dist. LEXIS 9819, at *2, 2007 WL 496816 (D.N.J. Feb. 13, 2007) (finding a legitimate privacy interest in maintaining the confidentiality of terms to a business agreement that are not available to the public because otherwise the parties to the agreement could lose their future competitive negotiating positions and strategies, causing them to suffer serious injury).

As such, Cantor respectfully requests that the referenced allegations and exhibits relating to confidential Term Sheet be sealed and prohibited from public disclosure. As to all other New Redactions, RGL respectfully withdraws its request to file under seal. For the Court's convenience, attached hereto as **Exhibit B** is a copy of the SAC and the Motion reflecting the revised redactions. The Original Redactions are highlighted in yellow and the New Redactions are highlighted in green. The attached document will not be filed on the public ECF system.

---

[2] Cantor hereby incorporates by reference the authorities cited and referenced in its June 13, 2013 Letter to the Court. See **Exhibit A.**

The Honorable Henry Pitman
May 29, 2015
Page 4

We are available at the Court's convenience should Your Honor have any questions concerning the above.

Respectfully submitted,

Geoffrey C. Jarvis
*Counsel for Plaintiff*

Ryan L. DiClemente
*Counsel for Defendants*

cc: All Counsel