## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| REFCO GROUP LTD., LLC, <br><br> Plaintiff, <br><br> v. <br><br> CANTOR FITZGERALD, L.P., et al., <br><br> Defendants. | C.A. No. 1:13-cv-01654 – RA-HBP |

---

## DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT

---

**SAUL EWING LLP**
A Delaware LLP
Francis X. Riley III
Ruth A. Rauls
Ryan L. DiClemente
650 College Road East, Suite 4000
Princeton, NJ 08540
(609) 452-3100

*Attorneys for Defendants Cantor Fitzgerald, L.P., Cantor Fitzgerald Securities, CIHLP, LLC, Cantor G&W (Nevada) L.P., Lee Amaitis, Stephen Merkel, Howard Lutnick, and Nominal Defendants Cantor Index Holdings, L.P., Cantor Index LLC, Cantor Gaming Limited, and Cantor Fitzgerald Game Holdings, LLC*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...........................................................................................1

STATEMENT OF FACTS AND RELEVANT PROCEDURAL HISTORY ..............................2

    I.      RELEVANT PROCEDURAL HISTORY...............................................................2

          A.     RGL's First Amended Complaint, Motion to Dismiss and Decision ..........2

          B.     Case Management Plan..........................................................................7

          C.     Following the Decision,  Defendants Advised RGL that the Scope
                 of Defendants' Discovery Production Was Limited To The Scope
                 of The Three Surviving Transactions .........................................................7

          D.     Plaintiff Files a Request for Leave to File Motion to Compel the
                 Production of Information and Documents Beyond The Surviving
                 Transactions ..........................................................................................8

          E.     RGL's Motion for Leave and Proposed Second Amended
                 Complaint...............................................................................................9

    II.     COUNTERSTATEMENT OF FACTS.................................................................11

ARGUMENT ..............................................................................................................12

    I.      RGL'S MOTION DOES NOT STATISFY THE STANDARD FOR
         LEAVE TO AMEND ......................................................................................12

          A.     RGL Has Not Met The Applicable Good Cause Standard ........................12

          B.     Even If The Court Applied the Fed. R. Civ. P. 15 Standard, RGL
                 Has Not Met the Requisites for Leave to Amend ......................................15

                1.     RGL's Undue Delay and the Prejudice to Defendants
                        Warrants Denial of its Motion for Leave to Amend .....................15

                2.     RGL'S AMENDMENT IS FUTILE................................................17

                      i.     RGL's Attempt to Reassert Its Dismissed Claims
                            Relating to the Transfer of CIL's Trading Activity
                            and the Alleged Increase in Related-Party Fees are
                            Futile ...................................................................17

                    ii.     RGL's Proposed Amendments Seeking to Assert Its
                            Claim of a Broad Scheme to Transfer Assets and
                            Technology from CIH is Futile...........................................19

iii.    RGL's Proposed Amendment Fails To Adequately
State A Claim For Relief...................................................23

a.    RGL's proposed amendments fail to meet
the requisite statute of limitations and fail as
a matter of law .......................................................23

b.    RGL's proposed amendments fail to meet
the basic pleading requirements and
therefore, cannot be sustained................................24

CONCLUSION..............................................................................................................25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)..................................................................................................24

*Baergas v. City of New York,*
  2005 WL 2105550 (S.D.N.Y. 2005)..........................................................................12

*In re Baxter Int'l Shareholders Litig.,*
  654 A.2d 1268 (Del. Ch. 1995)..................................................................................20

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544, 570 (2007).............................................................................................24

*Block v. First Blood Associates,*
  988 F.2d 344 (2d Cir. 1993).........................................................................................15

*Brehm v. Eisner,*
  746 A.2d 244 (Del. 2000)............................................................................................20

*Creswell v. Sullivan & Cromwell,*
  922 F.2d 60, 72 (2d Cir. 1990)....................................................................................15

*In re Comp. Sciences Corp.,*
  244 F.R.D...................................................................................................................20

*In re Cooper Companies, Inc. Shareholders Derivative Litigation,*
  2000 WL 1664167 (Del Ch. Oct. 31, 2000) .............................................................23

*Criden v. Steinberg,*
  2000 WL 354390 (Del. Ch. Mar. 23, 2000)................................................................25

*Cummins, Inc. v. New York Life Ins.,*
  No. 10 CIV. 9252, 2012 WL 3870308 (S.D.N.Y. Sept. 6, 2012)........................12, 13

*Enzymotec Ltd. v. NBTY, Inc.,*
  754 F. Supp. 2d 527 (E.D.N.Y. 2010) ........................................................................15

*Foman v. Davis,*
  371 U.S. 178 (1962).....................................................................................................15

*Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.,*
  817 A.2d 160 (Del. 2002) ...........................................................................................25

*Grace v. Rosenstock,*
    228 F.3d 40 (2d Cir. 2000)..................................................................................15

*In re Harbinger Capital Partners Funds Investor Litig.,*
    12 Civ. 1244 (AJN), 2013 WL 5441754 (S.D.N.Y. Sept. 30, 2013), *vacated in part on reconsideration* 2013 WL 7121186 (S.D.N.Y. Dec. 16, 2013) ...................20

*Health-Chem Corp. v. Baker,*
    915 F.2d 805 (2d Cir. 1990)..................................................................................17

*Isreal Disc. Bank of N.Y. v. First State Depository Co., LLC,*
    2013 WL 2326875 (Del. Ch. May 29, 2013)..........................................................25

*Khanna v. McMinn,*
    2006 WL 1388744, at *14 (Del. Ch. May 5, 2010)................................................20

*Lee v. Regal Cruises, Ltd.,*
    916 F. Supp 300 (S.D.N.Y. 1996), *aff'd,* 116 F.3d 465 (2d Cir. 1997)..................15

*M.Y.G. Tex, Ltd. v. Tie Cargo Corp.,*
    No. 96 Civ. 5226, *2 HB, 1997 WL 529004 (Aug. 26, 1997)..................................15

*In re Milk Prods. Antitrust Litig.,*
    195 F.3d 430 (8th Cir. 1999) ................................................................................13

*Oliver v. Demarinis & Co.,*
    90 Civ. 7950 (SS), 1993 WL 33421 (S.D.N.Y. Jan. 29, 1993)....................17, 18, 19

*Parker v. Columbia Pictures Industries,*
    204 F.3d 326 (2d Cir. 2000)............................................................................13, 14

*In re Paxon Communication Corp. Shareholders Litig.,*
    No. CIV. A. 17568, 2001 WL 812028 (Del. Ch. 2001)..........................................20

*Rent–A–Center Inc. v. 47 Mamaroneck Ave. Corp.,*
    215 F.R.D. 100, 104 (S.D.N.Y.2003) ....................................................................13

*Sokol Holdings, Inc. v. BMD Munai, Inc.,*
    No. 05–CV–3749, 2009 WL 2524611 (S.D.N.Y. Aug. 14, 2009) ...........................13

*Sosa v. Airprint Sys., Inc.,*
    133 F.3d 1417 (11th Cir.1998) (per curiam)..........................................................13

*In re the Student Loan Corp. Derivative Litigation,*
    2002 WL 75479 (Del. Ch. Jan. 8, 2002)................................................................23

*In re Walt Disney Co. Derivative Litig.,*
    906 A2d 27 (Del. 2006) ........................................................................................25

*Zahra v. Town of Southhold,*
   8 F.3d 674 (2d Cir. 1995)..................................................................15

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)......................................................................24

Fed. R. Civ. P. 15.............................................................................15

Fed. R. Civ. P. 15(a) ...................................................................1, 12, 15

Fed. R. Civ. P. 16(b) ..........................................................................12

Fed. R. Civ. P. 16(b)(3)(A)...................................................................12

Fed. R. Civ. P. 23.1(b)(3)................................................................19, 21

Fed. R. Civ. P. 26(a) ...........................................................................7

## PRELIMINARY STATEMENT

Refco Group Ltd., LLC's ("RGL") motion for leave to file a second amended complaint should be rejected as it is merely its latest tardy attempt at reconsideration of the Court's June 10, 2014 decision and order ("Decision"), which dismissed the same claims it now seeks to resurrect. It is also a not-so-veiled end-run around this Court's recent ruling denying RGL discovery on these previously dismissed claims. Far from merely conforming its "pleadings to the evidence" and "asserting additional facts" in support of claims already asserted, RGL's proposed amendment seeks to re-assert three (3) claims that were previously dismissed by this Court over six (6) months ago. RGL fails to meet the applicable "good cause standard" or even the more liberal standard under Fed. R. Civ. Pro. 15(a).

RGL fails to provide any valid justification for its delay in bringing its motion. Neither its claim that the Decision was ambiguous, nor its blatant mischaracterizations of the Defendants' alleged "defenses," are plausible reasons to justify its failure to file within the deadline to amend its pleadings. The Decision unambiguously dismissed the claims RGL now seeks leave to reassert, including the assertion of a general scheme to transfer CIH's technology and assets. RGL's alleged ignorance of that dismissal is incredible, but nevertheless does not justify its delay. Further, aside from a single document relating to the approximate percentage of Defendant Howard Lutnick's interest in CFLP, RGL has not alleged that any of the newly pled factual allegations are based on information not previously available to it and that these claims could not have been asserted in its prior amendment. There can be little doubt that the Defendants will be unduly prejudiced and the proceedings significantly delayed if these belated and vague allegations are permitted to proceed.

The foregoing notwithstanding, RGL's proposed factual allegations and claims do not cure the defects which were the basis for the dismissals set forth in the Decision. The proposed

amendments do not cure RGL's prior failure to allege sufficient facts relative to the alleged transaction to establish demand was futile and upon which the Court dismissed those claims.

RGL's nebulous allegation of unidentified and "undocumented" transfers of vacantly characterized assets and technology also makes clear that a valid claim for relief against the Defendants has not been pled.  In sum, these conclusory and purely speculative allegations – clearly made merely as a camouflaged spring board to discovery that has previously been denied - fail to meet the basic pleading requirements for stating a valid claim for relief.  As such, RGL's motion for leave should be denied in its entirety.

<u>**STATEMENT OF FACTS AND RELEVANT PROCEDURAL HISTORY**</u>

**I.     RELEVANT PROCEDURAL HISTORY**

    **A.     RGL's First Amended Complaint, Motion to Dismiss and Decision**

Prior to filing its adversary complaint, RGL admits that it was receiving documents from the Defendants as part of its bankruptcy proceeding. (RGL's Brief, at 5-6). The Defendants were continuing to produce additional documents at the time RGL filed its adversary action against the Defendants.  RGL acknowledged that the documents it received during the course of the bankruptcy proceeding serve as the basis for its First Amended Complaint, which currently serves as the operative complaint in this matter (the "First Amended Complaint").  (Id.).

The First Amended Complaint asserts derivative causes of action on behalf of nominal defendant CIH in which RGL holds a 10% limited partnership interest. The causes of action were based on claims of certain self-interested transactions and business decisions (collectively the "Claims"), which RGL contends resulted in the transfer or licensing of technology or assets owed by CIH's subsidiaries without appropriate consideration. (Docket Entry No. 25). Specifically, the Claims – each which allegedly independently support the various legal causes of action in the Amended Complaint, included six  specified transactions and business decisions

made and undertaken by several of CIH's subsidiaries, and one unspecified generalized allegation of technology transfer (the "Challenged Transactions"). (Am. Compl., ¶197). The Challenged Transactions were: (1) the permitted use of the CIH Entities' intellectual property, including technology and patents, for the benefit of the Cantor Nevada Entities (the "General Use and Transfer Claim"); (2) the 2006 License Agreement, as defined below; (3) the closing of Spreadfair to benefit the Cantor Nevada Entities; (4) the transfer of Cantor Index's FFO business and assets; (5) the transfer of Cantor Index's remaining trading activity (CFD and FSB) to Cantor Fitzgerald Europe; (6) the 2011 License Agreement, as defined below; and (7) the increase in the related-party fees paid by CIH to CFE.[1] (Am. Compl., at ¶ 197). RGL contended that each of the Challenged Transactions should have been stopped by CIH's general partner, are not entitled to the due deference regarded under the recognized business judgment rule, demand was futile and serve as independent grounds for its breach of fiduciary duty, gross negligence, willful misconduct, fraudulent transfer, waste, conversion, unjust enrichment and breach of contract claims. (Am. Compl., ¶214).

Defendants filed a motion to dismiss the Amended Complaint in its entirety. (Docket Entry No. 20-22). The Decision granted in part and denied in part the Motion to Dismiss. (Docket Entry No. 39). The Decision granted Defendants' motion to dismiss certain defendants from the proceeding. After the Decision, the only remaining defendants are CFLP, CFS, Cantor G&W (Nevada), CIHLP, LLC, Amaitis; Merkel; and Lutnick, (hereinafter collectively the "Defendants"). (Docket Entry No. 39 at 79).

The Decision further found that RGL did not make a pre-suit demand on CIH's General Partner as to any of the Challenged Transactions and therefore, RGL was required to allege

---

[1] Entities and terms which are not defined herein are intended to refer to the terms in RGL's Moving Brief or First Amended Complaint.

particularized facts which created "a reasonable doubt that the parent [general partner] could properly have exercised [its] independent and disinterested business judgment in responding to a demand" on each of these transactions. (Docket Entry No. 39 at 23-24.). The Court also held that a "substantial threat of personal liability as to the conduct alleged in the complaint [will] compromise [a general partner's] ability to act impartially on demand." (Id. at 25). The Court held that this analysis was to be conducted on a "transaction-by-transaction" basis and RGL was required to establish "that CIHLLC, CIH's sole general partner, could not have evaluated the CIH subsidiaries' potential claims with the required disinterest and independence." (Id.).

The Court held that a "disabling interest" existed where the general partner stands on both sides of the transaction or receives a material benefit from the challenged transaction that is not generally shared with the other partners. (Id. at 25). Even where a general partner is not directly interested in a transaction, it may be so "dominated" by an interested party that its "discretion would be sterilized." (Id.). The Court conducted this demand futility analysis for each of the Challenged Transactions. (Id. at 23-35).

Based on this analysis, the Court dismissed the following Claims/Challenged Transactions: the General Use and Transfer Claim; the closure of Spreadfair, the transfer of CIL's remaining trading activity to CFE and the alleged increase in related-party fees paid by CIL to CFE and other Cantor affiliates. (Id.).

With respect to the claim concerning the transfer of CIL's remaining trading activity, the Court held that "the nature and value of the trading activity is left unexplained, the complaint contains no allegations concerning the extent of Lutnick's interest in CFE or its size relative to Lutnick's interest in CIL." (Id. at 31). The Court most critically found that RGL pleads that "CFLP controls CFE through a chain of general partners and managing members that  are not

alleged to have substantial ownership interests in the limited partnerships or limited liability companies they control." (Id.).  Consequently, the Court held that RGL failed to meet its burden of proving Lutnick received a material benefit from any transfer of CFE.  (Id. at 32.).  Likewise, the Court held that neither Lutnick, nor CIHLLC faced a substantial threat of liability for their involvement of the alleged transfer of CIL's trading activity.  (Id. at 35-70).  Thus, the Court held that RGL had not established demand was futile.

Similarly, the Court held that RGL had not sufficiently pled demand futility with respect to its claim alleging an increase in related-party fees paid from CIL to CFE.  (Id. at 32).  Specifically, the Court found that RGL does not allege that "Lutnick received a material benefit from this Challenged Transaction or that he stood on both sides." (Id.).  The Court found that RGL "could not, as the complaint does not describe the extent of Lutnick's interest in CFE, as explained above, or his participation in the relevant decisions." (Id.)(emphasis added).  RGL's allegations also failed to demonstrate that this alleged transaction exposed Lutnick or CIHLLC to any substantial threat of liability.

The Court also considered and dismissed RGL's General Use and Transfer Claim.  The Court concluded that RGL's generalized allegations did not support an independent claim or basis for its causes of action and requested relief.  (Id. at 10, n. 7).  The Court could not have been more clear - "the Court interprets these [general] allegations to describe the benefits that accrued to Cantor Nevada as a result of the Challenged Transactions but not to constitute an independent Challenged Transaction [or claim]." (Id.).  The Court reasoned that although

> [a]t one point, the Amended Complaint appears to identify the 'use of the CIH Entities' intellectual property, including technology and patents, for the benefit of the Cantor Nevada Entities as a Challenged or 'Affiliate' Transaction independent of the 2006 and 2011 License Agreements, . . . [i]t is **unclear how these allegations could independently support any of RGL's claims . . .**"

(Id.) (emphasis added).  In doing so, the Court rejected RGL's attempt to have the generally alleged scheme serve as an independent claim or basis sufficiently supporting each of the causes of action, and the specifically pled transactions as mere examples of same.  Rather, the Court found that RGL's exhaustive list of transactions were the only pled claims that could serve as the basis for Plaintiff's derivative causes of action against Defendants.  (Id.)

In sum, the Court unambiguously held that the only cognizable claims or grounds for RGL's remaining causes of action were limited to the following three transactions:

(1) the 2006 License Agreement between Cantor Index LLC and Cantor G&W (Nevada) ("2006 License Agreement"), (Am. Compl., at ¶83, Exh. B);

(2) the 2011 License Agreement between Cantor Index LLC a third party gaming software company ("2011 License Agreement"); and/or

(3) the sale of Cantor Index Limited's Fixed Financial Odds ("FFO") business and transfer of employees to CGWL (UK) for alleged insufficient consideration (the "Asset Purchase Agreement").

(hereinafter the "Surviving Transactions").  (Id. at 22, 79).  The Court expressly held that because RGL had sufficiently pled that demand was futile with respect to "certain of the Challenged Transactions (namely, the 2006 License Agreement, the Asset Purchase Agreement, and the 2011 License Agreement) but not others (namely, the closure of Spreadfair, the transfer of CIL's trading activity to CFE, and the increase in related-party fees paid by CIL), "**only the former transactions may form the basis of RGL's claims**."  (Id. at 22 (emphasis added)).  There is no ambiguity in the holding and its significance is resolute and clear: RGL's causes of action based on the other claims or specified transactions and the generally asserted scheme were dismissed on the grounds of failure to plead demand futility with respect to those transactions.

### B.    Case Management Plan

After the entry of the Decision in June, 2014, RGL did not seek the Court's reconsideration of the dismissal of its specific and general claims. Nor did it move to further amend the complaint. Rather, the parties moved forward with discovery.

The parties met and conferred and submitted a Case Management Plan and Scheduling Order ("Scheduling Order") which was entered by the Court on July 3, 2014 following counsel's attendance at a scheduling conference. (Docket Entry No. 42). The Scheduling Order provides that "[n]o additional parties may be joined after September 1, 2014, without leave of the Court," and "[n]o additional causes of action or defenses may be asserted after September 1, 2014 without leave of Court." (Id.). Contrary to the RGL's representation in its moving brief, the Scheduling Order does not explicitly state that "there would be no limit on the time during which such amendments could be made with leave of Court." (RGL's Brief at 9). The dates for adding parties and amending were just shy of three months from the issuance of the Decision. The Scheduling Order further set the deadline for fact discovery at January 15, 2015. (Docket Entry No. 42).

### C.    Following the Decision, Defendants Advised RGL that the Scope of Defendants' Discovery Production Was Limited To The Scope of The Three Surviving Transactions

After the Decision, the Defendants unambiguously advised RGL that the scope of its discovery obligation was limited to the Surviving Transactions. Initially, on July 31, 2014, Defendants served Plaintiff with their Initial Disclosures pursuant to Fed. R. Civ. P. 26(a) (the "Initial Disclosures"). The Initial Disclosures expressly limited the scope of Defendants' relevant documents and individual disclosures to those relating to Surviving Transactions. (See Declaration of Francis X. Riley III, Esq., ("Riley Dec."), ¶2, Ex. A, pg. 3). In fact, the catch-all utilized by Defendants was "any other individuals who were involved in and/or have knowledge

7

of the three (3) subject transactions in Plaintiff's Complaint." (Id., Ex. A, pg. 2). The Initial Disclosures also stated that each of the individuals identified has or may have knowledge concerning "…the remaining transactions at issue, namely the 2006 and 2011 License Agreements and FFO transaction." (Id). Thus, at the very least, it was at this point that RGL was aware of the Defendants' position concerning the limitation the Decision had on RGL's claims. However, RGL neither disputed the limitation utilized by Defendants in the Initial Disclosures, nor did it seek relief from the Court.

Shortly thereafter, on August 1, 2014, Defendants' counsel responded to RGL's proposed search terms in an email stating "[t]he search terms you have suggested below are unworkable and are not legitimately tailed to reasonably lead to the discovery of admissible evidence relating to the **only three (3) transactions which remain a basis for Refco's legal causes of action in this case**." (Riley Dec., Ex. B., pgs. 1-2)(emphasis added). Approximately two weeks later, the parties met and conferred via a telephone conference and Defendants' counsel again reiterated its position that the only claims RGL had as a result of the Decision were those based on the Surviving Transactions and discovery was limited to issues related to those transactions. (Riley Dec., ¶4). RGL did not seek the Court's intervention on this issue at this point. On September 5, 2014, Defendants served express objections to many of RGL's document requests on the grounds that the requests were objectionable to the extent they sought information that is beyond the scope or irrelevant to the Surviving Transactions. (Id., ¶5).

### D.  Plaintiff Files a Request for Leave to File Motion to Compel the Production of Information and Documents Beyond The Surviving Transactions

RGL subsequently sought leave to file a motion to compel Defendants to respond to their discovery demands which were beyond the scope of the Surviving Transactions. (Docket Entry No. 72 and 73). During oral argument on the motion, the Court questioned counsel for both

parties regarding, among other things, the pleadings, the Decision and the import of both on the discovery dispute at issue. (See Docket Entry 90, Ex. A). At the conclusion of argument, the Court stated that "discovery is properly limited to the three transactions that survive the motion to dismiss and material related to those three transactions," and that "to the extent that [RGL] is seeking to get discovery regarding transactions that go beyond those three transactions, … [RGL] is really seeking to take discovery to see if a claim exists, which is contrary to the law of this circuit." (T31:22-24; 32:1-6). The subsequent order issued by Judge Pitman ("Order") held that pursuant to the Decision, "discovery is limited to plaintiff's claims based on the 2006 License Agreement, the 2010 Asset Purchase Agreement and the 2011 License Agreement . . ." and that "[t]he claims concerning these transactions are the only claims remaining in this matter . ..." (Docket Entry No. 77 at 1-2). RGL filed a Rule 72 Objection to the Order which is currently pending before Judge Abrams. (Docket Entry No. 80-81; 89-90).

### E.    RGL's Motion for Leave and Proposed Second Amended Complaint

Six months after the Decision narrowed RGL's claims to the Surviving Transactions, and almost three months after the deadline to amend its pleading expired, RGL seeks leave to file a Second Amended Complaint purportedly to "conform its pleadings to the evidence," and "refine" its already plead claims. (RGL's Brief at 12). The only "new" evidence that RGL points to, and which it could possibly use to confirm its pleadings, is a document indicating that Lutnick owns a greater than 10% interest in CFLP. (RGL's Brief at 11).

The Second Amended Complaint realleges the claims related to the Challenged Transactions, including the three that were previously dismissed by the Court, with one change. Specifically, RGL changes the general non-specific allegation of "use of the CIH Entities' intellectual property, including technology and patents for the benefit of the Cantor Nevada

Entities" to a more streamline, but no more specific claim of a: "transfer of CIH's assets to help Cantor Nevada create mobile gambling and the Midas program." (Declaration of Geoffrey C. Jarvis, Esq. in Support of Motion for Leave ("Jarvis Dec."), Ex. B at ¶ 197 and 212, fn 2). RGL attempts to conceal the absence of the specifics required for a derivative cause of action, through general allegations that "transfers of CIL's intellectual property" were used to create "mobile gaming and the Midas program," that the transfers "were accomplished without any recorded transaction," Defendants "appropriated CIL's predictive algorithm program known as Midas,"[2] Defendants "simply g[ave] those assets to the Cantor Nevada entities without documentation" and these transfers "have only recently come to light." (Jarvis Dec., Ex. B, at ¶ 148-150, 228). Not so, this alleged transfer is no different than the allegation contained in the Amended Complaint, with nothing that "only recently came to light" being alleged. RGL generally alleges transfers of technology and use of technology, however provides no specificity regarding: i) the nature or character of any of the transfers; ii) when those transfers occurred; iii) from what CIH entity any of the transfers occurred; iv) who authorized or participated in the transfer decision; or v) what exactly was transferred or permitted to be used. (Jarvis Dec., Ex. B, at ¶¶ 121-122, 135). RGL also fails to identify in its motion what evidence it recently obtained that permitted it to discover this transfer. The reason for these glaring failures, is because this "new" claim of technology transfer is merely the "old" General Use and Transfer Claim previously rejected as an independent basis for RGL's causes of action.

With regard to Lutnick, RGL's Second Amended Complaint includes a "new" allegation that he "has a limited partnership interest in CFLP greater than 10%," and that he "was Chairman

---

[2] The transfer of technology used by Cantor G&W to create the Midas program and the transfer of the Midas program itself is contradictory, and illustrates that this transfer of technology claim is merely pled to give the false appearance of a valid claim for which discovery should be permitted to get around this Court's decision limiting discovery to the three surviving transactions.

of Cantor Index Limited at the time that its trading activity was transferred to Cantor Fitzgerald Europe, a wholly owned subsidiary of CFLP." (Jarvis Dec., Exh. B at ¶ 16). RGL's Second Amended Complaint further recites its interpretation of the Decision with regard to Lutnick's interest in the Affiliated Transactions.[3]  (Jarvis Dec., Ex. B, at ¶¶ 221-240).

## II.    COUNTERSTATEMENT OF FACTS

Defendants dispute many of the factual allegations which are set forth in Plaintiff's proposed Second Amended Complaint, but for purposes of this Motion only will accept those allegations as true.  However, Defendants object and deny Plaintiff's repeated and knowing mischaracterizations of Defendants' purported defenses in this case.  As it did in its Motion to Compel, Plaintiff plainly misstates the Defendants' purported defenses by claiming that "their defense appears to be that they simply stole the technology, and never formally transferred anything." (RGL's Brief, at 10).  This so-called defense was expressly discussed and disclaimed during Plaintiff's Motion to Compel.  (See Docket Entry 90, Ex. A, T6:7-14:6).  During oral argument, Judge Pitman ultimately obtained a concession from RGL that Defendants do not actually assert this defense, "do not take that position in [their] answer." (Id., 10:21-11:8).  To the extent any ambiguity existed, counsel for the Defendants expressly denied the existence of these so-called defenses stating "[t]he defenses here go to specifically **to these three transactions because those are the only transactions that Judge Abrams left in the case.**"

---

[3] To the extent RGL is seeking to file an amended pleading to identify the proper parties due to name changes and remove allegations regarding Cantor Casino, which RGL has already represented to the Court it is no longer alleging, Defendants have no objection.

(Id., T30:4-8)(emphasis added).  Plaintiff cannot use this patently illusory defense as a basis for its delay.

## ARGUMENT

### I. RGL'S MOTION DOES NOT STATISFY THE STANDARD FOR LEAVE TO AMEND

#### A. RGL Has Not Met The Applicable Good Cause Standard

RGL admits that a "good cause" standard, rather than the standard under Fed. R. Civ. P. 15(a), applies when a motion for leave to amend is filed after the deadline set forth in a scheduling order.  (RGL's Brief, at 13); see *Cummins, Inc. v. New York Life Ins.*, No. 10 CIV. 9252, 2012 WL 3870308, at *3 (S.D.N.Y. Sept. 6, 2012) (stating "where the court has already entered a scheduling order in the case, a party requesting leave to amend must satisfy the "good cause" standard set forth in Rule 16(b)") (citations omitted); *see also Baergas v. City of New York*, 2005 WL 2105550 (S.D.N.Y. 2005).  This is precisely what occurred here and Plaintiff's contention that the schedule provided for an unlimited period of time which a party could amend their complaint or assert new causes of action is unfounded.  (RGL's Brief, at 9).

The Scheduling Order was entered on July 3, 2014 and set the deadline for filing of amended pleadings as September 1, 2014.  Fed. R. Civ. P. 16(b) mandates, among other things, that a scheduling order include a time limit on amending pleadings. *See* Fed. R. Civ. P. 16(b)(3)(A) ("Required Contents. The scheduling order must limit the time to join other parties, **amend the pleadings**, complete discovery and file motions").  Therefore, the only valid interpretation of the September 1, 2014 deadline is that it was the time in which RGL had to join other parties or amend the pleadings. RGL's contention, that there is "no limit on the time during which amendments could be made with leave of Court," (RGL's Brief at 9), is simply impermissible under the rules and cannot be read into the Scheduling Order.  The language

regarding "a motion for leave" can only be interpreted as a recognition that RGL could move to amend the order pursuant to the good cause standard under Rule 16(b).

To satisfy the good cause standard, RGL "must show that, despite its having exercised diligence, the applicable deadline could not have been reasonably met." *Sokol Holdings, Inc. v. BMD Munai, Inc.*, No. 05–CV–3749, 2009 WL 2524611, at *7 (S.D.N.Y. Aug. 14, 2009) (citing *Rent–A–Center Inc. v. 47 Mamaroneck Ave. Corp.*, 215 F.R.D. 100, 104 (S.D.N.Y.2003)). The court may properly deny leave to amend "where the party seeking it knew or should have known the facts sought to be added to the complaint." *Cummins, Inc. v. New York Life Ins.*, No. 10 CIV. 9252, 2012 WL 3870308, at *3 (S.D.N.Y. Sept. 6, 2012). In *Parker v. Columbia Pictures Industries*, 204 F.3d 326 (2d Cir. 2000), the Second Circuit held that the motion for leave to amend was properly denied when it was based on a contractual entitlement that plaintiff was aware of prior to the litigation and nothing during discovery otherwise altered that fact. *Id.* at 341 (relying on *In re Milk Prods. Antitrust Litig.*, 195 F.3d 430, 437 (8th Cir. 1999); see also *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir.1998) (per curiam) (finding no good cause where party failed to discover necessary information and was on notice in advance of the deadline that her complaint was inadequate).

Here, RGL's motion fails to include any certification from Plaintiff's counsel which demonstrates that despite its due diligence, the applicable deadline could not have been reasonably met by RGL. Instead, RGL attempts to justify its delay by claiming that it was unaware the Decision limited the basis for its causes of action to the Surviving Transactions. (RGL's Brief, at 15-16). Said a different way, RGL asserts it should be permitted to re-assert its previously dismissed claims because it was unaware the Decision narrowed its claims to the

Surviving Transactions.    RGL's impossible interpretation of the Decision and its willful ignorance of the Court's clear and unambiguous holding cannot serve as a basis for its delay.

The delay is also unjustified given that more than four (4) weeks prior to the deadline to amend its pleadings, the Defendants clearly informed RGL through their Initial Disclosures, their emails communications, and their meet and confers, that discovery was limited to **only** the information and documents relating to the Surviving Transactions. (Riley Dec., ¶¶2-4, Ex. A, pg. 3).    RGL cannot in good faith contend that it became aware of this position after the expiration of the deadline. (RGL's Brief, at 14-15).

Aside from a singular document addressing Lutnick's alleged interest in CFLP (which relates to the claims related to transactions between CIL and CFE  which is addressed below), RGL does not identify any newly obtained information or explain how such information was not previously available to it.  To the contrary, Plaintiff conceded the information demonstrating that "Defendants engaged in a broad scheme to transfer out the technology and other assets belonging to CIH and its subsidiaries…"  "was revealed only through a subpoena issued pursuant in an earlier bankruptcy proceeding" not through discovery it obtained after the Decision.  (RGL's Brief, at 2*).*  Its most recent filing further confirms that the information relating to the Midas program, and the corresponding claims relating to the alleged taking of technology for use in Midas, **was available** to RGL and purportedly detailed in its First Amended Complaint.  (Docket Entry 94, pgs. 4-5).  These admissions confirm that RGL has always had this information and this information, and the related claims, are no different than what has already been asserted  in its General Use and Transfer claim that was subsequently dismissed by this Court. As the court found in *Parker*, and as this Court should find here - where the amendment sought is based on

information that the party had knowledge of prior to litigation and nothing during discovery otherwise altered that fact, the motion to amend should be denied.

**B.     Even If The Court Applied the Fed. R. Civ. P. 15 Standard, RGL Has Not Met the Requisites for Leave to Amend**

If a court finds that good cause for extending the deadline exists, a party still has the burden to show that the proposed amendment is permissible under Fed. R. Civ. P. 15 ("Rule 15"). *Enzymotec Ltd. v. NBTY, Inc.*, 754 F. Supp. 2d 527, 537 (E.D.N.Y. 2010). Although leave to amend a pleading should be freely granted when justice so requires, it is not absolute. Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Zahra v. Town of Southhold*, 8 F.3d 674, 685 (2d Cir. 1995). The court may deny leave if the amendment (1) has been delayed unduly; (2) is sought for dilatory purposes or is made in bad faith; (3) the opposing party would be prejudiced; or (4) it would be futile. *Lee v. Regal Cruises, Ltd.*, 916 F. Supp 300, 303 (S.D.N.Y. 1996), *aff'd*, 116 F.3d 465 (2d Cir. 1997).

**1.     RGL's Undue Delay and the Prejudice to Defendants Warrants Denial of its Motion for Leave to Amend**

"The court … has discretion to deny leave to amend 'where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice other parties." *Grace v. Rosenstock*, 228 F.3d 40, 53-54 (2d Cir. 2000) (*quoting Creswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990)). In determining whether prejudice exists, the court should consider whether the amendment would require the party's adversary to expend significant additional resources to conduct discovery and prepare for trial, whether the amendment would significantly delay the resolution of the dispute, or whether the plaintiff would be able to commence a separate action if the amendment were denied. *Block v. First Blood Associates*, 988 F.2d 344, 350 (2d Cir. 1993); *see M.Y.G. Tex, Ltd. v. Tie Cargo Corp.*, No. 96 Civ. 5226, *2 (KMW) HB, 1997 WL 529004 (Aug. 26, 1997) (denying motion

because deadline for amending pleadings had expired, plaintiff failed to offer any explanation for its failure to move in a timely manner, if the amendment were permitted, discovery would need to be re-opened which would unduly delay the case).

As described above, there is no valid and acceptable justification or explanation for RGL's delay in reasserting those claims that were dismissed. RGL attempts to side-step its delay by improperly characterizing their Second Amended Complaint as an attempt to conform its claims "to the evidence" and alleging that RGL is "not seeking to add any new causes of action." (RGL's Brief, at 1, 3, 13, 15-16). These fanciful arguments are entirely unsupported.

Far from "conforming its claims to the evidence," RGL is attempting to re-assert claims which were previously dismissed by the Decision. Specifically, RGL attempts to re-assert three (3) alleged transactions which were previously dismissed (i.e., the general scheme regarding the "use of CIH Entities' valuable intellectual property, the transfer of CIL's trading activity to CFE and the alleged increased related-party fees paid by CIL to CFE). These clearly identified transactions were part of the "Challenged Transactions" which served as the basis **for each one** of Plaintiff's causes of action. The Decision did not find these transactions were "mere examples" of some greater scheme of misconduct, but rather were the basis of RGL's claims and causes of action against the Defendants. The re-assertion of these transactions can only mean RGL is asserting a new alleged cause of action for **each one** of these transactions.

Further, there can be little doubt that the Defendants will suffer prejudice if RGL is permitted to amend its complaint to add three (3) entirely new claims. At the time RGL filed its motion for leave, the deadline for fact discovery was January 15, 2015.

RGL's initial document demands to the Defendants indicate just how broad the scope of its discovery would be if the Court were to permit its belated amendment to include allegations

of a "general scheme" of wrongdoing.  Prior to this Court's order limiting RGL's discovery, RGL sought "All Documents and Communications Concerning any transfer or licensing of any Gaming-related Intellectual Property, tangible or intangible, from Cantor Index Holdings to any entity outside of Cantor Index Holdings during the Relevant Time Period."  (See Docket Entry 81, Declaration of Geoffrey C. Jarvis in Support Plaintiff's Objections to November 24, 2014 Order, Ex. C, Document Demand 2).  There can be little doubt that such discovery requests, along with the additional discovery relating to the other two proposed transactions, would require the Defendants to expand significant resources and incur substantial costs responding to these newly added claims.  These expenses could have been mitigated, in part, through a timely amendment, but they were not.  As such, RGL's motion for leave should be denied.

## 2.    RGL'S AMENDMENT IS FUTILE

RGL's amendment is futile because it seeks to re-allege claims which were already dismissed and the purported "newly" alleged facts do nothing to change this Court's prior determination or address the defects in their prior complaint.  *See Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990).  Leave to amend is properly denied as futile "where the claim or defense proposed to be added has 'no colorable merit'"  *Oliver v. Demarinis & Co.*, 90 Civ. 7950 (SS), 1993 WL 33421 at *5 (S.D.N.Y. Jan. 29, 1993) (Lee, M.J.) (citation omitted).  Here, the proposed amendments do not cure the defects identified in the Decision and RGL's newly asserted claims will fail as a matter of law.

### i.    RGL's Attempt to Reassert Its Dismissed Claims Relating to the Transfer of CIL's Trading Activity and the Alleged Increase in Related-Party Fees are Futile

While RGL relies on the alleged newly discovered evidence regarding Lutnick's percentage interest in CFLP, this information is insufficient to cure the defects which served as

the basis of the Court's dismissal of the claims relating to CIL's transfer of its trading activity and alleged related-party payments to CFE. (Decision, at 31-33).

Specifically, the dismissal of those claims as independent basis for RGL's causes of action was not based solely on the absence of an allegation concerning the specific "size of Lutnick's ownership interest in CFLP." (Id. at 31). Rather, the Court also found demand futility was not established because "the complaint contains no allegations concerning the extent of Lutnick's ownership interest in CFE or its size relative to Lutnick's interest in CIL." (Id). The Court further held that demand futility could not be found because "CFLP controls CFE through a chain of general partners and managing members that are not alleged to have substantial ownership interests in the limited partnerships or limited liability companies they control." (Id). Finally, the Court found it could not conclude demand was futile because RGL did not plead facts regarding the nature and value of the trading activity was also left unexplained. (Id).

The Decision similarly found that RGL had not adequately pled demand futility with respect to the alleged increase in related-party fees paid by CIL to CFE. (Id. at 32). The Court relied on the same rationale above, and stated "the complaint does not describe the extent of Lutnick's interest in CFE…or his participation in the relevant decisions." (Id).

While RGL's second amended complaint alleges that Lutnick "owned at least 10% of the CFLP," this factual allegation  does not cure the remaining deficiencies that served as the basis for the Court's dismissal.  The allegation of Lutnick's percentage ownership in 2010 does not sufficiently allege or demonstrate his interest at the time of the alleged increase in related-party fees in 2003 to 2006.  Further, the bare allegation that Lutnick owns a "greater than 10% interest in CFLP" is insufficient to allow the Court to infer that the increase in the value of Lutnick's interest in CFE as a result of these two transactions is "outweighed [by] the decrease in the value

of Lutnick's unspecified interest in CIL." (Decision, at 46, fn 24). As such, the bare allegation regarding Lutnick's interest of more than 10% in CFLP does not cure any of the defects as it related to the alleged increase in related-party fees.

In addition, RGL continues in its failure to allege the extent of Lutnick's ownership interest in CFE or its size relative to Lutnick's interest in CIL." (Decision, at 31). RGL also neglects to address the fact that CFLP controls CFE through a chain of general partners and managing members which "are not alleged to have substantial ownership interests in the limited partnerships or limited liability companies they control." (Id.). Thus, this deficiency in pleading demand futility is not cured by RGL's proposed amendments.

RGL's proposed amendments also fail to provide the needed specific allegations concerning Lutnick's participation in the relevant decisions to transfer of CIL's trading activity and the alleged increase in the related-party fees, which the Court found were lacking in the Amended Complaint. (Decision, at 32). Unlike the transactions which were sustained as a basis for RGL's causes of action in the Decision, RGL's proposed Second Amended Complaint does not provide the Court with any alleged facts it could use to infer Lutnick's participation in the subject decisions. As such, RGL's proposed amendments relating to the transfer of CIL's trading activity and the alleged increase in the related-party fees are futile.

ii.    **RGL's Proposed Amendments Seeking to Assert Its Claim of a Broad Scheme to Transfer Assets and Technology from CIH is Futile**

In place of the previously dismissed General Use and Transfer claim, RGL seeks to merely substitute an equally vague and ambiguous claim there was a "transfer of CIH's assets to help Cantor Nevada to create mobile gambling and the Midas program." (See Jarvis Dec., Ex. B, "Redlined Version", ¶212). This purported amendment also fails to meet the heightened pleading requirements set forth in Fed. R. Civ. P. 23.1(b)(3). The Federal Rules are consistent

with Delaware law that demand futility must be pled "with particularity," and this is a "stringent requirement." *In re Harbinger Capital Partners Funds Investor Litig.*, 12 Civ. 1244 (AJN), 2013 WL 5441754, at 17 (S.D.N.Y. Sept. 30, 2013), *vacated in part on reconsideration* 2013 WL 7121186 (S.D.N.Y. Dec. 16, 2013); *Brehm v. Eisner*, 746 A.2d 244, 254 (Del. 2000).

RGL's moving brief ignores this standard and misstates the standard that should apply to this "transaction." RGL incorrectly argues that the *Rales* test was developed "for those instances in which there is no 'challenged transaction' because the harm results from some form of inaction, rather than a board decision." (RGL's Brief, at 10). While RGL is correct that the *Rales* test was developed to address instances of board inaction, along with double derivative suits, it does not relieve RGL from having to plead the specific factual allegations of the subject transaction. For example, while this Court applied the *Rales* test in conducting its demand futility analysis, it still recognized that this analysis "must be conducted on a 'transaction-by-transaction" basis. (Decision, at 24*) (citing Khanna v. McMinn*, 2006 WL 1388744, at *14 (Del. Ch. May 5, 2010).

In order to assess the alleged risk of substantial liability, a party must allege particularized factual allegations which would include alleging "the precise roles that [the] directors played at the company, the information that would have come to their attention in these roles, and any indication as to why they would have perceived the [wrongdoing]." *In re Baxter Int'l Shareholders Litig.*, 654 A.2d 1268, 1270 (Del. Ch. 1995*); see also In re Comp. Sciences Corp.*, 244 F.R.D. at 590 (internal quotation marks omitted). It is well-accepted that a party's derivative claims may be dismissed where it fails to plead the factual specificity required to plead demand futility. See *In re Paxon Communication Corp. Shareholders Litig.*, No. CIV. A. 17568, 2001 WL 812028 (Del. Ch. 2001)

Here, RGL's claim of "unidentified and undocumented transfers" of unspecified CIH's assets fail to meet the basic pleading requirements of demand futility. (Second Amended Compl., ¶191). As this Court previously held with RGL's prior generalized claims of unidentified transfers, "it is entirely unclear how these generalized allegations could support any of RGL's claims." (RGL's Brief, at 10, fn 7).

At its core, RGL's allegations of generalized undocumented transactions of CIH's assets are based on its purely speculative assumptions. RGL identifies certain public statements it interprets and assumes are admissions that CIH's proprietary technology was used as the basis for Cantor Nevada's business. (RGL's Brief, at 3). RGL further assumes that since the Defendants have denied that valuable technology was transferred through the Surviving Transactions, "they must have been taken by some other means." (Id.). RGL's argument is an admission that it has **no factual basis** for its allegations of some type of "undocumented" and improper transfers and transactions.[4] During oral argument on its Motion to Compel, RGL's counsel admitted they do not have any information regarding the alleged transfers of technology and were looking to the Court to permit them to examine all alleged transfers from CIH. (See Docket Entry 90, Ex. A, T12:7-19). This remains true today. Instead, RGL is now trying to amend its complaint with purely speculative allegations and assumptions in an attempt to get the discovery this Court previously found it was not entitled to.

RGL's purely speculative and unsupported assumptions cannot meet the specificity requirements of Fed. R. Civ. P. 23.1(b)(3). RGL's Second Amended Complaint is devoid of any factual allegation which identify when these alleged transactions took place, the type or value of the alleged technology or assets taken, or Lutnick's or anyone else's role in these transfers.

---

[4] RGL's assumption also ignores the most likely rationale for the alleged inconsistency, that RGL has simply misinterpreted or misunderstood the alleged public statements relied upon.

Instead, RGL attempts to use the analysis from the Decision regarding the Surviving Transactions to support its claim of demand of futility for these alleged undocumented transactions. However, RGL's attempted end-run around the factual particularity required to plead demand futility cannot stand.

RGL's failure to allege any facts identifying the type of value of the alleged technology or assets taken, make it impossible to assess whether Lutnick would have personally benefited from the alleged transfers. Nor does it allege any facts suggesting Lutnick's alleged involvement in these alleged "undocumented transfers." These bare and unsupported allegations are vastly different from those which led the Court to find demand futility with respect to the Surviving Transactions. In finding RGL adequately alleged demand futility regarding the 2006 License Agreement, the Court held that the alleged benefit to Lutnick appeared to be material based on the "detailed allegations" and "[i]n any event, Lutnick executed the agreement on behalf of all parties." (Decision, at 30). Similarly, the Court held that the FFO is alleged to generate substantial revenues and "CFLP, which Lutnick controls, arranged the sale of CIL's FFO business." (Id. at 31). The Court also held that Lutnick stood on both sides of the transaction involving the 2011 License Agreement by virtue of its allegations that the royalties were to paid to Cantor Nevada, rather than CILLLC and "it is reasonable to infer that [Lutnick] participated in the transaction as Chairman and CEO of CILLC and Chairman of Cantor Nevada." (Id. at 32).

Here, RGL's claim of "undocumented transfers" of unspecified technology, at who knows whose direction and at some unknown time, does not state any facts that would allow a Court to conclude the alleged transfers were material, let alone that demand on the general partner or subsidiary board would have been futile.

22

Further, the cases relied upon by RGL serve to only highlight the deficiencies in its Second Amended Complaint. *In re Cooper Companies, Inc. Shareholders Derivative Litigation*, 2000 WL 1664167, *2 (Del Ch. Oct. 31, 2000) involved allegations which specifically identified the alleged wrongful scheme, the period in which the scheme occurred, and the exact profits which were received by the relevant directors. The allegations also expressly identified the make-up and interestedness of the subject board or the control exercised over the relevant board members. *Id.* Similarly, *In re the Student Loan Corp. Derivative Litigation*, 2002 WL 75479 (Del. Ch. Jan. 8, 2002), involved specific factual allegations identifying how the Student Loan's board conducted its business in a manner that does not maximize its business, but rather to advantage Citigroup. It expressly identified certain business decisions which were made contrary to the interests of Student Loan, and alleged in detail how the relevant board is alleged to be controlled by a majority of interested individuals who could not "act independently of Citigroup." *Id.* at *4. These cases stand in stark contrast to the purely speculative allegations which stand as the basis for RGL's proposed amendments.

Based on the foregoing, RGL's proposed amendments regarding the alleged "undocumented" transfers of assets and technology fail to plead demand would be futile.

### iii.    RGL's Proposed Amendment Fails To Adequately State A Claim For Relief

#### a.    RGL's proposed amendments fail to meet the requisite statute of limitations and fail as a matter of law

In addition to its failure to plead the facts necessary to establish demand futility, RGL's proposed amendments also fail to state a valid claim for relief against the Defendants. As an initial matter, RGL's failure to allege any facts suggesting the time frame of the alleged "undocumented" transfers of CIH's assets and technology make it impossible for this Court to determine whether RGL's claims fall within the applicable statute of limitations. In addition,

RGL admits that the transactions involving the alleged transfer of CIL's trading activity and the alleged increase in related-party fees to CFE fall outside the applicable statute of limitations, but attempt to avoid these deficiencies with its vague and unsupported claims that "Defendants actively concealed the relevant facts." (RGL's Brief at 22-23). Without any specificity, RGL simply claims that the Defendants failed "to provide relevant and timely information" and "comply diligently and completely with the Bankruptcy Court's Rule 2004 orders." Such conclusory allegations are insufficient to establish that it is plausible that the Defendants "actively concealed the relevant facts." Further, even if RGL could relate its claims back to the original adversary pleading, its claims relating the alleged increase in related-party fees (which RGL alleges occurred in 2003-2006) and the alleged unidentified and undocumented transfers (which have no alleged date) must be dismissed based on statute of limitations grounds.

### b.   RGL's proposed amendments fail to meet the basic pleading requirements and therefore, cannot be sustained

RGL's proposed claims relating to the alleged undocumented transfers also fail to state a valid claim for relief against the Defendants. Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain specific facts which allow a court to draw the reasonable inference that the defendant is liable for the alleged misconduct and conclusory statements will not suffice. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). RGL's purely speculative allegations regarding "undocumented" transfers of unspecified technology do not meet this basic pleading standard.

As discussed above, RGL admits that its allegations regarding the purported "undocumented" transfers are based on their "interpretations" of certain public statements made by the Defendants, not cold, hard facts. Further, RGL cannot rely on these unspecific and speculative allegations to state a valid claim for unjust enrichment, waste, conversion or breach

24

of fiduciary duty against the Defendants. For example, RGL cannot allege the Defendants were unjustly enriched, CIH suffered a related loss, and the transaction was not justified, where RGL has not alleged any of the basic facts identifying the nature or value of the alleged "asset or technology" or the basic circumstances surrounding the alleged transfers.[5] Likewise, RGL cannot sufficiently allege a waste claim where the circumstances of the alleged transfers, including any potential consideration received by the transferring party, has not been alleged.[6] RGL's conversion claim similarly fails to state a valid claim for relief because their generalized allegations are insufficient to show CIH, or its subsidiaries, "had a right to the property in question."[7] Finally, since RGL has not alleged any facts identifying from whom the alleged transfers took place, the timing of these transfers, and which, if any, of the alleged Defendants were involved, it is impossible to sustain its breach of fiduciary duty claims against the Defendants.[8] Based on the foregoing, RGL's proposed amendments are futile.

## CONCLUSION

Based on the foregoing, Defendants respectfully request that RGL's motion for leave to amend be denied.

---

[5] The elements of unjust enrichment are: (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) absence of justification, and (5) the absence of a remedy provided by law."

[6] A claim of waste "will arise only in the rate 'unconscionable case where directors irrationally squander or give away corporate assets and the Court must find that the "the company would have to receive virtually nothing for what it gave." *In re Walt Disney Co. Derivative Litig.*, 906 A2d 27, 74 (Del. 2006); *Criden v. Steinberg,* 2000 WL 354390, *3 (Del. Ch. Mar. 23, 2000).

[7] "Generally speaking, any distinct act of dominion wrongfully exerted over the property of another, in denial of his right, or inconsistent with it, is a conversion. *Isreal Disc. Bank of N.Y. v. First State Depository Co., LLC,* 2013 WL 2326875, at *20 (Del. Ch. May 29, 2013).

[8] RGL's claims for aiding and abetting a breach of fiduciary duty cannot survive in the absence of an alleged breach. *See Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.,* 817 A.2d 160, 172 (Del. 2002)(citations omitted).

Dated:  January 23, 2015                    Respectfully submitted,


                                            SAUL EWING LLP

                                            By:/s/ Francis X. Riley III
                                            Francis X. Riley III, Esq.
                                            Ruth A. Rauls
                                            Ryan L. DiClemente
                                            650 College Road East, Suite 4000
                                            Princeton, NJ 08540
                                            (609) 452-5049
                                            (609) 452-6114 (Fax)

                                            *Attorneys for Defendants*